DIAMOND McCARTHY LLP                                Hearing:  January 17, 2018 at 2:00 pm
Allan B. Diamond, Esq.
Adam L. Rosen, Esq.
489 Fifth Avenue, 21st Floor
New York, NY 10017
Tel: (212) 430-5400
Fax: (212) 430-5499

Christopher R. Murray, Esq.
Charles M. Rubio, Esq.
909 Fannin Street, 37th Floor
Houston, Texas 77010
Tel: (713) 333-5100
Fax: (713) 333-5199

*Proposed Counsel for Ponderosa
Energy LLC and GS Energy LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
In re:

    PONDEROSA ENERGY, LLC and          Chapter 11
    GS ENERGY, LLC[1]                    Case No. 17-13484-SHL
                                                (Jointly Administered)

                                                  Debtors.
------------------------------------------------------------ x

## DEBTORS' OPPOSITION TO MOTION TO TRANSFER VENUE

Ponderosa Energy, LLC ("Ponderosa") and GS Energy, LLC ("GSE") (collectively, Ponderosa and GSE are the "Debtors"), the debtors and debtors-in-possession in these jointly administered chapter 11 cases respectfully oppose the *Motion to Transfer Venue of These Cases to the Northern District of Texas* [ECF No. 30] filed by two of the Debtors' creditors for the reasons set forth below.

---

[1] The last four digits of each Debtor's federal tax identification number are:  Ponderosa Energy, LLC (6262) and GS Energy, LLC (3426).

## SUMMARY

1. The Debtors chose to reorganize in the Southern District of New York because management is here. All major financial and operational decisions of these Debtors are made by a team of executives who work at the Debtors' offices on Fifth Avenue. The Debtors' ongoing restructuring efforts, including its successful effort to obtain debtor-in-possession financing and its ongoing efforts to secure additional funding, are all directed from New York.

2. While it is true that the Debtors' principal assets are oil and gas leases in Texas, and some of the Debtors' creditors also do business in Texas, those considerations do not warrant disrupting the administration of these estates by sending these cases to a court over 1700 miles away from where management is actively engaged in financing and restructuring efforts.

3. Congress expressly recognized that the location of a debtor's principal assets might not be the same as its principal place of business. *See* 28 U.S.C. § 1408. The movants here do not argue that venue would be improper in New York. Instead, they argue under § 1412 that it would be more "convenient" or that "justice" would be better served by moving these cases to Texas. The facts here support neither ground for transfer.

4. Convenience favors keeping these cases in New York for the benefit of the Debtors' management team. Virtually every issue requiring a factual record in these cases would involve the testimony of a New York-based member of management. Any review of the Debtors' books and records would occur in New York because that is where the books and records are kept. The successful reorganization of these Debtors will also likely depend on the financing and restructuring efforts currently underway in New York between the Debtors' New York-based executives and primarily New York-based funding sources and counterparties.

5. The movants' convenience argument is weak. While the PPF parties claim to be based in Dallas, the principals involved in negotiating the loans to the Debtors are based in Denver and Chicago. PPF's lending decisions are made in Europe. If witnesses on those issues are needed, it makes little difference whether they fly to Amarillo or New York. (The Debtors' primary assets are all located within the Amarillo Division of the Northern District of Texas.) Even PPF's representative in Dallas would have to fly over 360 miles to get to Amarillo. Flying to New York only slightly less convenient. As for other creditors, some may have offices or representatives near Amarillo, but others are spread throughout Texas. The movants can barely show a transfer of venue would be more convenient for *them*, let alone everyone else.

6. The "interest of justice" also strongly favors New York. The efficient administration of these cases is best served by staying close to the management team that is operating the Debtors and managing their finances. The movants argue that the pendency of three Texas state-court cases involving the Debtors require a transfer of venue to Texas. To the extent those litigations are central to the Debtors' reorganization, they should be resolved in federal Bankruptcy Court. There is therefore no "learning curve" advantage for the Bankruptcy Court for the Northern District of Texas that would justify moving these cases.

7. Courts have good reason to deny motions to transfer venue that would only serve to shift a travel inconvenience from one party to another. When venue is proper in the debtor's chosen forum, courts will not disrupt that choice in the absence of a compelling reason. Here, venue is undisputedly proper in this District, and the efficient administration of the cases is enhanced by staying close to the management team that is running the Debtors and organizing their restructuring efforts. The Court should deny the motion to transfer venue.

## BACKGROUND

8. On December 5, 2017, the Debtors filed voluntary petitions under chapter 11.

9. The Debtors continue to operate their businesses as debtors-in-possession.

10. The Debtors are oil and gas exploration and production companies.

### a. The Debtors' Management

11. The Debtors are managed by a team who works at the Debtors' offices at 745 Fifth Avenue, Suite 537, New York, NY 10151 (the "NY Office"). The NY Office is leased by Ponderosa, which shares the space with its co-debtor GSE. Ponderosa also shares the space with non-debtor Ponderosa TX Operating LLC ("TXOP"), which operates the mineral leases held by Ponderosa. GSE operates its own mineral leases.

12. The Debtors' management team consists of Richard Sands and Adam Sands. Richard and Adam provide managerial and administrative services to both Debtors. Since the bankruptcy filing, TXOP has paid Richard and Adam and reserves the right to assert claims against the Debtors' estates for the value of those services as administrative expenses. TXOP is doing this to minimize the cash expense burden on the Debtors as they go through the reorganization process.

13. Richard provides managerial services and ultimate executive oversight over the financial and operational decisions of the Debtors. Richard is primarily responsible for setting the strategic vision for the Debtors, making final decisions on operational and financial issues and obtaining financing. Richard is primarily responsible for arranging financing in support of the ongoing restructuring process of the Debtors. Richard lives in New York.

14. Adam Sands focuses on the operations of the Debtors. Adam oversees operation of the wells, approves spending, tracks production, sales, and receivables, facilitates compliance

with the Railroad Commission of Texas – the state agency that regulates the oil and gas industry, communicates with vendors and customers, ensures compliance with royalty payment requirements, and makes other day-to-day decisions relation to management of the Debtors' assets.  Adam lives in New York.

15. All of the major financial and operational decisions of the Debtors are made by the management team composed of Richard and Adam.

16. There are three other individuals who act in an advisory capacity.  All three are paid by TXOP.  As with Richard and Adam, TXOP reserves the right to assert claims against the Debtors' estates for the value of the services provided by these individuals as administrative expenses.

17. William "Bill" Poon provides primarily administrative services for the Debtors.  Bill updates the Debtor's accounting records, maintains insurance coverage over the hundreds of wells and leases owned by the Debtors, manages human resources, and performs additional administrative duties that are crucial to allowing the Debtors to operate their businesses.  Bill is also involved in financing and restructuring efforts.  Bill lives in New York and works out of the Debtors' NY Office.

18. Cory Meadows is an independent contractor with TXOP and is based in Borger, which is in the Northern District of Texas.  Cory provides consulting on field-level operations from time to time.  Cory has no authority to set company policy.  Cory is responsible for carrying out the decisions made by management.

19. Murray Grigg holds a minority interest in an entity that holds an interest in the entity that owns Ponderosa.  Murray lives in Houston, which is located in the Southern District of Texas.  Murray from time to time consults with the management team on strategic decisions

of the company. Murray also maintains from time to time a limited number of well files in Houston. All other files and books and records of the Debtors are in New York.

### b. The Debtors' Finances

20. The Debtors each maintain one bank account at Signature Bank in New York.

21. The Debtors' financial books and records are maintained at the NY Office.

22. The Debtors' operational books and records, with the exception of some well files maintained by Grigg, are maintained at the NY Office.

23. The Debtors' interim debtor-in-possession financing was extended by an entity affiliated with Richard that is based in New York.

24. Richard continues in his efforts to secure financing in support of the effective reorganization of the Debtors. Those efforts occur almost entirely in the New York metropolitan area. The main sources of financing are New York based. The efforts are coordinated from the Debtors' NY Office.

### c. The Debtors' Assets

25. Aside from the Debtors' bank accounts and books and records, which are located in New York, the Debtors' only assets are oil and gas leases located in counties within the Amarillo Division of the Northern District of Texas.

26. The Amarillo Division sits in the J. Marvin Jones Federal Building at 205 Southeast Fifth Avenue, Amarillo, Texas 79101. This is about 360 miles from Dallas, 600 miles from Houston and 1700 miles from New York.

### d. The PPF Entities

27. The movants are Petroleum Production Finance, Inc., PPF 2 LLC and PPF 3 LLC (collectively, the "PPF Entities"). The PPF Entities are secured creditors of the Debtors,

although the amount and validity of their claims are in dispute. The Debtors have filed an adversary against the PPF Entities and others for, among other things, fraud and usury.

28. The PPF Entities are ultimately owned or controlled by Oppenheimer Resources SICAV-SIF, a Luxembourg entity. The lending decisions of the PPF Entities are made in Europe, not Texas.

29. The PPF Entities' principals who negotiated the loans to the Debtors were Davis Martin, Peter Tresslar, Robert Tresslar and John Lane. Martin is based in Dallas, Peter Tresslar is based in Chicago, and Robert Tresslar is based in Denver. Lane's whereabouts are unknown.

## ARGUMENT

30. As a threshold matter, no one disputes that venue is proper in this District under 28 U.S.C. § 1408. Section 1408(1) places venue in the district of "the domicile, residence, principal place of business in the United States, or principal assets in the United States." *Id.* Venue is proper in the Southern District of New York because the Debtors' principal place of business is the NY Office on Fifth Avenue. The movants do not dispute this.

31. Instead, the PPF Parties seek to transfer venue to the Northern District of Texas under 28 U.S.C. § 1412 and Rule 1014 of the Federal Rules of Bankruptcy Procedure. Those authorities provide that, even where venue is proper under Section 1408, the Court may transfer a case to another district either "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412; Fed. R. Bankr. P. 1014(a).

32. "[T]ransfer is a cumbersome disruption of the Chapter 11 process," *In re Pavilion Place Associates*, 88 B.R. 32, 35 (Bankr. S.D.N.Y. 1988), and "is not to be taken lightly." *In re Enron Corp.*, 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002), *abrogated on other grounds*, 317 B.R. 629 (Bankr. S.D.N.Y. 2004) (citing *Matter of Commonwealth Oil Refining Co. (CORCO)*, 596

F.2d 1239, 1248 (5th Cir. 1979)). Where venue is proper under § 1408, a debtor's preferred venue is entitled to "great weight." *In re Patriot Coal Corp.*, 482 B.R. 718, 739 (Bankr. S.D.N.Y. 2012). Accordingly, the party seeking to transfer venue bears "a heavy burden of proof." *In re Lionel Corp.*, 24 B.R. 141, 142 (Bankr. S.D.N.Y. 1982).

33. The movants cannot carry their burden under either the "convenience of the parties" or the "interest of justice" test. Convenience of the management team weighs strongly in favor of keeping these cases close to home, even if the movants might suffer the incremental inconvenience of flying from Dallas to New York, rather than from Dallas to Amarillo, for hearings. Justice is best served by respecting management's decision to reorganize in the same District where the very people who are carrying out the restructuring live and work.

I.  **The Debtors' Restructuring Should Stay in New York Where Management Is.**

34. Venue choices rarely please everyone. A debtor's chosen forum "is entitled to great weight," *Patriot Coal*, 482 B.R. at 739, and a motion to transfer venue should be denied where transfer "would merely shift the inconvenience from one party to the other, or where after balancing all the factors, the equities leaned but slightly in favor of the movant[.]" *In re Garden Manor Assocs., L.P.*, 99 B.R. 551, 555 (Bankr. S.D.N.Y. 1988) (internal quotations omitted).

35. The factors bearing on the convenience of the parties include: the proximity of the creditors and the debtor to the Court, the proximity of witnesses necessary to the administration of the estate, the location of assets, the economic administration of the estate and the need for ancillary administration in the event of liquidation. *CORCO*, 596 F.2d at 1247; *see also Enron*, 274 B.R. at 343 ("The seminal circuit court case on the issue of whether to transfer venue of a bankruptcy case under 28 U.S.C. § 1412 and Federal Rule of Bankruptcy Procedure 1014 is CORCO."). "The most weight is given to the promotion of the economic and efficient

administration of the estate." *In re Dunmore Homes, Inc.*, 380 B.R. 663, 676 (Bankr. S.D.N.Y. 2008); *see also CORCO*, 596 F.2d at 1247.

36. Here, the factors weigh in favor of keeping the cases in New York because that is the location of the Debtors' management team and their ongoing restructuring efforts, even if some creditors might find it more convenient to travel a shorter distance to the courthouse.

### A.   New York is the Most Efficient Place to Administer the Estates.

37. Both Debtors are controlled and managed by a management team, both of whom live in New York and work at the Debtors' office on Fifth Avenue. Although the Debtors' principal assets are located in Northern Texas, the decisions governing the operation of those assets occur in New York.

38. The success of these cases will turn in large part on the financing and reorganization efforts of the management team in New York. The Debtors' current debtor-in-possession financing was extended by a related entity located in New York. The Debtors' efforts to raise additional funds are based in New York and are directed primarily at New York lenders.

39. In short, the success of these cases is

> dependent upon a group of professionals and business people who have determined that [New York] is the proper venue for the case. Were the venue to change, it would not result in a change in the key individuals that are making decisions . . . . Rather, [it] would simply make it that much less convenient for [the Debtors'] decision-makers to efficiently and economically administer [the] estate[s].

*In re Enron Corp.*, 284 B.R. 376, 394 (Bankr. S.D.N.Y. 2002), *abrogated on other grounds*, 317 B.R. 629 (Bankr. S.D.N.Y. 2004).

40. The *Enron* court's reasoning applies with equal force here, where a transfer of venue to Texas would simply impose an additional time and expense burden on the Debtors' management team. New York is plainly the most efficient location to administer the estates.

**Debtor's Opposition to** 9
**Motion to Transfer Venue**

### B. The Debtors and Witnesses Are in New York, but Some Creditors Are Not.

41. As discussed, the Debtors themselves are managed from New York. The members of the Debtors' management team are the most likely to be the witnesses to build a fact record with respect to key issues in this case – including venue. Information related to the Debtors' finances and operations resides in New York with the management team. Therefore, the proximity of the Debtors and the witnesses are factors that weigh against transfer.

42. The movants claim that New York is inconvenient because many creditors appear to be based in Texas. This can be misleading. Texas is big. Travel within Texas is not necessarily more convenient than travel to New York. Because the Debtors' assets are all located within the geographic territory of the Amarillo Division of the Northern District of Texas, these cases would likely be assigned to that Division. Amarillo is about 360 miles away from Dallas, where the PPF Parties say they are based. It is not at all clear that travel to New York – which is a major city served by three airports with hundreds of flights a day – would be any less convenient than travel to Amarillo, a relatively small city with far less infrastructure.

43. Further, access to the courts is not the challenge it once was. This Court routinely allows parties to participate by phone and make filings online. Finally, because an Official Committee of Unsecured Creditors has been appointed, there is less reason for concern that the cost of travel would prevent effective representation of creditors with smaller claims. With a committee in place transfer of venue likely would have little or no effect on creditor participation. *See In re Walston AirBusiness, Inc.*, 26 B.R. 955, 958 (Bankr. N.D. Ill. 1983) (reasoning that formation of unsecured creditors' committee reduced the need for involvement of many individual creditors outside the district).

44. Here, the proximity of the parties and witnesses favors venue in New York. As the *Enron* court explained, even if the proximity of creditors "were to strongly favor transferring venue, this factor alone would not be determinative." 284 B.R. at 400. The convenience of the Debtors' management, who are critical to every aspect of these cases and who are the most likely witnesses on key issues, outweigh the convenience of a subset of creditors.

C. **Location of Assets and Need for Ancillary Proceedings Upon Liquidation.**

45. Aside from the Debtors' bank accounts in New York, the primary assets are oil and gas leases located in the Amarillo Division of the Northern District of Texas. These assets are administered from the Debtors' offices in New York.

46. Anticipation of liquidation is generally "'an illogical basis upon which to predicate a transfer.'" *Enron*, 284 B.R. at 403 (declining to transfer venue to the location of assets that the debtor anticipated selling because there was no expectation of a conversion to a chapter 7 case) (quoting *CORCO*, 596 F.2d at 1248). Even so, liquidation of these assets will likely involve a search for buyers on a national or even international basis. There is no demonstrable benefit to moving these cases to Texas at this time.

47. As several courts have noted, the location of the assets of the Debtor is often "not particularly important." *In re One-Eighty Invs., Ltd.*, 18 B.R. 725, 729 (Bankr. N.D. Ill. 1981); *see also Enron*, 284 B.R. at 390; *CORCO*, 596 F.2d at 1248. This is particularly true because the "goal of the bankruptcy is rehabilitation rather than liquidation." *CORCO*, 596 F.2d at 1248. In these chapter 11 cases, the location of the assets weighs little, if at all, in favor of transfer.

48. Taken together, the convenience factors weigh in favor of keeping venue in New York. Although some creditors might prefer to litigate in the Northern District of Texas, it

would be improper to disturb the Debtors' own reasoned decision to restructure in the forum where its management team resides and its reorganization efforts are based.

## II. Justice Favors Respecting Management's Chosen Venue in New York.

49. The "interest of justice" prong is a "broad and flexible standard" that focuses on whether transfer "would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness." *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990). "[T]he considerations involved with the interest of justice are intertwined with the economic and efficient administration of the estate." *Enron*, 284 B.R. at 404.

50. In addition to the economic and efficient administration of the case, courts also look to the interest of judicial economy, where the parties can get a fair trial, the interest of the forum in deciding the controversy within its borders, the enforceability of any judgment and the plaintiff's original choice of forum. *Dunmore*, 380 B.R. at 672; *see also id*. The most important factor is usually the efficient administration of the estate. *Patriot Coal*, 482 B.R. at 747.

### A. Efficient Administration Strongly Favors New York.

51. As discussed above, the Debtors' management team is located in New York and the all of the Debtors' major financial and operational decisions are made there. It would be hugely disruptive to the management team and to the reorganization process to move these cases over 1700 miles away to the Northern District of Texas. Administration of these cases would suffer under the time and expense burden placed on management by moving these cases.

52. To evaluate the economic and efficient administration of the estate, courts consider where the debtor's business is conducted, major business decisions made, and the location of likely sources of capital. *Garden Manor*, 99 B.R. at 554-55. All of those things are located or taking place in New York.

**B.     Judicial Economy Would Not Be Enhanced by Changing Venues.**

53.     The movants argue that pending state-court cases involving the Debtors in Texas warrant a transfer of venue. The movants cite no case law, and the Debtors are aware of none, that supports the notion that pending *state-court* litigation involving a debtor is, alone, a sufficient reason to transfer venue of a chapter 11 case to another *federal* bankruptcy court that happens to be in the same state as the pending litigation. No "learning curve" advantage applies because none of these cases are currently pending in Bankruptcy Court for the Northern District of Texas.

54.     To the extent any of the state-court litigation raises issues that are central to the administration of these cases, as the PPF Parties imply, those issues should be resolved in a federal forum as part of a coordinated and comprehensive reorganizational effort. *See, e.g.*, *In re Iridium Operating LLC*, 285 B.R. 822, 837 (S.D.N.Y. 2002) (noting Congressional policy in favor of "centralizing all core matters in the bankruptcy court"); *see also In re Salander-O'Reilly Galleries, LLC*, 475 B.R. 9, 27 (S.D.N.Y. 2012) ("[B]ankruptcy courts are not precluded from adjudicating state-law claims when such claims are at the heart of the administration of the bankrupt estate"). This Court is more than equipped to adjudicate the sort of garden variety breach of contract and fraudulent misrepresentation claims raised in the state-court litigation and described at length in the Motion to Transfer Venue.

**C.     The Parties Can Get a Fair Trial in New York.**

55.     The movants can get a fair trial in New York, so this factor does not weigh in favor of a transfer of venue.

**D.    Both New York and Texas have an Interest in Adjudicating these Cases.**

56.    While Texas courts no doubt have an interest in resolving controversies within the borders of that state, New York similarly has an interest in facilitating the effective reorganization of businesses that operate within its borders.  Moreover, the disputes here are primarily contractual in nature and concern the validity and extent of secured loans from the PPF Parties to the Debtors.  While the lenders are in Texas, the borrowers are managed in New York.  Both states have an interest in making sure these cases are a success and that these Debtors are reorganized successfully.

**E.    New York Judgments Are Enforceable in Texas.**

57.    The movants do not claim that the decisions of this Court would not be enforceable in Texas, so this factor does not weigh in favor of transfer of venue.  Indeed, to the extent the judgment of this Court would have to be domesticated in Texas for enforcement, the same is true of a federal court sitting in Texas.

**F.    The Debtors' own Choice of Venue Should Not Be Disturbed.**

58.    The Debtors' management team carefully considered multiple venue options in these cases.  These included Delaware, where the Debtors are domiciled by virtue of their organizational law, Northern Texas, where the primary assets are, and the Southern District of New York, where the management team is located.

59.    Management selected New York to maximize the efficiency of the bankruptcy process.  Management knows that they will likely travel to court on a regular basis, both to provide testimony and to continue to manage the restructuring process. Management rejected the notion of traveling to Wilmington constantly for these cases because it would be an inconvenience and an unnecessary distraction.  Similarly, management determined that filing

these cases in Texas would provide no significant benefit to the Debtors and their reorganization efforts.

60. This Court should respect the Debtors' analysis and choice of venue and deny the movant's motion to transfer venue.

## Conclusion

61. For the foregoing reasons, the Motion to Transfer Venue should be denied.

Dated: New York, New York

January 10, 2017

Respectfully submitted,

DIAMOND McCARTHY LLP

*/s/ Christopher R. Murray*
Charles M. Rubio
Christopher R. Murray
909 Fannin, Suite 3700
Houston, TX 77010
(713) 333-5100
crubio@diamondmccarthy.com
cmurray@diamondmccarthy.com

Allan B. Diamond
Adam L. Rosen
489 Fifth Avenue, 21st Floor
New York, NY 10017
(212) 430-5400
adiamond@diamondmccarthy.com
arosen@diamondmccarthy.com

*Proposed Counsel to Debtors
and Debtors-In-Possession*