UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

\---------------------------------------------------------- x

In re:

      PONDEROSA ENERGY, LLC and
      GS ENERGY, LLC

                             Debtors.

\---------------------------------------------------------- x

Chapter 11
Case No. 17-13484-SHL
(Jointly Administered)

## ORDER AUTHORIZING AND APPROVING SETTLEMENT AND SALE AGREEMENT BY AND AMONG THE DEBTORS AND CERTAIN SECURED CREDITORS PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002 AND 9019; AND AUTHORIZING AND APPROVING PRIVATE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND INTERESTS UNDER SUCH SETTLEMENT AND PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002 AND 6004

Upon the motion dated March 20, 2018 [ECF No. 79] (the "Motion") of Ponderosa Energy, LLC and GS Energy, LLC, as debtors and debtors in possession (together, the "Debtors") seeking entry of an order authorizing and approving (i) the Settlement and Sale Agreement by and among the Debtors and certain secured creditors, attached as **Exhibit 1** hereto and incorporated herein by reference (the "Agreement"), and (ii) the private sale of substantially all of the Debtors' assets free and clear of all liens, claims, and interests under such Agreement, pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 9019; and the Court having conducted a hearing (the "Hearing") on April 11, 2018, and having determined at the Hearing that (a) entry into the Agreement constitutes the exercise by the Debtors of sound business judgment, and is in the best interests of the Debtors, their estates and creditors, and all parties in interest, and (b) the consideration provided by Petroleum Production Finance, Inc., PPF 2 LLC, and PPF 3 LLC (the "PPF Parties") and their assigns, including Borger Resources 2 LLC, a Missouri limited liability company, Borger Resources 3 LLC, a

Missouri limited liability company, and other such entities as the PPF Parties may designate (the "PPF Transferees"), pursuant to the Agreement is fair and adequate and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative; and all parties in interest having been heard or having had the opportunity to be heard regarding the sale (the "Sale") of the properties listed in Exhibit A to the Agreement (the "Properties") to the PPF Transferees; and the Court having reviewed and considered the Motion, the materials submitted by the Debtors in support of the Motion, the Agreement, and the arguments of counsel made and the evidence adduced at the Hearing; and upon the record of the Hearing and this chapter 11 case (the "Case"), and after due deliberation thereon, and good cause appearing therefor:

BASED ON THE REPRESENTATIONS OF THE PARTIES, IT IS HEREBY FOUND AND DETERMINED THAT:[1]

A.      The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. § 157 and 1334(b). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

B.      Venue of this Chapter 11 Case and the Motion in this district is proper under 28 U.S.C. § 1408.

C.      The statutory and legal predicates for the relief requested in the Motion are §§ 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), and Rules 2002, 6004, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[1]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  *See* Fed. R. Bankr. P. 7052.

2

D.    Notice of the Motion and the Hearing has been provided to: (i) the Office of the United States Trustee for the Southern District of New York; (ii) counsel to the PPF Parties; (iii) the Internal Revenue Service; (iv) all state and local taxing authorities and recording offices which have a reasonably known interest in the relief requested; (v) all creditors and other parties set forth on the Debtors' Schedules and Creditor Matrix maintained in this case; and (vi) all other parties required to receive notice of this Motion pursuant to Bankruptcy Rule 2002.

E.    The notice given by the Debtors of the Motion, the Agreement, the Hearing, and the Sale constitutes good and sufficient notice of the relief granted by this Order and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 6004(a).

F.    Entry into the Agreement constitutes the exercise by the Debtors of sound business judgment, and is in the best interests of the Debtors, their estate and creditors, and all parties in interest.  The Debtors have articulated good and sufficient business reasons justifying entry into the Agreement with the PPF Parties.   The consideration provided by the PPF Transferees pursuant to the Agreement (i) is fair and adequate, (ii) will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative, and (iii) constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and § 548 of the Bankruptcy Code) under the Bankruptcy Code and under applicable law. Additionally, the Agreement is a reasonable compromise and resolution of all of the disputes between the Debtors and the PPF Parties and of the PPF Parties' claims against the Debtors, the Properties, and the Debtors' estates.

3

G.     The settlement among the Debtors, the PPF Parties, Richard Sands, and Casimir Capital L.P. embodied in the Agreement and described in the Motion is fair and equitable and is in the best interests of the Debtors and their estates, because it will allow for the Debtors to expeditiously maximize the value of their assets, fully and finally resolve all litigation and other disputes among the parties related to the Case, provide for transfer of the Properties to the PPF Parties, which is a reasonable compromise of the PPF Parties' potential claims against the Debtors' estates, and potentially provide a means for payment of administrative and other claims that would otherwise be unavailable to the estates. The Agreement is, therefore, well above the lowest point in the range of reasonableness required under Bankruptcy Rule 9019.

H.     The Debtors and the PPF Transferees negotiated, proposed, and entered into the Agreement without collusion, in good faith, and from arm's-length bargaining positions. In accordance with Bankruptcy Rule 9019, and the Court having considered the relevant factors thereunder and whether the settlement falls within a range of reasonableness, including (1) the balance between the Litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment; (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining, the Court finds the settlement reasonable, fair, reached by each party in good faith and as a product of arm's length bargaining,

in the interests of the estates and all parties, and should be approved as set forth in the Agreement.

I.        The PPF Transferees are not "insiders" or "affiliates" of the Debtors as those terms are defined in §§ 101(31) and 101(2) of the Bankruptcy Code.

J.        Neither the Debtors nor the PPF Transferees have engaged in any conduct that would cause or permit the Agreement to be avoided under § 363(n) of the Bankruptcy Code. As alleged in more detail in the Agreement, the parties have filed lawsuits against other in state court in Texas and in an adversary proceeding in this Court, and have denied each other's claims and asserted counterclaims and defenses. The PPF Transferees have proceeded in good faith in all respects in that: (i) the Agreement was negotiated and entered into in good faith, based upon arm's length negotiations between them and the Debtors, and without collusion; (ii) the PPF Transferees have not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (iii) the negotiation and execution of the Agreement and any other agreements or instruments related thereto were in good faith. The PPF Transferees are buyers in good faith, as that term is used in the Bankruptcy Code, and are entitled to the protections of Bankruptcy Code sections 363(m) and 363(n) with respect to the Properties.

K.        The PPF Transferees have not violated Section 363(n) of the Bankruptcy Code by any action or inaction or engaged in any conduct that would cause or permit the Agreement or the Sale to be avoided pursuant thereto. Specifically, the PPF Transferees have not acted in a collusive manner with any person and the consideration was not controlled by any agreement among bidders.

L.        The Debtors have demonstrated compelling circumstances for the Sale outside: (i) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code; and (ii) a

plan of reorganization or liquidation, pursuant to section 1129 of the Bankruptcy Code, in that, among other things, the immediate consummation of the Sale to the PPF Transferees is necessary and appropriate to realize the value of the Debtors' estates and the Sale and the Agreement related thereto will provide the only means for the Debtors to maximize distributions to the Debtors' creditors. Time is of the essence in consummating the Sale and the Agreement.

M.    The PPF Transferees are not mere continuations of the Debtors or their estates, and there is no continuity of enterprise between the PPF Transferees and the Debtors.  The PPF Transferees are not successors to the Debtors or their estates and the Sale does not amount to a consolidation, merger, or de facto merger of the PPF Transferees and the Debtors.  The PPF Transferees will not have any successor or transferee liability for liabilities of the Debtors or any affiliate of the Debtors or any other settling party (whether under federal or state law or otherwise) as a result of the sale of the Properties.

N.    The consummation of the Sale of the Properties to the PPF Transferees is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale.  In particular, the Debtors may sell the Properties free and clear of all liens, claims, or encumbrances of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code have been satisfied.  Any party with an interest in the Properties who did not object, or who withdrew its objection, to the Sale is deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Any party with a lien, claim, or other interest in the Properties who did object falls within one or more of the other subsections of section 363(f) of the Bankruptcy Code and is adequately protected by having its lien, claim, or

other interest, if any, attach to the net cash proceeds of the Sale ultimately attributable to the respective Property against or in which such liens or other interests are asserted with the same validity, enforceability, priority, and force and effect as they had against the Property or its proceeds as of the Petition Date.

O.    Pursuant to sections 105(a) and 363 of the Bankruptcy Code and effective as of the closing of the sale and/or assignment of the Properties to the PPF Transferees (the "Closing"), all Persons (as defined in section 101(41) of the Bankruptcy Code) are hereby enjoined from taking any action against the PPF Transferees or their affiliates (as they exist immediately prior to Closing) to recover or enforce any interests that such Person(s) may have against the Properties.

P.    Pursuant to section 363(m) of the Bankruptcy Code, the reversal or modification of this Order on appeal shall not affect the validity or the transfer of the Properties to the PPF Transferees, unless the same is stayed pending appeal prior to the Closing and consummation of the Sale of the Properties as authorized by this Order.

Q.    The Sale does not constitute a *sub rosa* chapter 11 plan. The Sale neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates a liquidating plan of reorganization for the Debtors.

R.    The PPF Parties allege that the Sale does not involve any executory contracts because the oil and gas leases, assignments and volumetric production payments are all real property interests under Texas law. To the extent the mineral interests transferred pursuant to the Sale are deemed executory contracts, they are expressly assumed by and assigned to the PPF Parties.

S.      Debtors informed the Court at the Hearing that they are not going to have enough

cash at closing to satisfy their tax payment obligation to the PPF Parties set forth in Paragraph

5(c) of the Agreement (which requires a minimum payment from cash on hand of $76,468.60).

The Debtors agree that the PPF Parties may offset and deduct $76,468.60 (the amount set forth in

Exhibit F of the Agreement) from the consideration amount set forth in Paragraph 5(a) of the

Agreement, resulting in a final Settlement Payment amount of $398,531.40.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.      Any objections to the Motion, as they pertain to the entry of this Order, are

overruled to the extent they have not been withdrawn, waived or otherwise resolved.

2.      The Debtors are hereby authorized to take any and all actions necessary to

consummate the transactions contemplated by the Agreement (including any ancillary

documents), a copy of which is attached hereto as **Exhibit 1**, and this Order.

3.      Closing of the Sale shall take place, pursuant to the Agreement, immediately after

the expiration of the fourteen day appeal period following entry of this Order, or sooner if the

parties to the Agreement so desire.  Upon Closing, in full and final settlement, satisfaction and

discharge of any and all claims of the Debtors against the PPF Parties related to the VPP

Transactions or the Properties, the PPF Parties shall pay THREE HUNDRED NINETY EIGHT

THOUSAND, FIVE HUNDRED AND THIRTY ONE and 40/100 DOLLARS ($ 398,531.40)

(the "Settlement Payment"), directly to the Debtors, in cash, by wire transfer of immediately

available funds on the date of the Closing, as set forth in the Agreement. If, for any reason, the

PPF Parties fail to pay the Settlement Payment to the Debtors upon the Closing of the

Settlement, then the releases provided by GS Energy, LLC; Ponderosa Energy, LLC; Richard F.

Sands; and Casimir Capital L.P. (the "<u>Ponderosa Parties</u>") in the Agreement shall be null and void and shall be of no force and effect.

4.     Immediately upon expiration of the fourteen day appeal period following entry of this Order, the Debtors and the PPF Parties shall promptly take any and all action necessary to dismiss the lawsuit in the 160th Judicial District Court of Dallas County, Texas, Cause No. DC-17-04608 ("<u>Dallas Lawsuit</u>"), the lawsuit in the 84th Judicial District Court of Hutchinson County, Texas, Cause No. 42908 ("<u>Hutchinson Lawsuit</u>"), and the adversary proceeding in this Court, Adversary No. 17-01239-SHL (the "<u>Adversary Proceeding</u>") (collectively, the "<u>Litigation</u>"), with prejudice.

5.     The terms of this Order shall be binding on and inure to the benefit of the Debtors, the PPF Transferees, all creditors and all other parties-in-interest, and any assigns or successors of such parties.

6.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, the terms of this Order shall be immediately effective and enforceable upon its entry and not subject to any stay, notwithstanding the possible applicability of Bankruptcy Rules 6004(h) or otherwise.

7.     To the extent that this Order is inconsistent with the Agreement, the terms of this Order shall govern.

8.     The failure to include specifically any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

9.     As and when requested by any party, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments, and shall take, or cause

to be taken, all such further and other actions as such other party may reasonably deem necessary or desirable to consummate the Sale and the Agreement.

10. The Ponderosa Parties and the PPF Parties are each hereby authorized and directed to perform in accordance with the terms of the Agreement.

11. Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtors are authorized and directed to sell and transfer all of the Debtors' right, title and interest in and to the Properties to the PPF Transferees in accordance with the Agreement (including any ancillary documents), and such sale and transfer shall (a) constitute a legal, valid, binding, and effective transfers of the Properties, (b) upon the Debtors' receipt of the respective purchase prices, vest the PPF Transferees with all right, title, and interest of the Debtors to the Properties, free and clear of all liens, claims, and other interests in and on the Properties pursuant to § 363(f) of the Bankruptcy Code, and (c) constitute transfers for reasonably equivalent value and fair consideration under the Bankruptcy Code and the laws of the state(s) in which PPF Transferees are incorporated and any other applicable non-bankruptcy laws.

12. Except as otherwise provided in the Agreement, all persons holding liens or claims of any kind or nature whatsoever against the Debtors or the Properties shall be and hereby forever are barred, estopped, and permanently enjoined from asserting, prosecuting, commencing, continuing, or otherwise pursuing in any manner any action, claim, or other proceeding of any kind, directly or indirectly, against the PPF Transferees, any affiliates of the PPF Transferees (as they existed immediately prior to the Closing of the Sale) or the Properties, including any action, claim, or other proceeding seeking to prevent or interfere with the consummation of the Sale, with the retrieval by the PPF Transferees or the delivery to the PPF Transferees of possession of the Properties by the PPF Transferees. Following the applicable

Closing dates, no holder of a lien, claim or other interest in or against the Debtors or the Properties shall interfere with the PPF Transferees' title to or use and enjoyment of the Properties based on or related to such lien, claim, or other interest.

13.    Pursuant to sections 105(a) and 363 of the Bankruptcy Code and effective as of the Closing of the Sale and/or assignment of the Properties to the PPF Transferees, all Persons (as defined in section 101(41) of the Bankruptcy Code) are hereby enjoined from taking any action against the PPF Transferees or their affiliates (as they exist immediately prior to Closing) to recover or enforce any interests that such Person(s) may have against the Properties.

14.    Pursuant to section 363(m) of the Bankruptcy Code, the reversal or modification of this Order on appeal shall not affect the validity or the transfer of the Properties to the PPF Transferees, unless the same is stayed pending appeal prior to the Closing and consummation of the Sale of the Properties as authorized by this Order.

15.    Obligations of the Debtors relating to taxes, whether arising under law, by the Agreement, or otherwise, shall be fulfilled by the party responsible for such obligations under the Agreement.

16.    The PPF Transferees shall not have any successor or transferee liability for liabilities of the Debtors or any affiliate of the Debtors (whether under law or otherwise) as a result of the sale of the Properties.

17.    <u>Sale Free and Clear</u>.  The sale of the Properties shall be free and clear of all liens, claims, encumbrances and other interests, with all such liens, claims, encumbrances or other interests in or on the Properties to attach to the net cash proceeds of the Sale ultimately attributable to the Property against or in which such liens or other interests are asserted, subject to the terms of such liens or other interests, with the same validity, enforceability, priority, and

force and effect as they had against the Property or its proceeds as of the Petition Date, subject to any rights, claims and defenses any parties-in-interest may possess with respect thereto.

18.     No broker or party has a claim to any commission, broker's fee, finder's fee, or similar fee as a result of having negotiated the Agreement for, or on behalf of, the Debtors or the PPF Transferees.

19.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder of any state, county, or local authority to act to cancel any of the liens or claims of record.

20.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding any provision in the Bankruptcy Code or the Bankruptcy Rules to the contrary, the Court expressly finds there is no reason for delay in the implementation of this Order and, accordingly: (i) the terms of this Order shall be immediately effective and enforceable upon its entry; (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

21.     The provisions of this Order are non-severable and mutually dependent.

22.     Third parties, including recording and title agencies, shall recognize the transfers pursuant to this Order and shall not interfere with the transactions set forth herein.

23.     The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order, the Agreement, all amendments thereto, and any waivers and consents thereunder, and each ancillary document executed in connection therewith to which the Debtors are a party, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction

to (a) compel delivery of the Properties to the PPF Transferees, (b) interpret, implement, and enforce the provisions of this Order, and (c) protect the PPF Transferees against any liens or claims in or against the Debtors or the Properties of any kind or nature whatsoever; *provided, however*, that in the event the Court abstains from exercising or declines to exercise jurisdiction or is without jurisdiction, such abstention, refusal or lack of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

24.     In accordance with Bankruptcy Rule 9019, and the Court having considered the relevant factors thereunder, the Agreement and the terms and conditions set forth therein and in this Order are reasonable, fair, in the interests of the estates and all parties, and fall within the range of reasonableness, and hereby are approved.

25.     Solely as to the PPF Parties and the PPF Related Parties, the claims objection deadline is hereby extended to 15 days after the entry of this Order.

Dated: April 18, 2018

_/s/ **Sean H. Lane**_
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

In re:

       PONDEROSA ENERGY, LLC and
       GS ENERGY, LLC

                              Debtors.

------------------------------------------------------------ x

                                  Chapter 11
                                  Case No. 17-13484-SHL
                                  (Jointly Administered)

## SETTLEMENT AND SALE AGREEMENT AND RELEASE OF LIABILITY

    This Settlement and Sale Agreement and Release of Liability is made and entered into on March 16, 2018 ("***Effective Date***"), by and between Petroleum Production Finance, Inc.; PPF 2 LLC; PPF 3 LLC; GS Energy, LLC ("***GS Energy***"); Ponderosa Energy, LLC ("***Ponderosa Energy***" together with GS Energy, the "***Debtors***"); Richard F. Sands ("***Sands***"); and Casimir Capital L.P. ("***Casimir***").

    WHEREAS, PPF, PPF2, and PPF3 commenced an action against GS Energy, Ponderosa Energy, Sands and Casimir in the 160th Judicial District Court of Dallas County, Texas, Cause No. DC-17-04608 ("***Dallas Lawsuit***"), alleging, among other things, that said defendants breached certain contracts related to volumetric production payment transactions in which plaintiffs purchased barrels of oil from defendants to be delivered over a period of time;

    WHEREAS, GS Energy and Ponderosa Energy also commenced an action against Petroleum Production Finance, Inc., PPF 2 LLC, PPF 3 LLC, and John Holden, Substitute Trustee, in the 84th Judicial District Court of Hutchinson County, Texas, Cause No. 42908 ("***Hutchinson Lawsuit***"), alleging, among other things, that said defendants made usurious demands for payment relating to the volumetric production payment transactions at issue;

    WHEREAS, GS Energy and Ponderosa Energy each filed voluntary petitions for relief under Chapter 11 of the U.S. Bankruptcy Code in the Bankruptcy Court for the Southern District of New York (the "***Bankruptcy Court***"), Case No. 17-13484-SHL (Jointly Administered) (the "***Bankruptcy Case***") on December 5, 2017;

    WHEREAS, GS Energy and Ponderosa Energy commenced an adversary proceeding against Petroleum Production Finance, Inc., PPF 2 LLC, PPF 3 LLC, Davis Brothers Financial Group, Inc., Davis Martin, Robert Tresslar, Peter Tresslar, John Lane, James Lanshe, Oppenheimer Resources SICAV-SIF, and Selectra Management Company, S.A. in the Bankruptcy Court, Adversary No. 17-01239-SHL (the "***Adversary Proceeding***"), alleging, among other things, that said adversary defendants committed fraud, usury, and breaches of contract relating to the volumetric production payment transactions at issue;

    WHEREAS, the Parties deny liability, but wish to avoid protracted litigation to resolve their differences and desire to fully and permanently settle, discharge, and release any and all

claims they have or may have had against each other arising out of or in connection with the Dallas Lawsuit, the Hutchinson Lawsuit, and any additional claims that may have arisen before or after these lawsuits were filed;

WHEREAS, the Parties believe that settlement by way of this Agreement is in the Parties' best interests;

WHEREFORE, in consideration of the promises, representations, and warranties contained in this Agreement, the Parties agree as follows:

1. **Bankruptcy Court Approval -** It is understood and expressly agreed that this Agreement is subject to approval by the Bankruptcy Court. Upon execution of this Agreement, Debtors shall file a motion pursuant to Bankruptcy Rule 9019 seeking approval of the Agreement (the "***Approval Motion***") and take all steps that are reasonably necessary to seek a hearing on the Approval Motion and entry of an order by the Bankruptcy Court approving this Agreement (the "***Approval Order***"). The Approval Motion and Approval Order shall be in form and substance satisfactory to the Parties. It is expressly agreed that nothing in this Agreement shall be with any force or effect if and until the Bankruptcy Court issues an order, substantially in the form and content attached hereto as **Exhibit G** approving of this Agreement, and such approval is final and non-appealable.

2. **Definitions**

   a. "***Agreement***" shall mean this Settlement and Sale Agreement and Release of Liability.

   b. "***PPF Parties***" shall mean Petroleum Production Finance, Inc., PPF 2 LLC, and PPF 3 LLC.

   c. "***PPF Related Parties***" shall mean the PPF Parties, Davis Brothers Financial Group, Inc., Davis Martin, Robert Tresslar, Peter Tresslar, John Lane, James Lanshe, Oppenheimer Resources SICAV-SIF, and Selectra Management Company, S.A., and their predecessors, successors, assigns and past, present and future parent corporations, subsidiaries, affiliates, holding companies, divisions, unincorporated business units, joint venturers, partners, insurers, officers, directors, shareholders, managers, employees, agents, servants, representatives, officials, attorneys (including but not limited to Scott Sherwood, John Holden, Jordan Smith, Brian Kilpatrick and Jackson Walker L.L.P.), associates and trustees.

   d. "***Ponderosa Parties***" shall mean GS Energy, LLC; Ponderosa Energy, LLC; Richard F. Sands; and Casimir Capital L.P.

   e. "***Ponderosa Related Parties***" shall mean the Ponderosa Parties, and their predecessors, successors, assigns, heirs, and past, present and future parent corporations, subsidiaries, affiliates, holding companies, divisions, unincorporated business units, joint venturers, partners, insurers, officers, directors, shareholders,

managers, employees, agents, servants, representatives, officials, attorneys (including but not limited to Jeffrey R. Fine, Mark Andrews, Dykema Cox Smith, and Diamond McCarthy LLP), associates and trustees.

f.    "*Parties*" shall mean the PPF Parties and the Ponderosa Parties.

g.    "*Lawsuit*" shall mean the Dallas Lawsuit, the Hutchinson Lawsuit, and the Adversary Proceeding.

h.    "*Properties*" shall mean the leases and wells listed as "Included" in **Exhibit A** attached hereto, including the Included Leases In Carson County, Texas; the Included Wells In Carson County, Texas; the Included Leases In Gray County, Texas; the Included Wells In Gray County, Texas; the Included Leases In Moore County, Texas; the Included Wells In Moore County, Texas; the Included Leases In Hutchinson County, Texas; the Included Wells In Hutchinson County, Texas; and all equipment owned by the Ponderosa Parties used therein, thereon or in conjunction therewith as well as all minerals, easements and specifically rights-of-way owned by the Ponderosa Parties related thereto, as more fully described in **Exhibit A**. "*Properties*" does not mean and specifically excludes the leases and wells listed as "Excluded" in **Exhibit B** attached hereto, including the Excluded Leases In Carson County, Texas; the Excluded Wells In Carson County, Texas; the Excluded Leases In Gray County, Texas; the Excluded Wells In Gray County, Texas; the Excluded Leases In Moore County, Texas; the Excluded Wells In Moore County, Texas; the Excluded Leases In Hutchinson County, Texas; and the Excluded Wells In Hutchinson County, Texas (collectively, the "*Excluded Leases and Wells*").

i.    "*Molori*" shall mean Molori Energy Inc., formerly known as Taipan Resources, Inc., and shall include its agents, representatives, counsel, consultants, experts, investigators, employees, servants or assigns or any other entity acting on its behalf, past or present, but only in their capacity as such.

j.    "*VPP1 Transaction*" shall mean the first VPP transaction, in which PPF2 acquired oil from Ponderosa Energy's interests in mineral leases and wells in Hutchinson, Gray and Carson Counties, Texas, as listed in Exhibit A to the Conveyance of Term Overriding Royalty Interest ("*Ponderosa Conveyance*"), Production and Delivery Agreement ("*Ponderosa PDA*"), and Deeds of Trust, Mortgage, Assignment, Security Agreement and Financing Statement ("*Ponderosa Deeds of Trust*").

k.    "*VPP2 Transaction*" shall mean the second VPP transaction, in which PPF3 acquired oil from GS Energy's interests in mineral leases and wells in Carson, Moore and Hutchinson Counties, Texas, as listed in Exhibit A to the Conveyance of Term Overriding Royalty Interest ("*GS Conveyance*"), Production and Delivery Agreement ("*GS PDA*"), and Deeds of Trust, Mortgage, Assignment, Security Agreement and Financing Statement ("*GS Deeds of Trust*").

l.      "*VPP Transactions*" shall mean the VPP1 Transaction and VPP2 Transaction described below.

m.      "*VPP Agreements*" shall mean all of the documents executed between or by the Parties related to or constituting the VPP Transactions.

n.      "*Claims*" shall mean claims, counterclaims, demands, actions, causes of action, debts, liabilities, damages, costs, fees, expenses, rights, duties, obligations, liens, petitions, lawsuits, losses, controversies, executions, offsets and sums, of any kind or nature, whether direct or indirect, liquidated or unliquidated, contingent or actual, in law or equity, known or unknown, suspected or unsuspected, or of whatever type or nature:

    1.   that the PPF Parties asserted, or could have asserted, against the Ponderosa Related Parties in the Lawsuit;

    2.   that the Ponderosa Parties asserted, or could have asserted, against the PPF Related Parties in the Lawsuit;

    3.   related in any way to the VPP Transactions between the Parties;

    4.   related in any way to hedging transactions relating to the VPP Transactions between the Parties;

    5.   related in any way to rebates (or rebate letters) associated with the VPP Transactions;

    6.   related to any other conduct of the PPF Parties that was or could have been alleged to have violated any duties owed by the PPF Parties or the PPF Related Parties to the Ponderosa Parties or the Ponderosa Related Parties; or

    7.   related to any other conduct of the Ponderosa Parties that was or could have been alleged to have violated any duties owed by the Ponderosa Parties or the Ponderosa Related Persons to the PPF Parties or the PPF Related Parties.

All obligations of the Parties under this Agreement are excluded from Claims and shall survive execution of this Agreement.

3.      **VPP Transactions**

a.      The Lawsuit concerns the VPP Transactions: (1) a transaction in which PPF2 provided Ponderosa Energy with an advance payment for the purchase of oil to be repaid by Ponderosa Energy over a 42 month period; and (2) a transaction in which PPF3 provided GS Energy with an advance payment for the purchase of oil to be repaid by GS Energy over a 42 month period. Both of these transactions were negotiated and closed in the second half of 2016.

b.     As further security for the VPP Transactions, Ponderosa Energy and GS Energy granted mortgages/liens/security interests to PPF2 and PPF3 pursuant to the Ponderosa Deeds of Trust and GS Deeds of Trust (collectively, the "***Deeds of Trust***"). By these Deeds of Trust, certain of the PPF Parties, as Trustees, were granted a power of sale with respect to all of the Grantors' interests in and to the oil, gas and other mineral leases and associated wells which were described in Exhibit A to each of the Deeds of Trust.

c.     Ponderosa Energy and GS Energy desire to convey the record and beneficial fee simple indefeasible title to the Properties to PPF2 and PPF3 or their designee(s) in full and complete satisfaction of their obligations to PPF2 and PPF3 under the VPP Agreements, subject to the terms and conditions set forth herein. Such conveyance shall be by deeds of the Properties.

4.    **Lawsuit**

a.     <u>Dallas Lawsuit</u>: The PPF Parties filed the Dallas Lawsuit against the Ponderosa Parties alleging breach of contract, conspiracy, common law fraud and fraudulent inducement, fraud by nondisclosure, conspiracy to defraud, negligent misrepresentation, conversion, vicarious liability, joint enterprise liability, joint and several liability, money had and received, and unjust enrichment, and sought actual damages, exemplary damages, attorneys' fees, an accounting, and injunctive relief ("***PPF Claims***").

b.     <u>Hutchinson Lawsuit</u>: GS Energy and Ponderosa Energy filed the Hutchinson lawsuit against the PPF Parties (and John Holden, Substitute Trustee) alleging wrongful acceleration and usury, and sought actual damages, exemplary damages, attorneys' fees, and injunctive relief ("***Ponderosa Claims***").

c.     <u>Adversary Proceeding</u>: GS Energy and Ponderosa Energy filed the Adversary Proceeding against the PPF Parties (and Davis Brothers Financial Group, Inc., Davis Martin, Robert Tresslar, Peter Tresslar, John Lane, James Lanshe, Oppenheimer Resources SICAV-SIF, and Selectra Management Company), alleging usury, breaches of contract, fraud in the inducement, unjust enrichment, promissory estoppel, constructive fraudulent transfer, and sought declaratory judgments, actual damages, treble damages, and costs and attorney's fees ("***Adversary Claims***").

5.    **Consideration**

a.     <u>Funds</u>: In consideration for this settlement, the PPF Parties shall pay, in cash, to the estates for the Debtors, FOUR HUNDRED SEVENTY-FIVE THOUSAND and 00/100 DOLLARS ($ 475,000.00), by wire transfer of immediately available funds, immediately upon the expiration of fourteen days from the entry of a final non-appealable order of the Bankruptcy Court approving this Agreement (or, if the fourteen day period is waived by the Bankruptcy Court, within three business days after the entry of a final non-appealable order of the Bankruptcy Court

approving this Agreement), pursuant to wire instructions attached hereto as **Exhibit E**.

b.    <u>Deeds</u>: In consideration for this settlement and contemporaneously with the execution of this Agreement, GS Energy and Ponderosa Energy shall execute deeds, in recordable form, conveying all of the Properties to the PPF Parties' designees, Borger Resources 2 LLC, and Borger Resources 3 LLC, Missouri limited liability companies. The form for the Ponderosa Energy deed is attached hereto as **Exhibit C.** The form for the GS Energy deed is attached hereto as **Exhibit D**. A separate deed will be executed and recorded in each of the counties in which the Properties are located (with Exhibits setting forth the Included Leases, Included Wells, Excluded Leases and Excluded Wells). The PPF Parties reserve all rights under Section 51.006 of the Texas Property Code. The PPF Parties shall be solely responsible for recording the deeds and paying all state and local transfer fees and deed recording fees required to be paid in connection with the filing of the deeds. GS Energy and Ponderosa Energy represent and warrant that they own legal and equitable, indefeasible fee simple title to their respective owned interests in the Properties, and they are conveying the entirety of their interests in the Properties to the PPF Parties of their designees "free and clear" of any interest in such property of an entity, pursuant to section 363(f) of the Bankruptcy Code, including without limitation their working interest ("*WI*") percentages and net revenue interest ("*NRI*") percentages in amounts equal to the amounts set forth in **Exhibit A** (but if their actual working interest percentage and net revenue interest percentage is higher than set forth in **Exhibit A**, they are conveying the entirety of their interest). The effective date for such deeds occurs upon entry of the Approval Order becoming final and non-appealable, and the PPF Parties agree that the Ponderosa Parties may retain proceeds from all gas production on the Properties prior to entry of the Approval Order.

c.    <u>Cash in Bank Accounts:</u> In consideration for this settlement, the Debtors agree that promptly upon entry of an order by the Bankruptcy Court approving this Agreement, the Debtors will transfer to the PPF Parties all cash in each Debtors' bank account with Signature Bank (located at 565 Fifth Avenue, 12th Floor, New York, NY 10017), namely, redacted account number ****5896, which is maintained by Ponderosa Energy, and redacted account number ****1744, which is maintained by GS Energy. Debtors represent and warrant that the cash in the account will be in an amount equal to or greater than the amount of outstanding ad valorem taxes due for the Properties being conveyed to the PPF Parties pursuant to this Agreement, as set forth in **Exhibit F** attached hereto.

d.    <u>Taxes:</u> In consideration for this settlement, the PPF Parties agree that the PPF Parties will be responsible for payment of all unpaid ad valorem taxes assessed on the Properties, whether assessed and/or due and payable before or after the Effective Date of this Agreement. Attached hereto as **Exhibit F** is a chart summarizing ad valorem taxes due on the Properties and for which the PPF Parties shall be responsible pursuant to this provision.

e.  <u>Operations Pending Closing</u>: Debtors will continue to operate the Properties within the budget set forth in the Interim Cash Collateral Order (ECF No. 60) dated January 19, 2018, pending entry of the Approval Order.

f.  <u>Prior VPP Agreements</u>: In order to provide protection to the PPF Parties in the event this settlement is unwound for any reason in the future, the Parties agree that the VPP Agreements shall remain in full force and effect and shall survive the execution of this Agreement with respect to the Properties; provided, however, that the PPF Parties or their designee(s) to whom the Properties are conveyed shall become assignees of GS Energy and Ponderosa Energy's rights and responsibilities under the VPP Agreements with respect to the Properties, as more fully set forth in the deeds. Notwithstanding anything in this Agreement to the contrary, the PPF Parties hereby release the Excluded Leases and Wells from any and all liens and deeds of trust held and/or controlled by the PPF Parties with respect to the Excluded Leases and Wells, and the VPP Agreements are hereby amended to exclude the Excluded Leases and Wells.

g.  <u>Notice to All Known Creditors</u>: Debtors represent and warrant that they will provide notice of the Motion to all known creditors and parties in interest including holders of alleged liens.

h.  <u>Molori</u>: On November 2, 2017, Johannes (Theo) Van Der Linde, Chief Financial Officer of Molori Energy, Inc. f/k/a Taipan Resources, Inc., signed an Affidavit confirming that neither Molori nor any assignee of Molori owned any interest in any of the Properties as of that date. The Ponderosa Parties understand, represent and acknowledge that Johannes (Theo) Van Der Linde signed the Affidavit in his capacity as Chief Financial Officer of Molori.

i.  <u>State A-B Leases</u>: The PPF Parties have asserted claims of fraud relating to certain state leases in the Dallas Lawsuit. In consideration for this settlement, the PPF Parties disclaim all interest, ownership rights and/or any claims to the leases owned by Ponderosa-State Energy, LLC, a Delaware limited liability company, including without limitation those commonly referred to as the Ponderosa-State A-B leases.

j.  <u>Rebates</u>: The Debtors have asserted certain claims of fraud relating to rebates allegedly due in the Adversary Proceeding. In consideration for this settlement, the Ponderosa Parties disclaim all interest, ownership rights and/or any claims to rebates under the VPP Transactions, as alleged in the Adversary Proceeding, including, without limitation, the right to any interest in any hedging transactions created by or for the PPF Parties, and understand and agree that they are releasing all rights to any such claims by granting the release contained herein.

k.  <u>No Covenant Not to Compete</u>: Debtors agree that after entry of a final non-appealable order of the Bankruptcy Court approving this Agreement, Debtors will not enforce any non-compete agreements that they may have entered with Phillip Gunn against Phillip Gunn or any of the PPF Related Parties.

6.      **Mutual Releases**

   a.   Release By PPF Parties: For and in consideration of the promises and covenants contained in this Agreement and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the PPF Parties, together with all those claiming by, through or under them, hereby fully and forever release, acquit and discharge the Ponderosa Related Parties of and from the Claims. The PPF Parties also fully release and disclaim any and all liens, mortgages or other rights with respect to the Excluded Leases and Wells, none of which are being conveyed by the Ponderosa Parties and all of which shall remain property of the Ponderosa Parties. The PPF Parties covenant and agree that, except for any remedies related to a breach of the warranty of title to the Properties conveyed in the deeds or a breach of this Agreement, each of the PPF Parties will seek no remedies against any of the Ponderosa Related Parties with respect to the Properties or the transactions contemplated by this Agreement.

   b.   Release By Ponderosa Parties: For and in consideration of the promises and covenants contained in this Agreement and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Ponderosa Parties, together with all those claiming by, through or under them, hereby fully and forever release, acquit and discharge the PPF Parties and the PPF Related Parties of and from the Claims, and covenant not to sue the PPF Parties or the PPF Related Parties for the Claims being released herein.

7.      **Dismissal of Lawsuit**

   a.   Immediately upon the expiration of fourteen days from the entry of a final non-appealable order of the Bankruptcy Court approving this Agreement (or, if the fourteen day period is waived by the Bankruptcy Court, within three business days after the entry of a final non-appealable order of the Bankruptcy Court approving this Agreement), the Parties shall file agreed motions to dismiss with prejudice in the Dallas Lawsuit, the Hutchinson Lawsuit, and the Adversary Proceeding, asking those courts to dismiss the lawsuits with prejudice, using the appropriate form attached hereto as **Exhibit H**.

   b.   Each Party shall bear its respective costs and attorneys' fees.

8.      **Enforcement of Possession**

   a.   Surrender of Properties. The Ponderosa Parties shall immediately surrender possession of the Properties to the PPF Parties or their designee(s), and shall vacate the Properties after which the PPF Parties or their designee(s) shall have the unqualified right to enforce their right of possession.

   b.   Waiver: The Ponderosa Parties hereby knowingly and irrevocably waive any and all defenses they may have to any eviction proceedings related to the Properties. The Ponderosa Parties shall execute any other pleadings, transfer

orders and/or documents later deemed reasonably necessary in order to facilitate entry to the Properties and/or enforcement of this Agreement.

c.   Operation: After execution of the deeds, the PPF Parties or their designee(s) shall assume the obligations of operation of the Properties, shall acquire adequate operator bonds (the "**_PPF Operator Bonds_**"), and shall transfer all Included Wells to the PPF Operator Bonds. After execution of the deeds, the Ponderosa Parties agree to execute any other documents deemed reasonably necessary in order to facilitate transfer of operation, including without limitation any forms required by the Texas Railroad Commission (such as a Producer's Transportation Authority and Certificate of Compliance Form - Form P4).

9.   **Representations, Warranties and Covenants** - The Parties represent and warrant to each other and agree with each other as follows:

a.   The Parties to this Agreement have received independent legal advice from attorneys of their own choosing with respect to the advisability of executing this Agreement, and prior to the execution of this Agreement by each Party, the Party's attorneys reviewed this Agreement.

b.   Except as expressly stated in this Agreement, no Party to this Agreement has made any statement or representation to any other Party to this Agreement regarding any fact relied upon by such other Party in entering into this Agreement, and each Party specifically does not rely upon any statement, representation, or promise of the other Party in executing this Agreement, except as expressly stated in this Agreement.

c.   There are no other agreements or understandings between the Parties to this Agreement with respect to the subject matter hereof except as stated in this Agreement.

d.   Each Party to this Agreement, together with its attorneys, has made such investigation of the facts pertaining to this Agreement, and of all the matters pertaining thereto, as it deems necessary.

e.   The terms of this Agreement, including the recitals, are all contractual, not mere recitals, and this Agreement is the result of negotiations between the Parties to this Agreement, each of which has participated in the drafting of this Agreement through its respective attorneys.

f.   This Agreement has been carefully read by, the contents hereof are known and understood by, and it is signed freely by each person executing this Agreement.

g.   Each Party to this Agreement has the power and authority to enter into and perform this Agreement, and the execution and performance of this Agreement has been duly authorized by all requisite corporate or partnership action.

h.    Each Party to this Agreement agrees that such Party will not take any action that would interfere with the performance of this Agreement by any other Party to this Agreement or that would adversely affect any of the rights provided for in this Agreement.

i.    No Party to this Agreement has heretofore assigned or transferred or purported to assign or transfer to any person, firm, or corporation whatsoever any of the Claims herein released. Each Party hereto agrees to indemnify and hold harmless each other Party hereto against any actions, causes of action, debts, dues, liabilities, controversies, claims, counterclaims, crossclaims, third-party claims or demands based on, arising out of, or in connection with any such transfer or assignment or purported transfer or assignment, including all attorneys' fees and costs incurred in connection therewith.

j.    Each Party represents and warrants to each of the other Parties to this Agreement that it has not assigned or in any manner whatsoever conveyed any Claim hereby released by it.

k.    The Parties warrant and represent that no tax advice has been offered or given by any party in the course of these negotiations, and the Parties are relying upon the advice of their own tax consultant with regard to any tax consequences that may arise as a result of the execution of this Agreement.

10.    **Ponderosa Parties Representations –** Each and every one of the Ponderosa Parties represents and warrants that:

a.    It/he has not assigned or transferred or purported to assign or transfer to any person, firm, or corporation whatsoever any interest in any of the Properties, and that it/he owns the entirety of the working interest and net revenue interest listed therein.

b.    It/he has not transferred or assigned any interest, working interest or net revenue interest in any of the Properties to Molori, that Molori does not presently own any interest, working interest or net revenue interest in any of the Properties, and that the PPF Parties and the PPF Transferees are relying on the Affidavit referenced in paragraph 5(h) above in entering into this settlement.

11.    **Survival of Representations, Warranties and Covenants** - The representations, warranties, and covenants found in this Agreement survive only through execution of the deeds described herein, and do not extend beyond execution of such deeds.

12.    **Legal Construction** - In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions thereof and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein to the extent such change does not alter the intent of the Agreement. When the words "include" or "including" are used, the words, "without limitation" shall be implied.

13. **No Admissions -** It is understood and agreed that this Agreement is the compromise of an existing dispute and is not intended to be construed as an admission of liability on the part of any party hereto.

14. **Parties Bound** - This Agreement shall be binding on and inure to the benefit of the Parties hereto and their respective heirs, executors, administrators, legal representatives, successors, and assigns except as otherwise expressly provided herein.

15. **Enforcement** - In the event of a breach of this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party, in addition to whatever remedy is awarded, its reasonable and necessary attorneys' fees and costs.

16. **Law and Venue –** This Agreement shall be construed under and in accordance with the laws of the State of Texas. The exclusive venue for any suit for enforcement of this Agreement or an alleged breach of this Agreement shall be in the Bankruptcy Court for the Southern District of New York and the parties consent to re-opening the bankruptcy case if necessary for enforcement of this Agreement.

17. **Acknowledgement -** The Parties acknowledge that they have read this Agreement, understand the effect of this Agreement, and execute this Agreement of their own free will and accord for the purposes and considerations set forth.

18. **Multiple Counterparts -** This Agreement may be executed in multiple counterparts, each of which, when executed, shall constitute but one and the same document.

19. **Jointly Drafted; Construction -** It is further understood and expressly agreed that this Agreement was drafted jointly by the attorneys for all Parties, and it is expressly agreed that neither this Agreement nor any of the documents executed in connection herewith shall ever be construed against any party hereto on the basis of who drafted the documents.

20. **Notices** - All notices, requests, demands, instructions and other communications required or permitted to be given hereunder shall be in writing and shall be delivered personally, mailed by certified mail, postage prepaid and return receipt requested, as follows:

| If to the Ponderosa Parties: | If to the PPF Parties: |
|---|---|
| Ponderosa Energy LLC and<br>    GS Energy, LLC<br>745 Fifth Avenue<br>New York, New York 10151<br>Attention:  Richard Sands<br>Telephone:  (917) 208-6368<br><br>    with a copy to:<br><br>DIAMOND McCARTHY LLP<br>909 Fannin, Suite 3700<br>Houston, Texas 77010<br>Attention: Charles Rubio, Esq.<br>Telephone:  (713) 333-5100 | Petroleum Production Finance<br>400 N. St. Paul, Suite 505<br>Dallas, Texas 75201<br>Attention:  Davis Martin<br>Telephone:  (214) 468-8606<br><br>    with a copy to:<br><br>JACKSON WALKER L.L.P.<br>2323 Ross Avenue, Suite 600<br>Dallas, Texas 75201<br>Attention: Brian A. Kilpatrick, Esq.<br>Telephone:  (214) 953-6000 |

or to such other place within the United States of America as either Party may designate as to itself by written notice to the other. All notices given by personal delivery or mail shall be effective on the date of actual receipt at the appropriate address. Notice given by telecopier shall be effective upon actual receipt if received during recipient's normal business hours or at the beginning of the next business day after receipt if received after the recipient's normal business hours.

[SIGNATURE PAGES FOLLOW]

PETROLEUM PRODUCTION FINANCE, INC.

Date: _March 21, 2018_    By: _____

Davis Martin
President

## ACKNOWLEDGMENT

STATE OF TEXAS          §
                        §
COUNTY OF DALLAS        §

This instrument was acknowledged before me on this 21st day of March, 2018, by Davis

Martin on behalf of PETROLEUM PRODUCTION FINANCE, INC.



Mary M Petty
Notary Public,
State of Texas
Expires: 08/30/2019

_____
Notary Public, State of Texas

PPF 2, LLC.

Date: _March 21, 2018_        By: _____
                                    Davis Martin
                                    President

## ACKNOWLEDGMENT

STATE OF TEXAS            §
                         §
COUNTY OF DALLAS          §

This instrument was acknowledged before me on this 21st day of March, 2018, by Davis
Martin on behalf of PPF 2, LLC.



Mary M Petty
Notary Public,
State of Texas
Expires: 08/30/2019

_____
Notary Public, State of Texas

PPF 3, LLC

Date: March 21, 2018

By:  _____
          Davis Martin
          President

<u>ACKNOWLEDGMENT</u>

STATE OF TEXAS         §
                         §
COUNTY OF DALLAS    §

    This instrument was acknowledged before me on this 21st day of March, 2018, by Davis

Martin on behalf of PPF 3, LLC.

**Mary M Petty**
Notary Public,
State of Texas
Expires: 08/30/2019

_____
Notary Public, State of Texas

GS ENERGY, LLC

Date: 3/20/2018

By: _____

Name: Richard Sands

Title: Member - manager

## ACKNOWLEDGMENT

STATE OF NEW YORK          §
                          §
COUNTY OF NEW YORK         §

This instrument was acknowledged before me on this 20 day of March _____,

2018, by Richard F. Sands on behalf of GS ENERGY, LLC.

_____
Notary Public, State of New York

JOHN BOYLE
Notary Public, State of New York
No. 01BO6369631
Qualified in New York County
Commission Expires January 16, 2022

PONDEROSA ENERGY, LLC

Date: _3/20/2018_              By: _____

                              Name: _Richard Sands_

                              Title: _member-manager_

## ACKNOWLEDGMENT

STATE OF NEW YORK          §
                           §
COUNTY OF _NEW YORK_        §

This instrument was acknowledged before me on this _20_ day of _March_ _____,

2018, by Richard F. Sands on behalf of PONDEROSA ENERGY, LLC.

_____
Notary Public, State of New York

JOHN BOYLE
Notary Public, State of New York
No. 01BO6369631
Qualified in New York County
Commission Expires January 16, 20_22_

CASIMIR CAPITAL, L.P.

Date: _3/20/2018_  By: _____

        Name: _Richard Sands_

        Title: _Member - manager_

## ACKNOWLEDGMENT

STATE OF NEW YORK   §
           §
COUNTY OF _NEW YORK_  §

This instrument was acknowledged before me on this _20_ day of _March_ ,

2018, by Richard F. Sands on behalf of CASIMIR CAPITAL, L.P.


_____
Notary Public, State of New York

JOHN BOYLE
Notary Public, State of New York
No. 01BO6369631
Qualified in New York County
Commission Expires January 16, 20 22

RICHARD F. SANDS

Date: 3/20/18

## ACKNOWLEDGMENT

STATE OF NEW YORK          §
                          §
COUNTY OF New York         §

    This instrument was acknowledged before me on this 20 day of March ,

2018, by Richard F. Sands.

Notary Public, State of New York

JOHN BOYLE
Notary Public, State of New York
No. 01BO6369631
Qualified in New York County
Commission Expires January 16, 2022

REVIEWED AND APPROVED:

By: _____

Charles M. Rubio
DIAMOND McCARTHY LLP
909 Fannin Street, 37th Floor
Houston, Texas 77010

ATTORNEYS FOR PONDEROSA PARTIES

By: _____

Brian A. Kilpatrick
JACKSON WALKER L.L.P.

2323 Ross Avenue, Suite 600
Dallas, Texas 75201

ATTORNEYS FOR PPF PARTIES

EXHIBIT A

**INCLUDED LEASES AND WELLS**

**PART 1 – PONDEROSA PROPERTIES**

**INCLUDED LEASES IN CARSON COUNTY, TEXAS**

| Lessor | Lessee | WI% | NRI% | Recording Information |
|---|---|---|---|---|
| Mrs. Belle Kirby | Panhandle Refining Company | 100.00% | 75.00% | Vol. 52, Pg. 506 |
| Amarillo National Bank, et al, Trustees | LERA | 36.77% | 26.6565% | Vol. 448, Pg. 11 |
| Amarillo National Bank, et al, Trustees | LERA | 36.77% | 26.6565% | Vol. 448, Pg. 19 |
| Arleen E. Stone | LERA | 36.77% | 26.6565% | Vol. 448, Pg. 27 |
| Arleen E. Stone | LERA | 36.77% | 26.6565% | Vol. 448, Pg. 32 |
| Richard S. Coon, Jr. | LERA | 36.77% | 26.6565% | Vol. 448, Pg. 37 |
| Richard S. Coon, Jr. | LERA | 36.77% | 26.6565% | Vol. 448, Pg. 42 |
| Cathryn Coon Doughtie | LERA | 36.77% | 26.6565% | Vol. 448, Pg. 47 |
| Cathryn Coon Doughtie | LERA | 36.77% | 26.6565% | Vol. 448, Pg. 52 |
| Billy Whiteside | LERA | 36.77% | 26.6565% | Vol. 449, Pg. 162 |
| Billy Whiteside | LERA | 36.77% | 26.6565% | Vol. 449, Pg. 167 |
| Nancy Ann Blanchard | LERA | 36.77% | 26.6565% | Vol. 449, Pg. 172 |
| Nancy Ann Blanchard | LERA | 36.77% | 26.6565% | Vol. 449, Pg. 177 |
| The Boyd Family Trust | LERA | 36.77% | 26.6565% | Vol. 449, Pg. 182 |
| The Boyd Family Trust | LERA | 36.77% | 26.6565% | Vol. 449, Pg. 187 |
| Herring Bank, Trustee | LERA | 36.77% | 26.6565% | Vol. 449, Pg. 192 |
| Herring Bank, Trustee | LERA | 36.77% | 26.6565% | Vol. 449, Pg. 200 |
| Michael L. O'Neal | LERA | 36.77% | 26.6565% | Vol. 450, Pg. 242 |
| Michael L. O'Neal | LERA | 36.77% | 26.6565% | Vol. 450, Pg. 247 |
| Barbara B. Creel | LERA | 36.77% | 26.6565% | Vol. 450, Pg. 252 |
| Barbara B. Creel | LERA | 36.77% | 26.6565% | Vol. 450, Pg. 257 |
| Dorothea Girault Garrett | LERA | 36.77% | 26.6565% | Vol. 451, Pg. 110 |
| Dorothea Girault Garrett | LERA | 36.77% | 26.6565% | Vol. 451, Pg. 115 |
| Cal Farley's Boyd Ranch | LERA | 36.77% | 26.6565% | Vol. 453, Pg. 123 |
| Richard Ware, II, et al | LERA | 36.77% | 26.6565% | Vol. 453, Pg. 133 |
| JASE Family, Ltd. | LERA | 36.77% | 26.6565% | Vol. 454, Pg. 221 |
| JASE Family, Ltd. | LERA | 36.77% | 26.6565% | Vol. 454, Pg. 226 |
| Thomas D. Lumpkin, II | LERA | 36.77% | 26.6565% | Vol. 469, Pg. 39 |
| Suzanne Flinchpaugh | LERA | 36.77% | 26.6565% | Vol. 469, Pg. 49 |
| Cynthia Carroll Creswell | LERA | 36.77% | 26.6565% | Vol. 469, Pg. 44 |
| Carolyn Carroll | LERA | 36.77% | 26.6565% | Vol. 469, Pg. 54 |
| Florence Sullenger | LERA | 36.77% | 26.6565% | Vol. 484, Pg. 459[1] |

---

[1] Due to a scriveners error in the prior Deed of Trust and Conveyance, the recording information for this lease was incorrectly noted as Vol. 484, Pg. 460. The correct recording information is Vol. 484, Pg. 459, which is being corrected herein and conveyed.

## INCLUDED WELLS IN CARSON COUNTY, TEXAS[2]

| Lease | RRC# | Well # | API # | WI% | NRI% |
|---|---|---|---|---|---|
| Sanford 160 | 235967 | 1 | 6532107 | 36.77% | 26.66% |
| Sanford 160 | 267590 | 1R | 6532126 | 36.77% | 26.66% |
| Sanford 480 | 232482 | 1 | 6532104 | 36.77% | 26.66% |
| Kirby | 4970 | 2 | 6531021 | 100.00% | 75.00% |
| Kirby | 4970 | 1 | 6531022 | 100.00% | 75.00% |

## INCLUDED LEASES IN GRAY COUNTY, TEXAS

| Lessor | Lessee | WI% | NRI% | Recording Information |
|---|---|---|---|---|
| Froma J. Undegraff, et al | Phillips Petroleum Company | 100.00% | 75.00% | Vol. 111, Pg. 619 |
| Froma J. Undegraff, et al | Phillips Petroleum Company | 100.00% | 75.00% | Vol. 113, Pg. 283 |
| Froma J. Undegraff, et al | Phillips Petroleum Company | 100.00% | 75.00% | Vol. 109, Pg. 377 |
| W.E. Archer | Empire Gas and Fuel Company | 100.00% | 75.00% | Vol. 28, Pg. 411 |
| W.E. Archer | I.E. Duncan | 100.00% | 75.00% | Vol. 28, Pg. 597 |
| C.S. Barrett & wife, Pearl Barrett | Texas Company | 100.00% | 81.25% | Vol. 34, Pg. 50 |
| Albert Combs & Phoebe A. Worley | F.W. Dillard | 100.00% | 75.00% | Vol. 2, Pg. 155 |
| Inez Carter, et al | E.J. Dunigan Jr., et al | 100.00% | 75.00% | Vol. 124, Pg. 310 |
| Phoebe A. Worley, et al | E.A. Haines, et al | 100.00% | 87.50% | Vol. 2, Pg. 194 |
| T.B. Noble, et al | George B. Ray | 100.00% | 87.50% | Vol. 44, Pg. 527 |

[2] This list is a nonexclusive list of wells from the leases listed above. Unless specifically excluded by the Excluded Wells list in Exhibit B, all wells from the above listed leases are to be included, whether specifically contained in this list or not. If the lease covering a well on this list is not specifically listed in the Included Leases above, the Ponderosa Parties are nonetheless conveying their interest in such lease(s) with respect to the well(s) listed to the extent necessary to convey said well and the right to produce a full allowable therefrom to the PPF Parties or their designee(s).

## INCLUDED WELLS IN GRAY COUNTY, TEXAS[3]

| Lease | RRC# | Well # | API # | WI% | NRI% |
|---|---|---|---|---|---|
| CS Barrett | 624 | 1 | 17983147 | 100.00% | 81.25% |
| CS Barrett | 624 | 2 | 17983148 | 100.00% | 81.25% |
| CS Barrett | 624 | 3 | 17907748 | 100.00% | 81.25% |
| CS Barrett | 624 | 4 | 17983150 | 100.00% | 81.25% |
| CS Barrett | 624 | 5 | 17983151 | 100.00% | 81.25% |
| CS Barrett | 624 | 6 | 17983152 | 100.00% | 81.25% |
| CS Barrett | 624 | 7 | 17983153 | 100.00% | 81.25% |
| Foxx | 468 | 1 | 17982388 | 100.00% | 75.00% |
| Foxx | 468 | 5 | 17982392 | 100.00% | 75.00% |
| Foxx | 468 | 6 | 17982393 | 100.00% | 75.00% |
| Foxx | 468 | 7 | 17982394 | 100.00% | 75.00% |
| Foxx | 468 | 8 | 17982395 | 100.00% | 75.00% |
| Foxx | 468 | 10 | 17932047 | 100.00% | 75.00% |
| Foxx | 468 | 11 | 17932265 | 100.00% | 75.00% |
| Foxx | 468 | 12 | 17932264 | 100.00% | 75.00% |
| Worley | 296 | 2W | 17900564 | 100.00% | 75.00% |
| Worley | 296 | 1 | 17981499 | 100.00% | 75.00% |
| Worley | 296 | 3 | 17981501 | 100.00% | 75.00% |
| Worley | 296 | 4 | 17981502 | 100.00% | 75.00% |
| Worley | 296 | 5 | 17981503 | 100.00% | 75.00% |
| Worley | 296 | 6 | 17981504 | 100.00% | 75.00% |
| Worley | 296 | 7 | 17981505 | 100.00% | 75.00% |
| Worley | 296 | 8 | 17981506 | 100.00% | 75.00% |
| Worley | 296 | 11 | 17981507 | 100.00% | 75.00% |
| Johnson Y1 | 24963 | Y1 | 17980310 | 100.00% | 75.00% |
| Archer B | 179778 | 7G | 17906532 | 100.00% | 75.00% |
| Archer B&C | 224 | B1 | 17981185 | 100.00% | 75.00% |
| Archer B&C | 224 | B2 | 17981186 | 100.00% | 75.00% |
| Archer B&C | 224 | B3 | 17981187 | 100.00% | 75.00% |
| Archer B&C | 224 | B4 | 17981188 | 100.00% | 75.00% |
| Archer B&C | 224 | B5 | 17981189 | 100.00% | 75.00% |
| Archer B&C | 224 | B8 | 17981192 | 100.00% | 75.00% |
| Archer B&C | 224 | C3 | 17981195 | 100.00% | 75.00% |
| Archer B&C | 224 | C4 | 17981196 | 100.00% | 75.00% |
| Archer B&C | 224 | C5 | 17981197 | 100.00% | 75.00% |
| Archer B&C | 224 | C7 | 17981199 | 100.00% | 75.00% |
| Archer C | 179779 | 2G | 17906541 | 100.00% | 75.00% |
| National | 222 | 8W | 17900862 | 100.00% | 75.00% |
| National | 222 | 5W | 17900863 | 100.00% | 75.00% |
| National | 222 | 2 | 17903568 | 100.00% | 75.00% |
| National | 222 | 4 | 17903569 | 100.00% | 75.00% |
| National | 222 | 1 | 17981177 | 100.00% | 75.00% |
| National | 222 | 3 | 17981179 | 100.00% | 75.00% |

[3] This list is a nonexclusive list of wells from the leases listed above. Unless specifically excluded by the Excluded Wells list in Exhibit B, all wells from the above listed leases are to be included, whether specifically contained in this list or not. If the lease covering a well on this list is not specifically listed in the Included Leases above, the Ponderosa Parties are nonetheless conveying their interest in such lease(s) with respect to the well(s) listed to the extent necessary to convey said well and the right to produce a full allowable therefrom to the PPF Parties or their designee(s).

| | | | | | |
|---|---|---|---|---|---|
| National | 222 | 6 | 17981182 | 100.00% | 75.00% |
| National | 222 | 7 | 17981183 | 100.00% | 75.00% |
| PA Worley | 658 | 1 | 17983514 | 100.00% | 75.00% |
| PA Worley | 658 | 2 | 17983515 | 100.00% | 75.00% |
| PA Worley | 658 | 3 | 17983516 | 100.00% | 75.00% |
| PA Worley | 658 | 6 | 17983517 | 100.00% | 75.00% |
| PA Worley | 658 | 7 | 17983518 | 100.00% | 75.00% |
| PA Worley | 658 | 8W | 17983519 | 100.00% | 75.00% |
| Worley Reynolds | 545 | 8 | 17905656 | 100.00% | 87.50% |
| Worley Reynolds | 545 | 6 | 17982691 | 100.00% | 87.50% |
| Worley Reynolds | 545 | 7 | 17982692 | 100.00% | 87.50% |
| Worley Reynolds | 545 | 10 | 17982695 | 100.00% | 87.50% |

## INCLUDED LEASES IN HUTCHINSON COUNTY, TEXAS

| Lessor | Lessee | WI% | NRI% | Recording Information |
|---|---|---|---|---|
| June C. Pipkin | LERA | 37.50% | 28.1250% | Vol. 1383, Pg. 10 |
| Mary Ann Caldwell | LERA | 37.50% | 28.1250% | Vol. 1395, Pg. 344 |
| Beth R. Stuart | LERA | 37.50% | 28.1250% | Vol. 1395, Pg. 346 |
| Frank S. Ryburn | LERA | 37.50% | 28.1250% | Vol. 1397, Pg. 104 |
| Joan Carder, Dist. Clerk of Hutchinson County, Texas | LERA | 37.50% | 28.1250% | Vol. 1528, Pg. 300 |
| Gore Creek Capital, Limited | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 177 |
| Maryann Williams | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 182 |
| James William Means | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 184 |
| John Robert Means | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 192 |
| Russell Thomas Henry | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 200 |
| Sherry A. Tyler Owen | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 212 |
| Frances Schlock | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 214 |
| Frances Michelle Terhune | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 216 |
| Frank Susman | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 221 |
| Marianne Karsn | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 223 |
| Cecilia Kesselgren | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 231 |
| Frank Hugh Terry | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 233 |
| Terry Family Trust | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 235 |
| Ruth Ionne Quick | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 239 |
| Kenneth H. Terry | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 241 |
| William Camden Terry | LERA | 37.50% | 28.1250% | Vol. 1570, Pg. 325 |
| Kristen Kay Sternberg | LERA | 37.50% | 28.1250% | Vol. 1570, Pg. 328 |
| J.K. Bigham, et al | LERA | 37.50% | 28.1250% | Vol. 1570, Pg. 330 |
| Donna Rae Mead | LERA | 37.50% | 28.1250% | Vol. 1570, Pg. 333 |
| Patty Weber, et vir | LERA | 37.50% | 28.1250% | Vol. 1570, Pg. 336 |
| Robert E. Davis, et ux | LERA | 37.50% | 28.1250% | Vol. 1570, Pg. 339 |
| Jana Mirs | LERA | 37.50% | 28.1250% | Vol. 1570, Pg. 348 |
| Arland A. Speidel | LERA | 37.50% | 28.1250% | Vol. 1570, Pg. 344 |
| Terry Lynn Carson | LERA | 37.50% | 28.1250% | Vol. 1570, Pg. 346 |
| Larry C. Nelson | LERA | 37.50% | 28.1250% | Vol. 1578, Pg. 111 |
| Emma Jean Speidel | LERA | 37.50% | 28.1250% | Vol. 1578, Pg. 113 |
| Bruce David Terry | LERA | 37.50% | 28.1250% | Vol. 1583, Pg. 183 |
| Joyce M. Yowell | LERA | 37.50% | 28.1250% | Vol. 1591, Pg. 114 |
| William R. Yowell | LERA | 37.50% | 28.1250% | Vol. 1591, Pg. 116 |
| Shelia M. Terry | LERA | 37.50% | 28.1250% | Vol. 1591, Pg. 118 |

| J.M. Huber Corporation | SNW Operating Company, Inc. | 37.50% | 28.1250% | Vol. 1383, Pg. 8 |
|---|---|---|---|---|
| E.B. Johnson, et al | The Pure Oil Company | 37.50% | 28.1250% | Vol. 28, Pg. 209 |
| E.B. Johnson and Sons Estate, et al | Phillips Petroleum Company | 37.50% | 28.1250% | Vol. 59, Pg. 639 |
| Jerlyn J. Agar, et al | Barrett W. Pierce | 37.50% | 28.1250% | Vol. 551, Pg. 612 |
| Jerlyn J. Agar, et al | Barrett W. Pierce | 37.50% | 28.1250% | Vol. 551, Pg. 617 |
| Robert A. Johnson, et al | Barrett W. Pierce | 37.50% | 28.1250% | Vol. 551, Pg. 622 |
| Johnson Royalty Company | Barrett W. Pierce | 37.50% | 28.1250% | Vol. 551, Pg. 624 |
| Philip C. Kidd, Jr. | Barrett W. Pierce | 37.50% | 28.1250% | Vol. 551, Pg. 626 |
| E.B. Johnson, et al | George Montgomery | 37.50% | 28.1250% | Vol. 17, Pg. 462 |
| J.M. Sanford and wife, Garland S. Sanford | J.O. Whittington | 37.50% | 28.1250% | Vol. 21, Pg. 121[4] |
| Mrs. Garland S. Sanford | J.M. Huber Corporation | 37.50% | 28.1250% | Vol. 127, Pg. 321 |
| E.B. Johnson, et al | Dorset Carter | 37.50% | 28.1250% | Vol. 28, Pg. 28 |
| E.B. Johnson, et al | A.L. Anderson | 37.50% | 28.1250% | Vol. 27, Pg. 336 |
| Montford T. Johnson, et ux | Phillips Petroleum Company | 37.50% | 28.1250% | Vol. 155, Pg. 110 |
| E.B. Johnson, et al | Dixon Creek Oil Company | 37.50% | 28.1250% | Vol. 5, Pg. 217 |
| W.E. Herring, et al | J.M. Huber Corporation | 100.00% | 75.00% | Vol. 71, Page 264 |
| Neil R. Johnson, et al | J.M. Huber Corporation | 100.00% | 70.00% | Vol. 127, Pg. 147 |
| Garland Sanford | J.M. Huber Corporation | 100.00% | 75.00% | Vol. 103, Pg. 406 |
| Stanolind Oil & Gas Co. | J.M. Huber Corporation | 100.00% | 75.00% | Vol. 103, Pg. 411[5] |
| J.M. Sanford, et al | Associated Oil Company, et al | 100.00% | 75.00% | Vol. 46, Pg. 480 |
| J.M. Sanford & wife, Garland Sanford | Marland Oil Company of Texas | 100.00% | 75.00% | Vol. 35, Pg. 290 |
| Richard S. Coon, et al | DCW Production Company | 100.00% | 72.50% | Vol. 375, Pg. 110 |
| J.A. & Leta M. Chapman Trust | DCW Production Company | 100.00% | 72.50% | Vol. 389, Pg. 407 |
| Amoco Production Company | DCW Production Company | 100.00% | 72.50% | Vol. 389, Pg. 411 |
| Perry Stevens, et al | Dorsett Carter | 100.00% | 75.00% | Vol. 28, Pg. 122 |
| E.B. Johnson, et al | Lawrence R. Hagy | 100.00% | 75.00% | Vol. 28, Pg. 20 |
| J.A. Whittenburg | George A. Whittenburg | 100.00% | 71.09% | Vol. 20, Pg. 450 |
| George A. Whittenburg | C.C. Patten | 100.00% | 71.09% | Vol. 20, Pg. 453 |
| Neil R. Johnson, et al | H.F. Sears | 100.00% | 70.00% | Vol. 155, Pg. 418 |
| Perry Stevens | H.F. Sears | 100.00% | 70.00% | Vol. 155, Pg. 446 |
| E.B. Johnson, et al | V.N. Souligny | 100.00% | 72.50% | Vol. 27, Pg. 288 |
| Neil R. Johnson, et al | J.M. Huber Corporation | 100.00% | 72.50% | Vol. 127, Pg. 311 |
| Johnson Royalty Company | LERA | 100.00% | 72.50% | Vol. 1727, Pg. 181 |
| Johnson Royalty Account | LERA | 100.00% | 72.50% | Vol. 1727, Pg. 184 |
| Johnson Enterprises | LERA | 100.00% | 72.50% | Vol. 1727, Pg. 187 |
| Johnson Mineral Purchase | LERA | 100.00% | 72.50% | Vol. 1727, Pg. 190 |
| Sallie Pritchard, a widow | J.P. Woodall | 100.00% | 75.00% | Vol. 66, Pg. 98 |

---

[4] The recording at Vol. 21, Pg. 121, covers others leases/wells with 100% WI% and 75% NRI%, including the Included Wells Sanford D2, Sanford M2, Sanford 3, Chap 3, Chap 4, and Continental Sanford.

[5] Due to a scriveners error in the prior Deed of Trust and Conveyance, the recording information for this lease was incorrectly noted as Vol. 103, Pg. 441. The correct recording information is Vol. 103, Pg. 411, which is being corrected herein and conveyed.

| C.R. Garner, et al | D.R. Tripplehorn | 100.00% | 87.50% | Vol. 64, Pg. 443[6] |
| C.R. Garner, et al | D.R. Tripplehorn | 100.00% | 87.50% | Vol. 64, Pg. 266[6] |
| C.R. Garner, et al | D.R. Tripplehorn | 100.00% | 87.50% | Vol. 69, Pg. 165[6] |

## INCLUDED WELLS IN HUTCHINSON COUNTY, TEXAS[7]

| Lease | RRC# | Well # | API # | WI% | NRI% |
|-------|------|--------|-------|-----|------|
| A K Johnson | 39798 | 1 | 23380640 | 37.50% | 28.13% |
| Black | 228564 | 1 | 23333202 | 37.50% | 28.13% |
| Blade Sanford | 4278 | 1 | 23330345 | 100.00% | 75.00% |
| Blade Sanford | 4278 | 2 | 23330577 | 100.00% | 75.00% |
| Blade Sanford | 4278 | 3 | 23330578 | 100.00% | 75.00% |
| Blade Sanford | 4278 | 4 | 23330632 | 100.00% | 75.00% |
| Blade Sanford | 4278 | 6 | 23330743 | 100.00% | 75.00% |
| Chapp 3 | 24785 | 3 | 23380247 | 100.00% | 75.00% |
| Chapp 4 | 24786 | 4 | 23380248 | 100.00% | 75.00% |
| Continental Sanford | 919 | 7 | 23381989 | 100.00% | 75.00% |
| Continental Sanford | 919 | 8 | 23381990 | 100.00% | 75.00% |
| Continental Sanford | 919 | 10 | 23381991 | 100.00% | 75.00% |
| Continental Sanford | 919 | 11 | 23331143 | 100.00% | 75.00% |
| Davis 1R | 223864 | 1R | 23333078 | 100.00% | 75.00% |
| Dee O Gee 1 | 264833 | 1 | 23333448 | 100.00% | 70.00% |
| Dee O Gee 2 | 276608 | 2 | 23333449 | 100.00% | 70.00% |
| Diana Shaw | 253074 | 1R | 23333419 | 37.50% | 28.13% |
| Gulf Sanford A | 217267 | 1R | 23333067 | 37.50% | 28.13% |
| Hagy 1 | 24887 | 1 | 23380271 | 100.00% | 75.00% |
| J. Johnson | 24965 | 16 | 23380299 | 37.50% | 28.13% |
| J. Johnson | 246375 | 17 | 23333339 | 37.50% | 28.13% |
| Johnson 1R | 224920 | 1R | 23331826 | 100.00% | 75.00% |
| Johnson A | 4992 | 1 | 23331233 | 100.00% | 72.50% |
| Johnson A | 4992 | 3 | 23332278 | 100.00% | 72.50% |
| Johnson AC | 2868 | 1 | 23385258 | 100.00% | 72.50% |
| Johnson AC | 2868 | 2 | 23313790 | 100.00% | 72.50% |
| Johnson D | 3157 | 1 | 23305842 | 100.00% | 75.00% |
| Johnson D | 3157 | 2 | 23385301 | 100.00% | 75.00% |
| Johnson G | 3939 | 2 | 23333453 | 100.00% | 72.50% |
| Johnson G | 3939 | 4 | 23330247 | 100.00% | 72.50% |
| Johnson K | 24953 | 1 | 23380294 | 37.50% | 28.13% |
| Johnson K | 211384 | 1R | 23333036 | 37.50% | 28.13% |
| Johnson O | 206970 | 1R | 23333011 | 37.50% | 28.13% |
| Klyne | 224860 | 1 | 23333070 | 37.50% | 28.13% |

[6] These three leases are in both Carson County and Hutchinson County. Due to scriveners error in the prior Deed of Trust and Conveyance, these three leases were listed as Included Leases in Carson County. The recording information provided in the Deed of Trust and Conveyance is a reference to the recording information in Hutchinson County. To clarify and correct the prior scriveners error, these leases are now listed under Hutchinson County.

[7] This list is a nonexclusive list of wells from the leases listed above. Unless specifically excluded by the Excluded Wells list in Exhibit B, all wells from the above listed leases are to be included, whether specifically contained in this list or not. If the lease covering a well on this list is not specifically listed in the Included Leases above, the Ponderosa Parties are nonetheless conveying their interest in such lease(s) with respect to the well(s) listed to the extent necessary to convey said well and the right to produce a full allowable therefrom to the PPF Parties or their designee(s).

| Klyne | 218196 | 2 | 23333072 | 37.50% | 28.13% |
|---|---|---|---|---|---|
| Kyle | 5316 | 1 | 23331535 | 100.00% | 70.00% |
| Kyle | 5316 | 4 | 23331538 | 100.00% | 70.00% |
| Kyle 3 | 269610 | 3 | 23331536 | 100.00% | 70.00% |
| Lil Randi | 9388 | 2 | 23333503 | 100.00% | 75.01% |
| Payne Herring | 719 | 1 | 23380830 | 100.00% | 75.00% |
| Payne Herring | 720 | 3 | 23380832 | 100.00% | 75.00% |
| Payne Herring | 721 | 4 | 23380833 | 100.00% | 75.00% |
| Payne Herring | 722 | 5 | 23380834 | 100.00% | 75.00% |
| Payne Herring | 723 | 6 | 23380835 | 100.00% | 75.00% |
| Payne Herring | 724 | 7 | 23380836 | 100.00% | 75.00% |
| Payne Herring | 725 | 8 | 23380837 | 100.00% | 75.00% |
| Phillips C | 25073 | 1 | 23380320 | 37.50% | 28.13% |
| Pruett B | 5711 | 1 | 23331581 | 100.00% | 63.00% |
| Pruett B | 5711 | 2 | 23331793 | 100.00% | 63.00% |
| Pruett B | 5711 | 4 | 23331833 | 100.00% | 63.00% |
| Pruett B | 5711 | 5 | 23331957 | 100.00% | 63.00% |
| Pruett B | 5711 | 9 | 23333512 | 100.00% | 63.00% |
| RC Ware | 1299 | 1 | 23384008 | 100.00% | 87.50% |
| RC Ware | 1299 | 2 | 23384009 | 100.00% | 87.50% |
| RC Ware | 1299 | 4 | 23384011 | 100.00% | 87.50% |
| RC Ware | 1299 | 7 | 23384014 | 100.00% | 87.50% |
| RC Ware | 1299 | 8 | 23384015 | 100.00% | 87.50% |
| RC Ware | 1299 | 9 | 23384016 | 100.00% | 87.50% |
| RC Ware | 1299 | 10 | 23384017 | 100.00% | 87.50% |
| RC Ware | 1299 | 11 | 23384018 | 100.00% | 87.50% |
| RC Ware | 1299 | 12 | 23384019 | 100.00% | 87.50% |
| RC Ware | 1299 | 13 | 23384020 | 100.00% | 87.50% |
| RC Ware | 1299 | 14 | 23384021 | 100.00% | 87.50% |
| RC Ware | 1299 | 15 | 23384022 | 100.00% | 87.50% |
| RC Ware | 1299 | 16 | 23384023 | 100.00% | 87.50% |
| Rice Patty | 267167 | 1 | 23333451 | 37.50% | 28.13% |
| Sallie Pritchard | 2212 | 3 | 23384798 | 100.00% | 75.00% |
| Sallie Pritchard | 2212 | 4 | 23384799 | 100.00% | 75.00% |
| Sallie Pritchard | 2212 | 5 | 23309312 | 100.00% | 75.00% |
| Sallie Pritchard | 2212 | 6 | 23384801 | 100.00% | 75.00% |
| Sallie Pritchard | 2212 | 8 | 23384803 | 100.00% | 75.00% |
| Sallie Pritchard | 2212 | 9 | 23330976 | 100.00% | 75.00% |
| Sanford 3 | 25258 | 3 | 23380368 | 100.00% | 75.00% |
| Sanford A15 | 145518 | A15 | 23307579 | 100.00% | 72.50% |
| Sanford C5 | 35065 | 5 | 23380627 | 100.00% | 75.00% |
| Sanford D2 | 23927 | D2 | 23380160 | 100.00% | 75.00% |
| Sanford E2 | 23929 | E2 | 23380162 | 100.00% | 75.00% |
| Sanford M2 | 23937 | M2 | 23380165 | 100.00% | 75.00% |
| Whittenburg 5 | 25269 | 5 | 23380373 | 100.00% | 71.94% |
| Herring 4 | 23812 | 4 | 23380081 | 100.00% | 75.00% |
| Johnson 2 | 25251 | 2 | 23380361 | 100.00% | 70.00% |
| Johnson F1 | 23878 | F1 | 23380129 | 100.00% | 70.00% |
| Sanford -M- | 886 | 1 | 233-81622 | 100.00% | 75.00% |
| E Herring | 977 | 6A | 23331035 | 100.00% | 75.00% |
| E Herring | 977 | 8 | 23331273 | 100.00% | 75.00% |
| E Herring | 977 | 10 | 23331275 | 100.00% | 75.00% |
| E Herring | 977 | 9 | 23331276 | 100.00% | 75.00% |

| E Herring | 977 | 11 | 23331450 | 100.00% | 75.00% |
| E Herring | 977 | 6 | 23332290 | 100.00% | 75.00% |
| E Herring | 977 | 12 | 23333452 | 100.00% | 75.00% |
| E Herring | 977 | 3 | 23382245 | 100.00% | 75.00% |
| E Herring | 977 | 5 | 23382246 | 100.00% | 75.00% |

## PART 2 – GS ENERGY PROPERTIES

### INCLUDED LEASES IN CARSON COUNTY, TEXAS

| Lessor | Lessee | DATE | Recording Information |
|---|---|---|---|
| Trustees of S. B. Burnett et al | J.E. Crosbie | 4/3/1924 | Vol. 31, Pg. 635 |
| Trustees of S. B. Burnett et al | J.M. Huber Corporation | 6/2/1936 | Vol. 62, Pg. 560 |
| B F and Ida Block | H C Tyrrell | 4/19/1924 | Vol. 29, Pg. 402 |
| Greg Bobbitt | D J Sargent | 6/16/1998 | Vol. 288, Pg. 420 |
| Mark Bobbitt | D J Sargent | 6/16/1988 | Vol. 288, Pg. 422 |
| Louise Casey, et al | Charles T Wagner | 9/15/1949 | Vol. 86, Pg. 170 |
| Louise Casey, et al | Charles T Wagner | 3/8/1950 | Vol. 87, Pg. 210 |
| R C Ware, et al | Drilling and Exploration Company, Inc. | 3/9/1953 | Vol. 94, Pg. 580 |
| R C Ware, et al | Drilling and Exploration Company, Inc. | 5/16/1953 | Vol. 95, Pg. 292 |

### INCLUDED WELLS IN CARSON COUNTY, TEXAS[8]

| Lease | RRC# | Well # | API # | WI% | NRI% |
|---|---|---|---|---|---|
| Burnett -A- | 100 | 1 | 65-80957 | 100.00% | 75.00% |
| Burnett -A- | 100 | 3 | 65-80959 | 100.00% | 75.00% |
| Burnett -A- | 100 | 4 | 65-80960 | 100.00% | 75.00% |
| Burnett -A- | 100 | 5 | 65-80961 | 100.00% | 75.00% |
| Burnett -A- | 137588 | 7 | 65-31839 | 100.00% | 75.00% |
| Burnett -A- | 100 | 2W | 65-02435 | 100.00% | 75.00% |
| Burnett -B- | 101 | 1 | 65-80962 | 100.00% | 68.75% |
| Burnett -B- | 101 | 2 | 65-80963 | 100.00% | 68.75% |
| Burnett -B- | 101 | 3 | 65-80964 | 100.00% | 68.75% |
| Burnett -B- | 101 | 4 | 65-80965 | 100.00% | 68.75% |
| Burnett -B- | 101 | 5 | 65-02445 | 100.00% | 68.75% |
| Pickens | 2482 | 4 | 65-30778 | 100.00% | 75.00% |
| Pickens | 2482 | 5 | 65-30797 | 100.00% | 75.00% |
| Pickens | 2482 | 3W | 65-01093 | 100.00% | 75.00% |
| Ware -A- | 79 | 1 | 65-00407 | 100.00% | 75.00% |
| Ware -A- | 79 | 3 | 65-02635 | 100.00% | 75.00% |
| Ware -A- | 79 | 4 | 65-00435 | 100.00% | 75.00% |
| Ware -A- | 79 | 9 | 65-02416 | 100.00% | 75.00% |
| Ware -A- | 79 | 10 | 65-00536 | 100.00% | 75.00% |
| Ware -A- | 79 | 13 | 065-02638 | 100.00% | 75.00% |
| Ware -A- | 79 | 14 | 65-00436 | 100.00% | 75.00% |
| Ware -A- | 79 | 15 | 65-02419 | 100.00% | 75.00% |

---

[8] This list is a nonexclusive list of wells from the leases listed above. Unless specifically excluded by the Excluded Wells list in Exhibit B, all wells from the above listed leases are to be included, whether specifically contained in this list or not. If the lease covering a well on this list is not specifically listed in the Included Leases above, the Ponderosa Parties are nonetheless conveying their interest in such lease(s) with respect to the well(s) listed to the extent necessary to convey said well and the right to produce a full allowable therefrom to the PPF Parties or their designee(s).

| Ware -A- | 79 | 16 | 65-00431 | 100.00% | 75.00% |
|----------|-----|------|----------|---------|--------|
| Ware -A- | 79 | 17 | 65-02639 | 100.00% | 75.00% |
| Ware -A- | 79 | 18 | 65-02640 | 100.00% | 75.00% |
| Ware -A- | 79 | 23 | 65-30640 | 100.00% | 75.00% |
| Ware -A- | 79 | 24 | 65-30641 | 100.00% | 75.00% |
| Ware -A- | 79 | 25 | 65-30665 | 100.00% | 75.00% |
| Ware -A- | 79 | 26 | 65-30668 | 100.00% | 75.00% |
| Ware -A- | 79 | 27 | 65-30666 | 100.00% | 75.00% |
| Ware -A- | 79 | 28 | 65-30667 | 100.00% | 75.00% |
| Ware -A- | 79 | 29 | 65-30659 | 100.00% | 75.00% |
| Ware -A- | 79 | 1038 | 65-30736 | 100.00% | 75.00% |
| Ware -B- | 762 | 21 | 65-30664 | 100.00% | 75.00% |
| Ware -B- | 762 | 22 | 65-30661 | 100.00% | 75.00% |
| Ware -B- | 762 | 23 | 65-30662 | 100.00% | 75.00% |
| Ware -B- | 762 | 24 | 65-30663 | 100.00% | 75.00% |
| Ware -B- | 762 | 25 | 65-30660 | 100.00% | 75.00% |
| Ida Block | 143 | 2 | 65-81622 | 100.00% | 75.00% |
| Ida Block | 143 | 3 | 65-81623 | 100.00% | 75.00% |
| Ida Block | 143 | 4 | 65-81624 | 100.00% | 75.00% |
| Ida Block | 143 | 5 | 65-81625 | 100.00% | 75.00% |
| Ida Block | 143 | 7 | 65-81627 | 100.00% | 75.00% |
| Ida Block | 143 | 9 | 65-30815 | 100.00% | 75.00% |
| Bobbitt | 4417 | 1 | 65-30621 | 100.00% | 75.00% |
| Bobbitt | 4417 | 2 | 65-31306 | 100.00% | 75.00% |
| Bryan | 177 | 1 | 65-81761 | 100.00% | 75.00% |
| Bryan | 177 | 2 | 65-30614 | 100.00% | 75.00% |
| Bryan | 177 | 3 | 65-30581 | 100.00% | 75.00% |
| Bryan | 177 | 4 | 65-30979 | 100.00% | 75.00% |

## INCLUDED LEASES IN MOORE COUNTY, TEXAS

| Lessor | Lessee | Date | Recording Information |
|--------|--------|------|----------------------|
| Elizabeth Nelson | Sinclair Prarie Oil Company | 10/9/1935 | Vol. 55, Pg. 50 |
| Evelyn & Standish Holmes | Sinclair Prarie Oil Company | 10/9/1935 | Vol. 55, Pg. 37 |
| Foster Petroleum Corporation | Direction Energy Corporation | 5/5/1983 | Vol. 314, Pg. 401 |
| Cities Service Oil and Gas Corporation | Direction Energy Corporation | 8/12/1983 | Vol. 318, Pg. 744 |
| Harriett D. Witherbee, et al | Phillips Petroleum Company | 9/7/1939 | Vol. 72, Pg. 131 |
| Nellie Loeber, et al | Phillips Petroleum Company | 4/30/1937 | Vol. 65, Pg. 206 |

## INCLUDED WELLS IN MOORE COUNTY, TEXAS[9]

| Lease | RRC# | Well # | API # | WI% | NRI% |
|---|---|---|---|---|---|
| Nellie Loeber | 1798 | 6 | 341-30624 | 100.00% | 68.75% |
| Nellie Loeber | 1798 | 8 | 341-30822 | 100.00% | 68.75% |
| Witherbee | 4633 | 1 | 341-30595 | 97.50% | 68.25% |
| Witherbee | 4633 | 2 | 341-30784 | 97.50% | 68.25% |
| Witherbee | 4633 | 3 | 341-31117 | 97.50% | 68.25% |
| Witherbee | 4633 | 4 | 341-31116 | 97.50% | 68.25% |
| Cooper | 5560 | 1 | 341-31016 | 49.50% | 34.65% |
| Cooper | 5560 | 2 | 341-31297 | 49.50% | 34.65% |

## INCLUDED LEASES IN HUTCHINSON COUNTY, TEXAS

| Lessor | Lessee | Date | Recording Information |
|---|---|---|---|
| Otis Phillips, et al | Shell Petroleum Company | 9/4/1936 | Vol. 73, Pg. 215[10] |
| E and Lucille Watkins | Skelly Oil Company | 3/16/1933 | Vol. 63, Pg. 42 |
| R C Ware, et al | Drilling and Exploration Company, Inc. | 3/9/1953 | Vol. 155, Pg. 288 |
| J W Moore, et ux | Southwestern Petroleum Company | 11/27/1922 | Vol. 24, Pg. 88 |
| C T Ware, et al | J R Phillips | 8/17/1937 | Vol. 78, Pg. 232 |
| R C Ware, et al | Drilling and Exploration Company, Inc. | 5/16/1953 | Vol. 155, Pg. 475 |
| Estate of Sue Stevens | Tri-State Petroleum Investors | 2/9/1981 | Vol. 483, Pg. 239[11] |
| W.L. Watters, et al | Standard Oil Company of Texas | 8/21/1964 | Vol. 305, Pg. 373 |
| Roy Stevenson et al | Suerco Energy Development | 6/26/1984 | Vol. 506, Pg. 376 |
| Ellis and Mary Cockrell | S G Cockrell | 1/20/1926 | Vol. 33, Pg. 520 |
| C R Garner, et al | Texas Company | 5/10/1921 | Vol. 20, Pg. 430 |
| Joe Harlan | North Star Petroleum Corporation | 5/1/1967 | Vol. 337, Pg. 351 |
| Billie Ione Gilliam and John W. Gilliam | North Star Petroleum Corporation | 2/2/1967 | Vol. 335, Pg. 370 |

[9] This list is a nonexclusive list of wells from the leases listed above. Unless specifically excluded by the Excluded Wells list in Exhibit B, all wells from the above listed leases are to be included, whether specifically contained in this list or not. If the lease covering a well on this list is not specifically listed in the Included Leases above, the Ponderosa Parties are nonetheless conveying their interest in such lease(s) with respect to the well(s) listed to the extent necessary to convey said well and the right to produce a full allowable therefrom to the PPF Parties or their designee(s).

[10] Due to a scriveners error in the prior Deed of Trust and Conveyance, the recording information for this lease was incorrectly noted as Vol. 72, Pg. 215. The correct recording information is Vol. 73, Pg. 215, which is being corrected herein and conveyed.

[11] This lease is associated with the Jimmy II and Southbend wells that were included in the prior deed of trust and conveyance - although the lease was not specifically listed.

## INCLUDED WELLS IN HUTCHINSON COUNTY, TEXAS[12]

| Lease | RRC# | Well # | API # | WI% | NRI% |
|---|---|---|---|---|---|
| Jimmy II | 5437 | 1 | 233-31579 | 100.00% | 75.00% |
| Jimmy II | 5437 | 2 | 233-32279 | 100.00% | 75.00% |
| Lasater | 1948 | 3 | 233-84541 | 100.00% | 75.00% |
| Lasater | 1948 | 4 | 233-10499 | 100.00% | 75.00% |
| Lasater | 1948 | 5 | 233-84543 | 100.00% | 75.00% |
| Lasater | 1948 | 7 | 233-10501 | 100.00% | 75.00% |
| Lasater | 1948 | 2W | 233-10707 | 100.00% | 75.00% |
| Nellie Loeber | 1798 | 2 | 233-84409 | 100.00% | 68.75% |
| Nellie Loeber | 1798 | 3 | 233-84410 | 100.00% | 68.75% |
| Nellie Loeber | 1798 | 1W | 233-32771 | 100.00% | 68.75% |
| Otis Phillips | 2363 | 3 | 233-84959 | 100.00% | 65.63% |
| Otis Phillips | 2363 | 4 | 233-84960 | 100.00% | 65.63% |
| Otis Phillips | 2363 | 5 | 233-30945 | 100.00% | 65.63% |
| Southbend | 100834 | 1 | 233-31294 | 56.88% | 47.15% |
| Ware | 1242 | 1 | 233-07819 | 100.00% | 75.00% |
| Ware | 1242 | 2 | 233-30087 | 100.00% | 75.00% |
| Ware -A- | 79 | 2 | 233-07824 | 100.00% | 75.00% |
| Ware -A- | 79 | 5 | 233-01381 | 100.00% | 75.00% |
| Ware -A- | 79 | 6 | 233-01383 | 100.00% | 75.00% |
| Ware -A- | 79 | 11 | 233-01386 | 100.00% | 75.00% |
| Ware -A- | 79 | 19 | 233-80697 | 100.00% | 75.00% |
| Ware -A- | 79 | 20 | 233-80698 | 100.00% | 75.00% |
| Ware -A- | 79 | 21 | 233-80699 | 100.00% | 75.00% |
| Ware -A- | 79 | 22 | 233-80700 | 100.00% | 75.00% |
| Ware -A- | 79 | 1030 | 233-30690 | 100.00% | 75.00% |
| Ware -A- | 79 | 1031 | 233-30689 | 100.00% | 75.00% |
| Ware -A- | 79 | 1032 | 233-30688 | 100.00% | 75.00% |
| Ware -A- | 79 | 1033 | 233-30687 | 100.00% | 75.00% |
| Ware -A- | 79 | 1034 | 233-30686 | 100.00% | 75.00% |
| Ware -A- | 79 | 1035 | 233-30683 | 100.00% | 75.00% |
| Ware -A- | 79 | 1036 | 233-30684 | 100.00% | 75.00% |
| Ware -A- | 79 | 1037 | 233-30685 | 100.00% | 75.00% |
| Ware -A- | 79 | 12W | 233-01387 | 100.00% | 75.00% |
| Ware -B- | 762 | 1 | 233-01357 | 100.00% | 75.00% |
| Ware -B- | 762 | 2 | 233-80972 | 100.00% | 75.00% |
| Ware -B- | 762 | 3 | 233-80973 | 100.00% | 75.00% |
| Ware -B- | 762 | 4 | 233-80974 | 100.00% | 75.00% |
| Ware -B- | 762 | 5 | 233-80975 | 100.00% | 75.00% |
| Ware -B- | 762 | 6 | 233-80976 | 100.00% | 75.00% |
| Ware -B- | 762 | 7 | 233-80977 | 100.00% | 75.00% |
| Ware -B- | 762 | 8 | 233-80978 | 100.00% | 75.00% |
| Ware -B- | 762 | 9 | 233-80979 | 100.00% | 75.00% |
| Ware -B- | 762 | 10 | 233-80980 | 100.00% | 75.00% |

[12] This list is a nonexclusive list of wells from the leases listed above. Unless specifically excluded by the Excluded Wells list in Exhibit B, all wells from the above listed leases are to be included, whether specifically contained in this list or not. If the lease covering a well on this list is not specifically listed in the Included Leases above, the Ponderosa Parties are nonetheless conveying their interest in such lease(s) with respect to the well(s) listed to the extent necessary to convey said well and the right to produce a full allowable therefrom to the PPF Parties or their designee(s).

| | | | | | |
|---|---|---|---|---|---|
| Ware -B- | 762 | 11 | 233-80981 | 100.00% | 75.00% |
| Ware -B- | 762 | 12 | 233-80982 | 100.00% | 75.00% |
| Ware -B- | 762 | 13 | 233-80983 | 100.00% | 75.00% |
| Ware -B- | 762 | 14 | 233-80984 | 100.00% | 75.00% |
| Ware -B- | 762 | 15 | 233-80985 | 100.00% | 75.00% |
| Ware -B- | 762 | 16 | 233-80986 | 100.00% | 75.00% |
| Ware -B- | 762 | 17 | 233-80987 | 100.00% | 75.00% |
| Ware -B- | 762 | 18 | 233-80988 | 100.00% | 75.00% |
| Ware -B- | 762 | 20 | 233-80990 | 100.00% | 75.00% |
| Ware -B- | 762 | 2026 | 233-30697 | 100.00% | 75.00% |
| Ware -B- | 762 | 2027 | 233-30696 | 100.00% | 75.00% |
| Ware -B- | 762 | 2028 | 233-30695 | 100.00% | 75.00% |
| Ware -B- | 762 | 2030 | 233-30693 | 100.00% | 75.00% |
| Ware -B- | 762 | 2031 | 233-30692 | 100.00% | 75.00% |
| Ware -B- | 762 | 2032 | 233-30691 | 100.00% | 75.00% |
| Watkins -A- | 1202 | 1 | 233-83279 | 100.00% | 75.00% |
| Watkins -A- | 1202 | 2 | 233-83280 | 100.00% | 75.00% |
| Watkins -A- | 1202 | 3 | 233-83281 | 100.00% | 75.00% |
| Watkins -A- | 1202 | 4 | 233-83282 | 100.00% | 75.00% |
| Watkins -A- | 1202 | 5 | 233-83283 | 100.00% | 75.00% |
| Watkins -A- | 1202 | 6 | 233-83284 | 100.00% | 75.00% |
| Watkins -A- | 1202 | 7 | 233-83285 | 100.00% | 75.00% |
| Watkins -A- | 1202 | 8 | 233-83286 | 100.00% | 75.00% |
| Watkins -A- | 1202 | 10 | 233-83288 | 100.00% | 75.00% |
| Watkins -A- | 1202 | 12 | 233-83290 | 100.00% | 75.00% |
| Watkins -A- | 1202 | 13G | 233-12965 | 100.00% | 75.00% |
| J W Moore | 1276 | 1 | 233-83828 | 100.00% | 75.00% |
| J W Moore | 1276 | 2 | 233-83829 | 100.00% | 75.00% |
| J W Moore | 1276 | 4 | 233-83830 | 100.00% | 75.00% |
| J W Moore | 1276 | 5 | 233-83831 | 100.00% | 75.00% |
| J W Moore | 1276 | 7 | 233-83832 | 100.00% | 75.00% |
| J W Moore | 1276 | 8G | 233-10484 | 100.00% | 75.00% |
| J W Moore | 1276 | 9 | 233-83834 | 100.00% | 75.00% |
| J W Moore | 1276 | 10 | 233-83835 | 100.00% | 75.00% |
| J W Moore | 1276 | 11 | 233-83836 | 100.00% | 75.00% |
| J W Moore | 1276 | 12 | 233-83837 | 100.00% | 75.00% |
| J W Moore | 1276 | 14 | 233-83839 | 100.00% | 75.00% |
| W L Watters | 43243 | 1 | 233-80656 | 91.67% | 68.06% |
| C R Garner "B" | 1271 | 4 | 233-83771 | 100.00% | 75.00% |
| C R Garner "B" | 1271 | 6 | 233-83773 | 100.00% | 75.00% |
| C R Garner "B" | 1271 | 7G | 233-83774 | 100.00% | 75.00% |
| C R Garner "B" | 1271 | 8 | 233-83775 | 100.00% | 75.00% |
| C R Garner "B" | 1271 | 11 | 233-83776 | 100.00% | 75.00% |
| C R Garner "B" | 1271 | 12 | 233-83777 | 100.00% | 75.00% |
| C R Garner "B" | 1271 | 13 | 233-83778 | 100.00% | 75.00% |
| E P Hackley | 42528 | 1 | 233-20100 | 68.43% | 52.13% |
| Sanford -M- | 886 | 1 | 233-81622 | 100.00% | 75.00% |
| Roy O Stevenson | 5899 | lA | 233-31948 | 93.50% | 67.25% |
| Roy O Stevenson | 5899 | 2A | 233-31949 | 93.50% | 67.25% |
| Roy O Stevenson | 5899 | 3A | 233-32126 | 93.50% | 67.25% |
| Killough | 3797 | 1 | 233-85495 | 100.00% | 75.00% |
| Killough | 3797 | 2 | 233-85496 | 100.00% | 75.00% |
| Killough | 3797 | 3 | 233-85497 | 100.00% | 75.00% |

| Killough | 3797 | 4 | 233-85498 | 100.00% | 75.00% |
| Killough | 3797 | 5W | 233-30230 | 100.00% | 75.00% |

EXHIBIT B

## EXCLUDED LEASES AND WELLS

## EXCLUDED LEASES IN GRAY COUNTY, TEXAS

| Lessor | Lessee | WI% | NRI% | Recording Information | Excluded Wells |
|---|---|---|---|---|---|
| Alexander J. Chapman, et ux | Roxanna Petroleum Corp. | 100.00% | 87.50% | Vol. 26, Pg. 328 | 26-27 |

## EXCLUDED WELLS IN GRAY COUNTY, TEXAS

| Ref. # | Lease | RRC# | Well # | API # | WI% | NRI% |
|---|---|---|---|---|---|---|
| 26 | Chapman | 447 | 3 | 17982328 | 100.00% | 75.00% |
| 27 | Chapman | 447 | 7 | 17982332 | 100.00% | 75.00% |

EXHIBIT C

**PONDEROSA ENERGY DEED**

**DEED IN LIEU OF FORECLOSURE**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTIES OF HUTCHINSON, | § | |
| GRAY AND CARSON | § | |

That **Ponderosa Energy, LLC**, a Delaware limited liability company ("Grantor"), for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to Grantor in hand paid by Grantee herein named, the receipt and sufficiency of which are hereby acknowledged and confessed, has GRANTED, BARGAINED, SOLD, and CONVEYED, and by these presents does GRANT, BARGAIN, SELL, and CONVEY unto **Borger Resources 2 LLC**, a Missouri limited liability company ("Grantee"), with a principal address at 400 N. St. Paul, Suite 505, Dallas, Texas 75201, all of the Properties (as defined below), together with all improvements and fixtures located therein, thereon or used in conjunction therewith, all and singular, the benefits, privileges, easements and leases therein, thereon or in anywise appertaining thereto, and any and all rights, title, and interests of Grantor in and to pipelines, subject, however, to the Deed of Trust and Volumetric Production Payment (hereinafter defined) and the easements, restrictions, and other title exceptions of record affecting the Properties. "Properties" shall mean the Grantor's interest in oil, gas and/or mineral leases and wells listed as "Included" in **Exhibit 1** attached hereto, including the Included Leases In Carson County, Texas; the Included Wells In Carson County, Texas; the Included Leases In Gray County, Texas; the Included Wells In Gray County, Texas; the Included Leases In Hutchinson County, Texas; the Included Wells In Hutchinson County, Texas; and all equipment owned by Grantor used therein, thereon or in conjunction therewith as well as all easements and rights-of-way owned by Grantor related thereto. "Properties" does not mean and specifically excludes the leases and wells listed as "Excluded" in **Exhibit 2** attached hereto, including the Excluded Leases In Gray County, Texas; and the Excluded Wells In Gray County, Texas (collectively, the "Excluded Leases and Wells"). The Excluded Leases and Wells are not being conveyed by Grantor herein.

Grantee is the designee of PPF 2 LLC ("Holder"), the sole owner and holder of that certain Deed of Trust and Volumetric Production Payment (hereafter defined) arising from the transaction between PPF 2 LLC and Ponderosa Energy, LLC, as memorialized in the Conveyance of Term Overriding Royalty Interest ("Conveyance"), Production and Delivery Agreement ("PDA"), and Deed of Trust, Mortgage, Assignment, Security Agreement and Financing Statement ("Deed of Trust"), all of which were dated effective October 1, 2016 and which assigned 75,000 barrels of oil from the oil and gas leases and wells described in Exhibit A to the Conveyance, the PDA, and the Deed of Trust.

- 1 -

EXHIBIT C - SETTLEMENT AGREEMENT                                      Page 1 of 15

TO HAVE AND TO HOLD the Properties, together with all and singular, the rights and appurtenances thereto in anywise belonging unto Grantee, its legal representatives, successors, and assigns FOREVER; and Grantor does hereby bind itself and its legal representatives, successors, and assigns to WARRANT AND FOREVER DEFEND all and singular the Properties, subject as aforesaid, unto Grantee, its legal representatives, successors, and assigns, and subject, however, as aforesaid.

But it is expressly agreed and understood hereby that:

A.    Notwithstanding the provisions hereof, the liens and security interests created by the Deed of Trust and the Volumetric Production Payment (the "Liens") for the Properties are not released or relinquished in any manner or respect whatsoever and shall remain in existence and in full force and effect until released by written instrument (the "Release") duly executed and acknowledged and filed of record in the Office of the County Clerk where the Properties are located in Texas. The Deed of Trust (as defined below) and the Volumetric Production Payment (as defined below) are each hereby expressly amended to provide that this Deed in Lieu of Foreclosure shall not cause the termination of the Deed of Trust or the termination of the Volumetric Production Payment with respect to the Properties, but the same shall continue in full force and effect, until released by written instrument as described in the preceding sentence. Such Release may be made as, if and when Grantee, or its successors or assigns, shall determine in the exercise of its sole discretion. The Liens include, without limitation, the security interests created by that certain Deed of Trust, Mortgage, Security Agreement, Assignment and Financing Statement dated effective October 1, 2016, executed by Grantor, recorded as Document Number 00362811, Book OR, Vol. 1960, Page 24 in the Real Property Records of Hutchinson County, Texas, as Document Number 0211107 in the Real Property Records of Gray County, Texas, and as Document Number 2016-00001315, Vol. 666, Page 147 in the Real Property Records of Carson County, Texas (the "Deed of Trust"); and the overriding royalty interests conveyed to Grantee pursuant to that certain Conveyance of Overriding Royalty Interest dated effective October 1, 2016, from Grantor to PPF 2 LLC, recorded as Document Number 00362810, Book OR, Vol. 1960, Page 1 in the Real Property Records of Hutchinson County, Texas, as Document Number 0192822, Vol. 784, Page 837, of the Real Property Records of Gray County, Texas, and as Document Number 2016-00001252, Vol. 665, Page 119, of the Real Property Records of Carson County, Texas (the "Volumetric Production Payment").

B.    For purposes of priority as between (i) intervening or inferior liens and encumbrances, if any, on or against the Properties, and (ii) those Liens created by the Deed of Trust and pursuant to the Volumetric Production Payment, it is the intent of Grantor and Grantee that any and all rights of Grantee to exercise its remedies of foreclosure by private power of sale pursuant to nonjudicial foreclosure or by judicial foreclosure of any of such Liens and the right to exercise any other remedies are expressly preserved hereby and for purposes of limitations and any other applicable time bar defense, are expressly extended as evidenced hereby. The priority of the Lien of the Deed of Trust as to the Properties as well as the Volumetric Production Payment obligations to which the Properties are subject are intended to be and shall remain in full force and effect and nothing herein contained shall be construed to subordinate the priority of the Lien of the Deed of Trust to any other liens or encumbrances whatsoever.

- 2 -

EXHIBIT C - SETTLEMENT AGREEMENT                                              Page 2 of 15

C.      Neither Grantor nor Grantee intend that there be, nor shall there in any event be, a merger of any of the Liens with the title to the interest of Grantee in and to the Properties obtained by Grantee by virtue of the conveyance made hereby, but do intend that the said Liens and title to the Properties be kept separate, and such Liens shall merge only under one (1) or more of the following conditions:

1.          The foreclosure of the Liens; or

2.          The sale of the Properties pursuant to the power of sale granted in the Deed of Trust; or

3.          Holder, its successor or assigns, including Grantee, execute and file in the Deed Records of the foregoing Counties in Texas, the Release or other instrument specifically agreeing to permit the merger of the Liens with the title or other interests of Grantee in the Properties.

In this regard, such interests shall not be merged in the event of the sale of the Properties by Grantee, its successors or assigns, or the granting or acceptance of additional liens or interests in the Properties, unless a separate written Release is executed and filed for public record, as contemplated by subsection C.(3) above.

D.      This Deed in Lieu of Foreclosure (and the conveyance made hereby) is being voluntarily executed, delivered, and accepted in lieu of foreclosure, as part of a Settlement Agreement and Release of Liability being executed contemporaneously herewith by and between Petroleum Production Finance, Inc.; PPF 2 LLC; PPF 3 LLC; GS Energy, LLC; Ponderosa Energy, LLC; Richard F. Sands; and Casimir Capital L.P. (the "Settlement Agreement"). With respect to the transfer of title to the Properties to Grantee hereunder, the same shall be interpreted and construed the same as a foreclosure of the Liens, legally and rightfully performed under the laws of the State of Texas, and as an absolute conveyance to Grantee of all right, title and interest of Grantor in and to the Properties, including specifically, but without limitation, any equity or rights of redemption of Grantor in the Properties (or any portion thereof or interest therein).

E.      In the event this conveyance is set aside for any reason whatsoever (i) the rights and interests evidenced by the Deed of Trust and Volumetric Production Payment (except for the Excluded Leases and Wells) shall be revived, and any cancellation and extinguishment of such obligations, whether in whole or in part, shall be automatically revoked; (ii) the terms and provisions of the Liens and obligations of Grantor evidenced by the Deed of Trust and the Volumetric Production Payment shall be and continue in full force and effect; (iii)  Grantee shall have the right to foreclose on the rights and interests granted in the Deed of Trust and otherwise securing the rights and interests secured and to take such other actions against Grantor or the Properties as may be permitted at law or in equity;  (iv)  all costs of Grantee incurred in connection with the enforcement of the rights and remedies of Grantee shall be deemed a part of the obligations secured by the Dead of Trust and payable upon demand by Grantor; and (v)  all of the respective rights and remedies of Grantor and of Grantee against the other shall be revived and restored in the same manner as if this Deed in Lieu of Foreclosure and the transactions contemplated herein had not been entered into. Notwithstanding anything in this Deed in Lieu of Foreclosure to the contrary, Grantee covenants and agrees that, except for any remedies related

- 3 -

EXHIBIT C - SETTLEMENT AGREEMENT                                    Page 3 of 15

to a breach of the warranty of title to the Properties herein conveyed or a breach of the Settlement Agreement, Grantee will seek no remedies against Grantor with respect to the Properties or the transactions contemplated by the Settlement Agreement.

F.      Grantor acknowledges and agrees that the conveyance of the Properties pursuant hereto is an absolute conveyance of all of Grantor's right, title, and interest in and to the Properties and is not intended (now, or in the future) to constitute a deed of trust, mortgage, trust conveyance or other security agreement of any nature whatsoever. Grantor hereby acknowledges that, after the conveyance hereunder, Grantor shall have no further interest or claim with respect to the Properties, including, without limitation, the rights to (1) manage the Properties; (2) occupy or use the Properties in any manner; (3) receive any revenue from the Properties; (4) receive any proceeds from the sale, transfer, financing or operation of the Properties; or (5) repurchase, redeem or regain any right, title or interest in the Properties, or in any portion thereof.

G.      Grantor and Grantee covenant, acknowledge and agree that this Deed in Lieu of Foreclosure is executed in connection with the Settlement Agreement.

- 4 -

EXHIBIT C - SETTLEMENT AGREEMENT                                              Page 4 of 15

IN WITNESS HEREOF, Grantor has caused this Deed in Lieu of Foreclosure to be executed as of the date set forth in the acknowledgement below but effective for all purposes as of _____, 2018.

**GRANTOR**:

**Ponderosa Energy, LLC**, a Delaware limited liability company

By: _____

Name: _____

Title: _____

Acknowledged and Accepted:

**GRANTEE**:

**Borger Resources 2 LLC**

By: _____

Name: _____

Title: _____

**HOLDER**:

**PPF 2 LLC**

By: _____

Name: _____

Title: _____

- 5 -

EXHIBIT C - SETTLEMENT AGREEMENT                                             Page 5 of 15

THE STATE OF _____    §
                          §
COUNTY OF _____    §

     The foregoing instrument was ACKNOWLEDGED before me on the _____ day of _____, 2018 by _____, as _____ of Ponderosa Energy, LLC, a Delaware limited liability company, on behalf of said limited liability company.

                                                _____
                                                Notary Public, State of _____

My commission expires:

_____

THE STATE OF _____    §
                          §
COUNTY OF _____    §

     The foregoing instrument was ACKNOWLEDGED before me on the _____ day of _____, 2018 by _____, as _____ of Borger Resources 2 LLC, a Missouri limited liability company, on behalf of said limited liability company.

                                                _____
                                                Notary Public, State of _____

My commission expires:

_____

THE STATE OF TEXAS    §
                      §
COUNTY OF TRAVIS      §

     The foregoing instrument was ACKNOWLEDGED before me on the _____ day of _____, 2018 by _____, as _____ of PPF 2 LLC, a Delaware limited liability company, on behalf of said limited liability company.

                                                _____
                                                Notary Public, State of _____

My commission expires:

_____

- 6 -

## INCLUDED LEASES IN CARSON COUNTY, TEXAS

| Lessor | Lessee | WI% | NRI% | Recording Information |
|---|---|---|---|---|
| Mrs. Belle Kirby | Panhandle Refining Company | 100.00% | 75.00% | Vol. 52, Pg. 506 |
| Amarillo National Bank, et al, Trustees | LERA | 36.77% | 26.6565% | Vol. 448, Pg. 11 |
| Amarillo National Bank, et al, Trustees | LERA | 36.77% | 26.6565% | Vol. 448, Pg. 19 |
| Arleen E. Stone | LERA | 36.77% | 26.6565% | Vol. 448, Pg. 27 |
| Arleen E. Stone | LERA | 36.77% | 26.6565% | Vol. 448, Pg. 32 |
| Richard S. Coon, Jr. | LERA | 36.77% | 26.6565% | Vol. 448, Pg. 37 |
| Richard S. Coon, Jr. | LERA | 36.77% | 26.6565% | Vol. 448, Pg. 42 |
| Cathryn Coon Doughtie | LERA | 36.77% | 26.6565% | Vol. 448, Pg. 47 |
| Cathryn Coon Doughtie | LERA | 36.77% | 26.6565% | Vol. 448, Pg. 52 |
| Billy Whiteside | LERA | 36.77% | 26.6565% | Vol. 449, Pg. 162 |
| Billy Whiteside | LERA | 36.77% | 26.6565% | Vol. 449, Pg. 167 |
| Nancy Ann Blanchard | LERA | 36.77% | 26.6565% | Vol. 449, Pg. 172 |
| Nancy Ann Blanchard | LERA | 36.77% | 26.6565% | Vol. 449, Pg. 177 |
| The Boyd Family Trust | LERA | 36.77% | 26.6565% | Vol. 449, Pg. 182 |
| The Boyd Family Trust | LERA | 36.77% | 26.6565% | Vol. 449, Pg. 187 |
| Herring Bank, Trustee | LERA | 36.77% | 26.6565% | Vol. 449, Pg. 192 |
| Herring Bank, Trustee | LERA | 36.77% | 26.6565% | Vol. 449, Pg. 200 |
| Michael L. O'Neal | LERA | 36.77% | 26.6565% | Vol. 450, Pg. 242 |
| Michael L. O'Neal | LERA | 36.77% | 26.6565% | Vol. 450, Pg. 247 |
| Barbara B. Creel | LERA | 36.77% | 26.6565% | Vol. 450, Pg. 252 |
| Barbara B. Creel | LERA | 36.77% | 26.6565% | Vol. 450, Pg. 257 |
| Dorothea Girault Garrett | LERA | 36.77% | 26.6565% | Vol. 451, Pg. 110 |
| Dorothea Girault Garrett | LERA | 36.77% | 26.6565% | Vol. 451, Pg. 115 |
| Cal Farley's Boyd Ranch | LERA | 36.77% | 26.6565% | Vol. 453, Pg. 123 |
| Richard Ware, II, et al | LERA | 36.77% | 26.6565% | Vol. 453, Pg. 133 |
| JASE Family, Ltd. | LERA | 36.77% | 26.6565% | Vol. 454, Pg. 221 |
| JASE Family, Ltd. | LERA | 36.77% | 26.6565% | Vol. 454, Pg. 226 |
| Thomas D. Lumpkin, II | LERA | 36.77% | 26.6565% | Vol. 469, Pg. 39 |
| Suzanne Flinchpaugh | LERA | 36.77% | 26.6565% | Vol. 469, Pg. 49 |
| Cynthia Carroll Creswell | LERA | 36.77% | 26.6565% | Vol. 469, Pg. 44 |
| Carolyn Carroll | LERA | 36.77% | 26.6565% | Vol. 469, Pg. 54 |
| Florence Sullenger | LERA | 36.77% | 26.6565% | Vol. 484, Pg. 459[1] |

---

[1] Due to a scriveners error in the prior Deed of Trust and Conveyance, the recording information for this lease was incorrectly noted as Vol. 484, Pg. 460. The correct recording information is Vol. 484, Pg. 459, which is being corrected herein and conveyed.

- 7 -

EXHIBIT C - SETTLEMENT AGREEMENT                                    Page 7 of 15

## INCLUDED WELLS IN CARSON COUNTY, TEXAS[2]

| Lease | RRC# | Well # | API # | WI% | NRI% |
|-------|------|--------|-------|-----|------|
| Sanford 160 | 235967 | 1 | 6532107 | 36.77% | 26.66% |
| Sanford 160 | 267590 | 1R | 6532126 | 36.77% | 26.66% |
| Sanford 480 | 232482 | 1 | 6532104 | 36.77% | 26.66% |
| Kirby | 4970 | 2 | 6531021 | 100.00% | 75.00% |
| Kirby | 4970 | 1 | 6531022 | 100.00% | 75.00% |

## INCLUDED LEASES IN GRAY COUNTY, TEXAS

| Lessor | Lessee | WI% | NRI% | Recording Information |
|--------|--------|-----|------|----------------------|
| Froma J. Undegraff, et al | Phillips Petroleum Company | 100.00% | 75.00% | Vol. 111, Pg. 619 |
| Froma J. Undegraff, et al | Phillips Petroleum Company | 100.00% | 75.00% | Vol. 113, Pg. 283 |
| Froma J. Undegraff, et al | Phillips Petroleum Company | 100.00% | 75.00% | Vol. 109, Pg. 377 |
| W.E. Archer | Empire Gas and Fuel Company | 100.00% | 75.00% | Vol. 28, Pg. 411 |
| W.E. Archer | I.E. Duncan | 100.00% | 75.00% | Vol. 28, Pg. 597 |
| C.S. Barrett & wife, Pearl Barrett | Texas Company | 100.00% | 81.25% | Vol. 34, Pg. 50 |
| Albert Combs & Phoebe A. Worley | F.W. Dillard | 100.00% | 75.00% | Vol. 2, Pg. 155 |
| Inez Carter, et al | E.J. Dunigan Jr., et al | 100.00% | 75.00% | Vol. 124, Pg. 310 |
| Phoebe A. Worley, et al | E.A. Haines, et al | 100.00% | 87.50% | Vol. 2, Pg. 194 |
| T.B. Noble, et al | George B. Ray | 100.00% | 87.50% | Vol. 44, Pg. 527 |

---

[2] This list is a nonexclusive list of wells from the leases listed above. Unless specifically excluded by the Excluded Wells list in Exhibit 2, all wells from the above listed leases are to be included, whether specifically contained in this list or not. If the lease covering a well on this list is not specifically listed in the Included Leases above, the Ponderosa Parties are nonetheless conveying their interest in such lease(s) with respect to the well(s) listed to the extent necessary to convey said well and the right to produce a full allowable therefrom to the PPF Parties or their designee(s).

- 8 -

EXHIBIT C - SETTLEMENT AGREEMENT                                   Page 8 of 15

## INCLUDED WELLS IN GRAY COUNTY, TEXAS[3]

| Lease | RRC# | Well # | API # | WI% | NRI% |
|-------|------|--------|-------|-----|------|
| CS Barrett | 624 | 1 | 17983147 | 100.00% | 81.25% |
| CS Barrett | 624 | 2 | 17983148 | 100.00% | 81.25% |
| CS Barrett | 624 | 3 | 17907748 | 100.00% | 81.25% |
| CS Barrett | 624 | 4 | 17983150 | 100.00% | 81.25% |
| CS Barrett | 624 | 5 | 17983151 | 100.00% | 81.25% |
| CS Barrett | 624 | 6 | 17983152 | 100.00% | 81.25% |
| CS Barrett | 624 | 7 | 17983153 | 100.00% | 81.25% |
| Foxx | 468 | 1 | 17982388 | 100.00% | 75.00% |
| Foxx | 468 | 5 | 17982392 | 100.00% | 75.00% |
| Foxx | 468 | 6 | 17982393 | 100.00% | 75.00% |
| Foxx | 468 | 7 | 17982394 | 100.00% | 75.00% |
| Foxx | 468 | 8 | 17982395 | 100.00% | 75.00% |
| Foxx | 468 | 10 | 17932047 | 100.00% | 75.00% |
| Foxx | 468 | 11 | 17932265 | 100.00% | 75.00% |
| Foxx | 468 | 12 | 17932264 | 100.00% | 75.00% |
| Worley | 296 | 2W | 17900564 | 100.00% | 75.00% |
| Worley | 296 | 1 | 17981499 | 100.00% | 75.00% |
| Worley | 296 | 3 | 17981501 | 100.00% | 75.00% |
| Worley | 296 | 4 | 17981502 | 100.00% | 75.00% |
| Worley | 296 | 5 | 17981503 | 100.00% | 75.00% |
| Worley | 296 | 6 | 17981504 | 100.00% | 75.00% |
| Worley | 296 | 7 | 17981505 | 100.00% | 75.00% |
| Worley | 296 | 8 | 17981506 | 100.00% | 75.00% |
| Worley | 296 | 11 | 17981507 | 100.00% | 75.00% |
| Johnson Y1 | 24963 | Y1 | 17980310 | 100.00% | 75.00% |
| Archer B | 179778 | 7G | 17906532 | 100.00% | 75.00% |
| Archer B&C | 224 | B1 | 17981185 | 100.00% | 75.00% |
| Archer B&C | 224 | B2 | 17981186 | 100.00% | 75.00% |
| Archer B&C | 224 | B3 | 17981187 | 100.00% | 75.00% |
| Archer B&C | 224 | B4 | 17981188 | 100.00% | 75.00% |
| Archer B&C | 224 | B5 | 17981189 | 100.00% | 75.00% |
| Archer B&C | 224 | B8 | 17981192 | 100.00% | 75.00% |
| Archer B&C | 224 | C3 | 17981195 | 100.00% | 75.00% |
| Archer B&C | 224 | C4 | 17981196 | 100.00% | 75.00% |
| Archer B&C | 224 | C5 | 17981197 | 100.00% | 75.00% |
| Archer B&C | 224 | C7 | 17981199 | 100.00% | 75.00% |
| Archer C | 179779 | 2G | 17906541 | 100.00% | 75.00% |
| National | 222 | 8W | 17900862 | 100.00% | 75.00% |
| National | 222 | 5W | 17900863 | 100.00% | 75.00% |
| National | 222 | 2 | 17903568 | 100.00% | 75.00% |
| National | 222 | 4 | 17903569 | 100.00% | 75.00% |
| National | 222 | 1 | 17981177 | 100.00% | 75.00% |
| National | 222 | 3 | 17981179 | 100.00% | 75.00% |

---

[3] This list is a nonexclusive list of wells from the leases listed above. Unless specifically excluded by the Excluded Wells list in Exhibit 2, all wells from the above listed leases are to be included, whether specifically contained in this list or not. If the lease covering a well on this list is not specifically listed in the Included Leases above, the Ponderosa Parties are nonetheless conveying their interest in such lease(s) with respect to the well(s) listed to the extent necessary to convey said well and the right to produce a full allowable therefrom to the PPF Parties or their designee(s).

EXHIBIT C - SETTLEMENT AGREEMENT                                    Page 9 of 15

| National | 222 | 6 | 17981182 | 100.00% | 75.00% |
| National | 222 | 7 | 17981183 | 100.00% | 75.00% |
| PA Worley | 658 | 1 | 17983514 | 100.00% | 75.00% |
| PA Worley | 658 | 2 | 17983515 | 100.00% | 75.00% |
| PA Worley | 658 | 3 | 17983516 | 100.00% | 75.00% |
| PA Worley | 658 | 6 | 17983517 | 100.00% | 75.00% |
| PA Worley | 658 | 7 | 17983518 | 100.00% | 75.00% |
| PA Worley | 658 | 8W | 17983519 | 100.00% | 75.00% |
| Worley Reynolds | 545 | 8 | 17905656 | 100.00% | 87.50% |
| Worley Reynolds | 545 | 6 | 17982691 | 100.00% | 87.50% |
| Worley Reynolds | 545 | 7 | 17982692 | 100.00% | 87.50% |
| Worley Reynolds | 545 | 10 | 17982695 | 100.00% | 87.50% |

## INCLUDED LEASES IN HUTCHINSON COUNTY, TEXAS

| Lessor | Lessee | WI% | NRI% | Recording Information |
|---|---|---|---|---|
| June C. Pipkin | LERA | 37.50% | 28.1250% | Vol. 1383, Pg. 10 |
| Mary Ann Caldwell | LERA | 37.50% | 28.1250% | Vol. 1395, Pg. 344 |
| Beth R. Stuart | LERA | 37.50% | 28.1250% | Vol. 1395, Pg. 346 |
| Frank S. Ryburn | LERA | 37.50% | 28.1250% | Vol. 1397, Pg. 104 |
| Joan Carder, Dist. Clerk of Hutchinson County, Texas | LERA | 37.50% | 28.1250% | Vol. 1528, Pg. 300 |
| Gore Creek Capital, Limited | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 177 |
| Maryann Williams | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 182 |
| James William Means | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 184 |
| John Robert Means | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 192 |
| Russell Thomas Henry | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 200 |
| Sherry A. Tyler Owen | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 212 |
| Frances Schlock | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 214 |
| Frances Michelle Terhune | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 216 |
| Frank Susman | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 221 |
| Marianne Karsn | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 223 |
| Cecilia Kesselgren | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 231 |
| Frank Hugh Terry | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 233 |
| Terry Family Trust | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 235 |
| Ruth Ionne Quick | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 239 |
| Kenneth H. Terry | LERA | 37.50% | 28.1250% | Vol. 1568, Pg. 241 |
| William Camden Terry | LERA | 37.50% | 28.1250% | Vol. 1570, Pg. 325 |
| Kristen Kay Sternberg | LERA | 37.50% | 28.1250% | Vol. 1570, Pg. 328 |
| J.K. Bigham, et al | LERA | 37.50% | 28.1250% | Vol. 1570, Pg. 330 |
| Donna Rae Mead | LERA | 37.50% | 28.1250% | Vol. 1570, Pg. 333 |
| Patty Weber, et vir | LERA | 37.50% | 28.1250% | Vol. 1570, Pg. 336 |
| Robert E. Davis, et ux | LERA | 37.50% | 28.1250% | Vol. 1570, Pg. 339 |
| Jana Mirs | LERA | 37.50% | 28.1250% | Vol. 1570, Pg. 348 |
| Arland A. Speidel | LERA | 37.50% | 28.1250% | Vol. 1570, Pg. 344 |
| Terry Lynn Carson | LERA | 37.50% | 28.1250% | Vol. 1570, Pg. 346 |
| Larry C. Nelson | LERA | 37.50% | 28.1250% | Vol. 1578, Pg. 111 |
| Emma Jean Speidel | LERA | 37.50% | 28.1250% | Vol. 1578, Pg. 113 |
| Bruce David Terry | LERA | 37.50% | 28.1250% | Vol. 1583, Pg. 183 |
| Joyce M. Yowell | LERA | 37.50% | 28.1250% | Vol. 1591, Pg. 114 |
| William R. Yowell | LERA | 37.50% | 28.1250% | Vol. 1591, Pg. 116 |
| Shelia M. Terry | LERA | 37.50% | 28.1250% | Vol. 1591, Pg. 118 |

- 10 -

EXHIBIT C - SETTLEMENT AGREEMENT                    Page 10 of 15

| J.M. Huber Corporation | SNW Operating Company, Inc. | 37.50% | 28.1250% | Vol. 1383, Pg. 8 |
|---|---|---|---|---|
| E.B. Johnson, et al | The Pure Oil Company | 37.50% | 28.1250% | Vol. 28, Pg. 209 |
| E.B. Johnson and Sons Estate, et al | Phillips Petroleum Company | 37.50% | 28.1250% | Vol. 59, Pg. 639 |
| Jerlyn J. Agar, et al | Barrett W. Pierce | 37.50% | 28.1250% | Vol. 551, Pg. 612 |
| Jerlyn J. Agar, et al | Barrett W. Pierce | 37.50% | 28.1250% | Vol. 551, Pg. 617 |
| Robert A. Johnson, et al | Barrett W. Pierce | 37.50% | 28.1250% | Vol. 551, Pg. 622 |
| Johnson Royalty Company | Barrett W. Pierce | 37.50% | 28.1250% | Vol. 551, Pg. 624 |
| Philip C. Kidd, Jr. | Barrett W. Pierce | 37.50% | 28.1250% | Vol. 551, Pg. 626 |
| E.B. Johnson, et al | George Montgomery | 37.50% | 28.1250% | Vol. 17, Pg. 462 |
| J.M. Sanford and wife, Garland S. Sanford | J.O. Whittington | 37.50% | 28.1250% | Vol. 21, Pg. 121[4] |
| Mrs. Garland S. Sanford | J.M. Huber Corporation | 37.50% | 28.1250% | Vol. 127, Pg. 321 |
| E.B. Johnson, et al | Dorset Carter | 37.50% | 28.1250% | Vol. 28, Pg. 28 |
| E.B. Johnson, et al | A.L. Anderson | 37.50% | 28.1250% | Vol. 27, Pg. 336 |
| Montford T. Johnson, et ux | Phillips Petroleum Company | 37.50% | 28.1250% | Vol. 155, Pg. 110 |
| E.B. Johnson, et al | Dixon Creek Oil Company | 37.50% | 28.1250% | Vol. 5, Pg. 217 |
| W.E. Herring, et al | J.M. Huber Corporation | 100.00% | 75.00% | Vol. 71, Page 264 |
| Neil R. Johnson, et al | J.M. Huber Corporation | 100.00% | 70.00% | Vol. 127, Pg. 147 |
| Garland Sanford | J.M. Huber Corporation | 100.00% | 75.00% | Vol. 103, Pg. 406 |
| Stanolind Oil & Gas Co. | J.M. Huber Corporation | 100.00% | 75.00% | Vol. 103, Pg. 411[5] |
| J.M. Sanford, et al | Associated Oil Company, et al | 100.00% | 75.00% | Vol. 46, Pg. 480 |
| J.M. Sanford & wife, Garland Sanford | Marland Oil Company of Texas | 100.00% | 75.00% | Vol. 35, Pg. 290 |
| Richard S. Coon, et al | DCW Production Company | 100.00% | 72.50% | Vol. 375, Pg. 110 |
| J.A. & Leta M. Chapman Trust | DCW Production Company | 100.00% | 72.50% | Vol. 389, Pg. 407 |
| Amoco Production Company | DCW Production Company | 100.00% | 72.50% | Vol. 389, Pg. 411 |
| Perry Stevens, et al | Dorsett Carter | 100.00% | 75.00% | Vol. 28, Pg. 122 |
| E.B. Johnson, et al | Lawrence R. Hagy | 100.00% | 75.00% | Vol. 28, Pg. 20 |
| J.A. Whittenburg | George A. Whittenburg | 100.00% | 71.09% | Vol. 20, Pg. 450 |
| George A. Whittenburg | C.C. Patten | 100.00% | 71.09% | Vol. 20, Pg. 453 |
| Neil R. Johnson, et al | H.F. Sears | 100.00% | 70.00% | Vol. 155, Pg. 418 |
| Perry Stevens | H.F. Sears | 100.00% | 70.00% | Vol. 155, Pg. 446 |
| E.B. Johnson, et al | V.N. Souligny | 100.00% | 72.50% | Vol. 27, Pg. 288 |
| Neil R. Johnson, et al | J.M. Huber Corporation | 100.00% | 72.50% | Vol. 127, Pg. 311 |
| Johnson Royalty Company | LERA | 100.00% | 72.50% | Vol. 1727, Pg. 181 |
| Johnson Royalty Account | LERA | 100.00% | 72.50% | Vol. 1727, Pg. 184 |
| Johnson Enterprises | LERA | 100.00% | 72.50% | Vol. 1727, Pg. 187 |
| Johnson Mineral Purchase | LERA | 100.00% | 72.50% | Vol. 1727, Pg. 190 |
| Sallie Pritchard, a widow | J.P. Woodall | 100.00% | 75.00% | Vol. 66, Pg. 98 |

---

[4] The recording at Vol. 21, Pg. 121, covers others leases/wells with 100% WI% and 75% NRI%, including the Included Wells Sanford D2, Sanford M2, Sanford 3, Chap 3, Chap 4, and Continental Sanford.

[5] Due to a scriveners error in the prior Deed of Trust and Conveyance, the recording information for this lease was incorrectly noted as Vol. 103, Pg. 441. The correct recording information is Vol. 103, Pg. 411, which is being corrected herein and conveyed.

- 11 -

EXHIBIT C - SETTLEMENT AGREEMENT                                    Page 11 of 15

| C.R. Garner, et al | D.R. Tripplehorn | 100.00% | 87.50% | Vol. 64, Pg. 443[6] |
| C.R. Garner, et al | D.R. Tripplehorn | 100.00% | 87.50% | Vol. 64, Pg. 266[6] |
| C.R. Garner, et al | D.R. Tripplehorn | 100.00% | 87.50% | Vol. 69, Pg. 165[6] |

## INCLUDED WELLS IN HUTCHINSON COUNTY, TEXAS[7]

| Lease | RRC# | Well # | API # | WI% | NRI% |
|-------|------|--------|-------|-----|------|
| A K Johnson | 39798 | 1 | 23380640 | 37.50% | 28.13% |
| Black | 228564 | 1 | 23333202 | 37.50% | 28.13% |
| Blade Sanford | 4278 | 1 | 23330345 | 100.00% | 75.00% |
| Blade Sanford | 4278 | 2 | 23330577 | 100.00% | 75.00% |
| Blade Sanford | 4278 | 3 | 23330578 | 100.00% | 75.00% |
| Blade Sanford | 4278 | 4 | 23330632 | 100.00% | 75.00% |
| Blade Sanford | 4278 | 6 | 23330743 | 100.00% | 75.00% |
| Chapp 3 | 24785 | 3 | 23380247 | 100.00% | 75.00% |
| Chapp 4 | 24786 | 4 | 23380248 | 100.00% | 75.00% |
| Continental Sanford | 919 | 7 | 23381989 | 100.00% | 75.00% |
| Continental Sanford | 919 | 8 | 23381990 | 100.00% | 75.00% |
| Continental Sanford | 919 | 10 | 23381991 | 100.00% | 75.00% |
| Continental Sanford | 919 | 11 | 23331143 | 100.00% | 75.00% |
| Davis 1R | 223864 | 1R | 23333078 | 100.00% | 75.00% |
| Dee O Gee 1 | 264833 | 1 | 23333448 | 100.00% | 70.00% |
| Dee O Gee 2 | 276608 | 2 | 23333449 | 100.00% | 70.00% |
| Diana Shaw | 253074 | 1R | 23333419 | 37.50% | 28.13% |
| Gulf Sanford A | 217267 | 1R | 23333067 | 37.50% | 28.13% |
| Hagy 1 | 24887 | 1 | 23380271 | 100.00% | 75.00% |
| J. Johnson | 24965 | 16 | 23380299 | 37.50% | 28.13% |
| J. Johnson | 246375 | 17 | 23333339 | 37.50% | 28.13% |
| Johnson 1R | 224920 | 1R | 23331826 | 100.00% | 75.00% |
| Johnson A | 4992 | 1 | 23331233 | 100.00% | 72.50% |
| Johnson A | 4992 | 3 | 23332278 | 100.00% | 72.50% |
| Johnson AC | 2868 | 1 | 23385258 | 100.00% | 72.50% |
| Johnson AC | 2868 | 2 | 23313790 | 100.00% | 72.50% |
| Johnson D | 3157 | 1 | 23305842 | 100.00% | 75.00% |
| Johnson D | 3157 | 2 | 23385301 | 100.00% | 75.00% |
| Johnson G | 3939 | 2 | 23333453 | 100.00% | 72.50% |
| Johnson G | 3939 | 4 | 23330247 | 100.00% | 72.50% |
| Johnson K | 24953 | 1 | 23380294 | 37.50% | 28.13% |
| Johnson K | 211384 | 1R | 23333036 | 37.50% | 28.13% |
| Johnson O | 206970 | 1R | 23333011 | 37.50% | 28.13% |
| Klyne | 224860 | 1 | 23333070 | 37.50% | 28.13% |

---

[6] These three leases are in both Carson County and Hutchinson County. Due to scriveners error in the prior Deed of Trust and Conveyance, these three leases were listed as Included Leases in Carson County. The recording information provided in the Deed of Trust and Conveyance is a reference to the recording information in Hutchinson County. To clarify and correct the prior scriveners error, these leases are now listed under Hutchinson County.

[7] This list is a nonexclusive list of wells from the leases listed above. Unless specifically excluded by the Excluded Wells list in Exhibit 2, all wells from the above listed leases are to be included, whether specifically contained in this list or not. If the lease covering a well on this list is not specifically listed in the Included Leases above, the Ponderosa Parties are nonetheless conveying their interest in such lease(s) with respect to the well(s) listed to the extent necessary to convey said well and the right to produce a full allowable therefrom to the PPF Parties or their designee(s).

EXHIBIT C - SETTLEMENT AGREEMENT                                   Page 12 of 15

| Klyne | 218196 | 2 | 23333072 | 37.50% | 28.13% |
|---|---|---|---|---|---|
| Kyle | 5316 | 1 | 23331535 | 100.00% | 70.00% |
| Kyle | 5316 | 4 | 23331538 | 100.00% | 70.00% |
| Kyle 3 | 269610 | 3 | 23331536 | 100.00% | 70.00% |
| Lil Randi | 9388 | 2 | 23333503 | 100.00% | 75.01% |
| Payne Herring | 719 | 1 | 23380830 | 100.00% | 75.00% |
| Payne Herring | 720 | 3 | 23380832 | 100.00% | 75.00% |
| Payne Herring | 721 | 4 | 23380833 | 100.00% | 75.00% |
| Payne Herring | 722 | 5 | 23380834 | 100.00% | 75.00% |
| Payne Herring | 723 | 6 | 23380835 | 100.00% | 75.00% |
| Payne Herring | 724 | 7 | 23380836 | 100.00% | 75.00% |
| Payne Herring | 725 | 8 | 23380837 | 100.00% | 75.00% |
| Phillips C | 25073 | 1 | 23380320 | 37.50% | 28.13% |
| Pruett B | 5711 | 1 | 23331581 | 100.00% | 63.00% |
| Pruett B | 5711 | 2 | 23331793 | 100.00% | 63.00% |
| Pruett B | 5711 | 4 | 23331833 | 100.00% | 63.00% |
| Pruett B | 5711 | 5 | 23331957 | 100.00% | 63.00% |
| Pruett B | 5711 | 9 | 23333512 | 100.00% | 63.00% |
| RC Ware | 1299 | 1 | 23384008 | 100.00% | 87.50% |
| RC Ware | 1299 | 2 | 23384009 | 100.00% | 87.50% |
| RC Ware | 1299 | 4 | 23384011 | 100.00% | 87.50% |
| RC Ware | 1299 | 7 | 23384014 | 100.00% | 87.50% |
| RC Ware | 1299 | 8 | 23384015 | 100.00% | 87.50% |
| RC Ware | 1299 | 9 | 23384016 | 100.00% | 87.50% |
| RC Ware | 1299 | 10 | 23384017 | 100.00% | 87.50% |
| RC Ware | 1299 | 11 | 23384018 | 100.00% | 87.50% |
| RC Ware | 1299 | 12 | 23384019 | 100.00% | 87.50% |
| RC Ware | 1299 | 13 | 23384020 | 100.00% | 87.50% |
| RC Ware | 1299 | 14 | 23384021 | 100.00% | 87.50% |
| RC Ware | 1299 | 15 | 23384022 | 100.00% | 87.50% |
| RC Ware | 1299 | 16 | 23384023 | 100.00% | 87.50% |
| Rice Patty | 267167 | 1 | 23333451 | 37.50% | 28.13% |
| Sallie Pritchard | 2212 | 3 | 23384798 | 100.00% | 75.00% |
| Sallie Pritchard | 2212 | 4 | 23384799 | 100.00% | 75.00% |
| Sallie Pritchard | 2212 | 5 | 23309312 | 100.00% | 75.00% |
| Sallie Pritchard | 2212 | 6 | 23384801 | 100.00% | 75.00% |
| Sallie Pritchard | 2212 | 8 | 23384803 | 100.00% | 75.00% |
| Sallie Pritchard | 2212 | 9 | 23330976 | 100.00% | 75.00% |
| Sanford 3 | 25258 | 3 | 23380368 | 100.00% | 75.00% |
| Sanford A15 | 145518 | A15 | 23307579 | 100.00% | 72.50% |
| Sanford C5 | 35065 | 5 | 23380627 | 100.00% | 75.00% |
| Sanford D2 | 23927 | D2 | 23380160 | 100.00% | 75.00% |
| Sanford E2 | 23929 | E2 | 23380162 | 100.00% | 75.00% |
| Sanford M2 | 23937 | M2 | 23380165 | 100.00% | 75.00% |
| Whittenburg 5 | 25269 | 5 | 23380373 | 100.00% | 71.94% |
| Herring 4 | 23812 | 4 | 23380081 | 100.00% | 75.00% |
| Johnson 2 | 25251 | 2 | 23380361 | 100.00% | 70.00% |
| Johnson F1 | 23878 | F1 | 23380129 | 100.00% | 70.00% |
| Sanford -M- | 886 | 1 | 233-81622 | 100.00% | 75.00% |
| E Herring | 977 | 6A | 23331035 | 100.00% | 75.00% |
| E Herring | 977 | 8 | 23331273 | 100.00% | 75.00% |
| E Herring | 977 | 10 | 23331275 | 100.00% | 75.00% |
| E Herring | 977 | 9 | 23331276 | 100.00% | 75.00% |

EXHIBIT C - SETTLEMENT AGREEMENT                    Page 13 of 15

| E Herring | 977 | 11 | 23331450 | 100.00% | 75.00% |
| E Herring | 977 | 6  | 23332290 | 100.00% | 75.00% |
| E Herring | 977 | 12 | 23333452 | 100.00% | 75.00% |
| E Herring | 977 | 3  | 23382245 | 100.00% | 75.00% |
| E Herring | 977 | 5  | 23382246 | 100.00% | 75.00% |

**END OF EXHIBIT 1**

- 14 -

EXHIBIT C - SETTLEMENT AGREEMENT                                   Page 14 of 15

## EXCLUDED LEASES IN GRAY COUNTY, TEXAS

| Lessor | Lessee | WI% | NRI% | Recording Information | Excluded Wells[8] |
|---|---|---|---|---|---|
| Alexander J. Chapman, et ux | Roxanna Petroleum Corp. | 100.00% | 87.50% | Vol. 26, Pg. 328 | 26-27 |

## EXCLUDED WELLS IN GRAY COUNTY, TEXAS[9]

| Ref. # | Lease | RRC# | Well # | API # | WI% | NRI% |
|---|---|---|---|---|---|---|
| 26 | Chapman | 447 | 3 | 17982328 | 100.00% | 75.00% |
| 27 | Chapman | 447 | 7 | 17982332 | 100.00% | 75.00% |

## END OF EXHIBIT 2

---

[8] Any known wells for the specific Excluded Lease is referenced below [see Excluded Well list for reference].

[9] This is a list of wells from the Included Leases in Exhibit A or Excluded Leases list above that are not being conveyed in this settlement.

- 15 -

EXHIBIT C - SETTLEMENT AGREEMENT                                    Page 15 of 15

EXHIBIT D

## GS ENERGY DEED

## DEED IN LIEU OF FORECLOSURE

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTIES OF HUTCHINSON, | § | |
| MOORE AND CARSON | § | |

That **GS Energy, LLC**, a Delaware limited liability company ("Grantor"), for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to Grantor in hand paid by Grantee herein named, the receipt and sufficiency of which are hereby acknowledged and confessed, has GRANTED, BARGAINED, SOLD, and CONVEYED, and by these presents does GRANT, BARGAIN, SELL, and CONVEY unto **Borger Resources 3 LLC**, a Missouri limited liability company ("Grantee"), with a principal address at 400 N. St. Paul, Suite 505, Dallas, Texas 75201, all of the Properties (as defined below), together with all improvements and fixtures located therein, thereon or used in conjunction therewith, all and singular, the benefits, privileges, easements and leases therein, thereon or in anywise appertaining thereto, and any and all rights, title, and interests of Grantor in and to pipelines, subject, however, to the Deed of Trust and Volumetric Production Payment (hereinafter defined) and the easements, restrictions, and other title exceptions of record affecting the Properties. "Properties" shall mean the Grantor's interest in oil, gas and/or mineral leases and wells listed as "Included" in **Exhibit 1** attached hereto, including the Included Leases In Carson County, Texas; the Included Wells In Carson County, Texas; the Included Leases In Moore County, Texas; the Included Wells In Moore County, Texas; the Included Leases In Hutchinson County, Texas; the Included Wells In Hutchinson County, Texas; and all equipment owned by Grantor used therein, thereon or in conjunction therewith as well as all easements and rights-of-way owned by Grantor related thereto.

Grantee is the designee of PPF 3 LLC ("Holder"), the sole owner and holder of that certain Deed of Trust and Volumetric Production Payment (hereafter defined) arising from the transaction between PPF 3 LLC and GS Energy, LLC, as memorialized in the Conveyance of Term Overriding Royalty Interest ("Conveyance"), Production and Delivery Agreement ("PDA"), and Deed of Trust, Mortgage, Assignment, Security Agreement and Financing Statement ("Deed of Trust"), all of which were dated effective December 1, 2016 and which assigned 75,000 barrels of oil from the oil and gas leases and wells described in Exhibit A to the Conveyance, the PDA, and the Deed of Trust.

TO HAVE AND TO HOLD the Properties, together with all and singular, the rights and appurtenances thereto in anywise belonging unto Grantee, its legal representatives, successors, and assigns FOREVER; and Grantor does hereby bind itself and its legal representatives, successors, and assigns to WARRANT AND FOREVER DEFEND all and singular the

- 1 -

Properties, subject as aforesaid, unto Grantee, its legal representatives, successors, and assigns, and subject, however, as aforesaid.

But it is expressly agreed and understood hereby that:

A.    Notwithstanding the provisions hereof, the liens and security interests created by the Deed of Trust and the Volumetric Production Payment (the "Liens") for the Properties are not released or relinquished in any manner or respect whatsoever and shall remain in existence and in full force and effect until released by written instrument (the "Release") duly executed and acknowledged and filed of record in the Office of the County Clerk where the Properties are located in Texas. The Deed of Trust (as defined below) and the Volumetric Production Payment (as defined below) are each hereby expressly amended to provide that this Deed in Lieu of Foreclosure shall not cause the termination of the Deed of Trust or the termination of the Volumetric Production Payment with respect to the Properties, but the same shall continue in full force and effect, until released by written instrument as described in the preceding sentence. Such Release may be made as, if and when Grantee, or its successors or assigns, shall determine in the exercise of its sole discretion. The Liens include, without limitation, the security interests created by that certain Deed of Trust, Mortgage, Security Agreement, Assignment and Financing Statement dated effective December 1, 2016, executed by Grantor, recorded as Document Number 00363034, Book OR, Vol. 1963, Page 246 in the Real Property Records of Hutchinson County, Texas, as Document Number 2016-00001338, Vol. 666, Page 361 in the Real Property Records of Carson County, Texas, and as Document Number 0192823, Vol. 784, Page 861 in the Real Property Records of Moore County, Texas (the "Deed of Trust"); and the overriding royalty interests conveyed to Grantee pursuant to that certain Conveyance of Overriding Royalty Interest dated effective December 1, 2016, from Grantor to Grantee, recorded as Document Number 00363033, Book OR, Vol. 1963, Page 222 in the Real Property Records of Hutchinson County, Texas, as Document Number 0192822, Vol. 784, Page 837 of the Real Property Records of Moore County, Texas, and as Document Number 2016-00001337, Vol. 666, Page 336, of the Real Property Records of Carson County, Texas (the "Volumetric Production Payment").

B.    For purposes of priority as between (i) intervening or inferior liens and encumbrances, if any, on or against the Properties, and (ii) those Liens created by the Deed of Trust and pursuant to the Volumetric Production Payment, it is the intent of Grantor and Grantee that any and all rights of Grantee to exercise its remedies of foreclosure by private power of sale pursuant to nonjudicial foreclosure or by judicial foreclosure of any of such Liens and the right to exercise any other remedies are expressly preserved hereby and for purposes of limitations and any other applicable time bar defense, are expressly extended as evidenced hereby. The priority of the Lien of the Deed of Trust as to the Properties as well as the Volumetric Production Payment obligations to which the Properties are subject are intended to be and shall remain in full force and effect and nothing herein contained shall be construed to subordinate the priority of the Lien of the Deed of Trust to any other liens or encumbrances whatsoever.

C.    Neither Grantor nor Grantee intend that there be, nor shall there in any event be, a merger of any of the Liens with the title to the interest of Grantee in and to the Properties obtained by Grantee by virtue of the conveyance made hereby, but do intend that the said Liens

and title to the Properties be kept separate, and such Liens shall merge only under one (1) or more of the following conditions:

1.      The foreclosure of the Liens; or

2.      The sale of the Properties pursuant to the power of sale granted in the Deed of Trust; or

3.      Holder, its successor or assigns, including Grantee, execute and file in the Deed Records of the foregoing Counties in Texas, the Release or other instrument specifically agreeing to permit the merger of the Liens with the title or other interests of Grantee in the Properties.

In this regard, such interests shall not be merged in the event of the sale of the Properties by Grantee, its successors or assigns, or the granting or acceptance of additional liens or interests in the Properties, unless a separate written Release is executed and filed for public record, as contemplated by subsection C.(3) above.

D.      This Deed in Lieu of Foreclosure (and the conveyance made hereby) is being voluntarily executed, delivered, and accepted in lieu of foreclosure, as part of a Settlement Agreement and Release of Liability being executed contemporaneously herewith by and between Petroleum Production Finance, Inc.; PPF 2 LLC; PPF 3 LLC; GS Energy, LLC; Ponderosa Energy, LLC; Richard F. Sands; and Casimir Capital L.P. (the "Settlement Agreement"). With respect to the transfer of title to the Properties to Grantee hereunder, the same shall be interpreted and construed the same as a foreclosure of the Liens, legally and rightfully performed under the laws of the State of Texas, and as an absolute conveyance to Grantee of all right, title and interest of Grantor in and to the Properties, including specifically, but without limitation, any equity or rights of redemption of Grantor in the Properties (or any portion thereof or interest therein).

E.      In the event this conveyance is set aside for any reason whatsoever (i) the rights and interests evidenced by the Deed of Trust and Volumetric Production Payment shall be revived, and any cancellation and extinguishment of such obligations, whether in whole or in part, shall be automatically revoked; (ii)  the terms and provisions of the Liens and obligations of Grantor evidenced by the Deed of Trust and the Volumetric Production Payment shall be and continue in full force and effect; (iii)  Grantee shall have the right to foreclose on the rights and interests granted in the Deed of Trust and otherwise securing the rights and interests secured and to take such other actions against Grantor or the Properties as may be permitted at law or in equity; (iv)  all costs of Grantee incurred in connection with the enforcement of the rights and remedies of Grantee shall be deemed a part of the obligations secured by the Dead of Trust and payable upon demand by Grantor; and (v)  all of the respective rights and remedies of Grantor and of Grantee against the other shall be revived and restored in the same manner as if this Deed in Lieu of Foreclosure and the transactions contemplated herein had not been entered into. Notwithstanding anything in this Deed in Lieu of Foreclosure to the contrary, Grantee covenants and agrees that, except for any remedies related to a breach of the warranty of title to the Properties herein conveyed or a breach of the Settlement Agreement, Grantee will seek no remedies against Grantor with respect to the Properties or the transactions contemplated by the Settlement Agreement.

- 3 -

F.      Grantor acknowledges and agrees that the conveyance of the Properties pursuant hereto is an absolute conveyance of all of Grantor's right, title, and interest in and to the Properties and is not intended (now, or in the future) to constitute a deed of trust, mortgage, trust conveyance or other security agreement of any nature whatsoever. Grantor hereby acknowledges that, after the conveyance hereunder, Grantor shall have no further interest or claim with respect to the Properties, including, without limitation, the rights to (1) manage the Properties; (2) occupy or use the Properties in any manner; (3) receive any revenue from the Properties; (4) receive any proceeds from the sale, transfer, financing or operation of the Properties; or (5) repurchase, redeem or regain any right, title or interest in the Properties, or in any portion thereof.

G.      Grantor and Grantee covenant, acknowledge and agree that this Deed in Lieu of Foreclosure is executed in connection with the Settlement Agreement.

- 4 -

IN WITNESS HEREOF, Grantor has caused this Deed in Lieu of Foreclosure to be executed as of the date set forth in the acknowledgement below but effective for all purposes as of _____, 2018.

**GRANTOR**:

**GS Energy, LLC**, a Delaware limited liability company

By: _____
Name: _____
Title: _____


Acknowledged and Accepted:

**GRANTEE**:

**Borger Resources 3 LLC**

By: _____
Name: _____
Title: _____


**HOLDER**:

**PPF 3 LLC**

By: _____
Name: _____
Title: _____

- 5 -

THE STATE OF _____     §
                           §
COUNTY OF _____      §

The foregoing instrument was ACKNOWLEDGED before me on the _____ day of _____, 2018 by _____, as _____ of GS Energy, LLC, a Delaware limited liability company, on behalf of said limited liability company.

_____
Notary Public, State of _____

My commission expires:

_____

THE STATE OF _____     §
                           §
COUNTY OF _____      §

The foregoing instrument was ACKNOWLEDGED before me on the _____ day of _____, 2018 by _____, as _____ of Borger Resources 3 LLC, a Missouri limited liability company, on behalf of said limited liability company.

_____
Notary Public, State of _____

My commission expires:

_____

THE STATE OF TEXAS         §
                           §
COUNTY OF TRAVIS           §

The foregoing instrument was ACKNOWLEDGED before me on the _____ day of _____, 2018 by _____, as _____ of PPF 3 LLC, a Delaware limited liability company, on behalf of said limited liability company.

_____
Notary Public, State of _____

My commission expires:

_____

- 6 -

## INCLUDED LEASES IN CARSON COUNTY, TEXAS

| Lessor | Lessee | DATE | Recording Information |
|---|---|---|---|
| Trustees of S. B. Burnett et al | J.E. Crosbie | 4/3/1924 | Vol. 31, Pg. 635 |
| Trustees of S. B. Burnett et al | J.M. Huber Corporation | 6/2/1936 | Vol. 62, Pg. 560 |
| B F and Ida Block | H C Tyrrell | 4/19/1924 | Vol. 29, Pg. 402 |
| Greg Bobbitt | D J Sargent | 6/16/1998 | Vol. 288, Pg. 420 |
| Mark Bobbitt | D J Sargent | 6/16/1988 | Vol. 288, Pg. 422 |
| Louise Casey, et al | Charles T Wagner | 9/15/1949 | Vol. 86, Pg. 170 |
| Louise Casey, et al | Charles T Wagner | 3/8/1950 | Vol. 87, Pg. 210 |
| R C Ware, et al | Drilling and Exploration Company, Inc. | 3/9/1953 | Vol. 94, Pg. 580 |
| R C Ware, et al | Drilling and Exploration Company, Inc. | 5/16/1953 | Vol. 95, Pg. 292 |

## INCLUDED WELLS IN CARSON COUNTY, TEXAS[1]

| Lease | RRC# | Well # | API # | WI% | NRI% |
|---|---|---|---|---|---|
| Burnett -A- | 100 | 1 | 65-80957 | 100.00% | 75.00% |
| Burnett -A- | 100 | 3 | 65-80959 | 100.00% | 75.00% |
| Burnett -A- | 100 | 4 | 65-80960 | 100.00% | 75.00% |
| Burnett -A- | 100 | 5 | 65-80961 | 100.00% | 75.00% |
| Burnett -A- | 137588 | 7 | 65-31839 | 100.00% | 75.00% |
| Burnett -A- | 100 | 2W | 65-02435 | 100.00% | 75.00% |
| Burnett -B- | 101 | 1 | 65-80962 | 100.00% | 68.75% |
| Burnett -B- | 101 | 2 | 65-80963 | 100.00% | 68.75% |
| Burnett -B- | 101 | 3 | 65-80964 | 100.00% | 68.75% |
| Burnett -B- | 101 | 4 | 65-80965 | 100.00% | 68.75% |
| Burnett -B- | 101 | 5 | 65-02445 | 100.00% | 68.75% |
| Pickens | 2482 | 4 | 65-30778 | 100.00% | 75.00% |
| Pickens | 2482 | 5 | 65-30797 | 100.00% | 75.00% |
| Pickens | 2482 | 3W | 65-01093 | 100.00% | 75.00% |
| Ware -A- | 79 | 1 | 65-00407 | 100.00% | 75.00% |
| Ware -A- | 79 | 3 | 65-02635 | 100.00% | 75.00% |
| Ware -A- | 79 | 4 | 65-00435 | 100.00% | 75.00% |
| Ware -A- | 79 | 9 | 65-02416 | 100.00% | 75.00% |
| Ware -A- | 79 | 10 | 65-00536 | 100.00% | 75.00% |
| Ware -A- | 79 | 13 | 065-02638 | 100.00% | 75.00% |
| Ware -A- | 79 | 14 | 65-00436 | 100.00% | 75.00% |
| Ware -A- | 79 | 15 | 65-02419 | 100.00% | 75.00% |
| Ware -A- | 79 | 16 | 65-00431 | 100.00% | 75.00% |
| Ware -A- | 79 | 17 | 65-02639 | 100.00% | 75.00% |
| Ware -A- | 79 | 18 | 65-02640 | 100.00% | 75.00% |
| Ware -A- | 79 | 23 | 65-30640 | 100.00% | 75.00% |
| Ware -A- | 79 | 24 | 65-30641 | 100.00% | 75.00% |
| Ware -A- | 79 | 25 | 65-30665 | 100.00% | 75.00% |
| Ware -A- | 79 | 26 | 65-30668 | 100.00% | 75.00% |
| Ware -A- | 79 | 27 | 65-30666 | 100.00% | 75.00% |

[1] This list is a nonexclusive list of wells from the leases listed above. All wells from the above listed leases are to be included, whether specifically contained in this list or not. If the lease covering a well on this list is not specifically listed in the Included Leases above, the Ponderosa Parties are nonetheless conveying their interest in such lease(s) with respect to the well(s) listed to the extent necessary to convey said well and the right to produce a full allowable therefrom to the PPF Parties or their designee(s).

EXHIBIT D - SETTLEMENT AGREEMENT

| | | | | | |
|---|---|---|---|---|---|
| Ware -A- | 79 | 28 | 65-30667 | 100.00% | 75.00% |
| Ware -A- | 79 | 29 | 65-30659 | 100.00% | 75.00% |
| Ware -A- | 79 | 1038 | 65-30736 | 100.00% | 75.00% |
| Ware -B- | 762 | 21 | 65-30664 | 100.00% | 75.00% |
| Ware -B- | 762 | 22 | 65-30661 | 100.00% | 75.00% |
| Ware -B- | 762 | 23 | 65-30662 | 100.00% | 75.00% |
| Ware -B- | 762 | 24 | 65-30663 | 100.00% | 75.00% |
| Ware -B- | 762 | 25 | 65-30660 | 100.00% | 75.00% |
| Ida Block | 143 | 2 | 65-81622 | 100.00% | 75.00% |
| Ida Block | 143 | 3 | 65-81623 | 100.00% | 75.00% |
| Ida Block | 143 | 4 | 65-81624 | 100.00% | 75.00% |
| Ida Block | 143 | 5 | 65-81625 | 100.00% | 75.00% |
| Ida Block | 143 | 7 | 65-81627 | 100.00% | 75.00% |
| Ida Block | 143 | 9 | 65-30815 | 100.00% | 75.00% |
| Bobbitt | 4417 | 1 | 65-30621 | 100.00% | 75.00% |
| Bobbitt | 4417 | 2 | 65-31306 | 100.00% | 75.00% |
| Bryan | 177 | 1 | 65-81761 | 100.00% | 75.00% |
| Bryan | 177 | 2 | 65-30614 | 100.00% | 75.00% |
| Bryan | 177 | 3 | 65-30581 | 100.00% | 75.00% |
| Bryan | 177 | 4 | 65-30979 | 100.00% | 75.00% |

## INCLUDED LEASES IN MOORE COUNTY, TEXAS

| Lessor | Lessee | Date | Recording Information |
|---|---|---|---|
| Elizabeth Nelson | Sinclair Prarie Oil Company | 10/9/1935 | Vol. 55, Pg. 50 |
| Evelyn & Standish Holmes | Sinclair Prarie Oil Company | 10/9/1935 | Vol. 55, Pg. 37 |
| Foster Petroleum Corporation | Direction Energy Corporation | 5/5/1983 | Vol. 314, Pg. 401 |
| Cities Service Oil and Gas Corporation | Direction Energy Corporation | 8/12/1983 | Vol. 318, Pg. 744 |
| Harriett D. Witherbee, et al | Phillips Petroleum Company | 9/7/1939 | Vol. 72, Pg. 131 |
| Nellie Loeber, et al | Phillips Petroleum Company | 4/30/1937 | Vol. 65, Pg. 206 |

## INCLUDED WELLS IN MOORE COUNTY, TEXAS[2]

| Lease | RRC# | Well # | API # | WI% | NRI% |
|---|---|---|---|---|---|
| Nellie Loeber | 1798 | 6 | 341-30624 | 100.00% | 68.75% |
| Nellie Loeber | 1798 | 8 | 341-30822 | 100.00% | 68.75% |
| Witherbee | 4633 | 1 | 341-30595 | 97.50% | 68.25% |
| Witherbee | 4633 | 2 | 341-30784 | 97.50% | 68.25% |
| Witherbee | 4633 | 3 | 341-31117 | 97.50% | 68.25% |
| Witherbee | 4633 | 4 | 341-31116 | 97.50% | 68.25% |
| Cooper | 5560 | 1 | 341-31016 | 49.50% | 34.65% |
| Cooper | 5560 | 2 | 341-31297 | 49.50% | 34.65% |

## INCLUDED LEASES IN HUTCHINSON COUNTY, TEXAS

| Lessor | Lessee | Date | Recording Information |
|---|---|---|---|

[2] This list is a nonexclusive list of wells from the leases listed above. All wells from the above listed leases are to be included, whether specifically contained in this list or not. If the lease covering a well on this list is not specifically listed in the Included Leases above, the Ponderosa Parties are nonetheless conveying their interest in such lease(s) with respect to the well(s) listed to the extent necessary to convey said well and the right to produce a full allowable therefrom to the PPF Parties or their designee(s).

- 8 -

| Otis Phillips, et al | Shell Petroleum Company | 9/4/1936 | Vol. 73, Pg. 215[3] |
|---|---|---|---|
| E and Lucille Watkins | Skelly Oil Company | 3/16/1933 | Vol. 63, Pg. 42 |
| R C Ware, et al | Drilling and Exploration Company, Inc. | 3/9/1953 | Vol. 155, Pg. 288 |
| J W Moore, et ux | Southwestern Petroleum Company | 11/27/1922 | Vol. 24, Pg. 88 |
| C T Ware, et al | J R Phillips | 8/17/1937 | Vol. 78, Pg. 232 |
| R C Ware, et al | Drilling and Exploration Company, Inc. | 5/16/1953 | Vol. 155, Pg. 475 |
| Estate of Sue Stevens | Tri-State Petroleum Investors | 2/9/1981 | Vol. 483, Pg. 239[4] |
| W.L. Watters, et al | Standard Oil Company of Texas | 8/21/1964 | Vol. 305, Pg. 373 |
| Roy Stevenson et al | Suerco Energy Development | 6/26/1984 | Vol. 506, Pg. 376 |
| Ellis and Mary Cockrell | S G Cockrell | 1/20/1926 | Vol. 33, Pg. 520 |
| C R Garner, et al | Texas Company | 5/10/1921 | Vol. 20, Pg. 430 |
| Joe Harlan | North Star Petroleum Corporation | 5/1/1967 | Vol. 337, Pg. 351 |
| Billie Ione Gilliam and John W. Gilliam | North Star Petroleum Corporation | 2/2/1967 | Vol. 335, Pg. 370 |

## INCLUDED WELLS IN HUTCHINSON COUNTY, TEXAS[5]

| Lease | RRC# | Well # | API # | WI% | NRI% |
|---|---|---|---|---|---|
| Jimmy II | 5437 | 1 | 233-31579 | 100.00% | 75.00% |
| Jimmy II | 5437 | 2 | 233-32279 | 100.00% | 75.00% |
| Lasater | 1948 | 3 | 233-84541 | 100.00% | 75.00% |
| Lasater | 1948 | 4 | 233-10499 | 100.00% | 75.00% |
| Lasater | 1948 | 5 | 233-84543 | 100.00% | 75.00% |
| Lasater | 1948 | 7 | 233-10501 | 100.00% | 75.00% |
| Lasater | 1948 | 2W | 233-10707 | 100.00% | 75.00% |
| Nellie Loeber | 1798 | 2 | 233-84409 | 100.00% | 68.75% |
| Nellie Loeber | 1798 | 3 | 233-84410 | 100.00% | 68.75% |
| Nellie Loeber | 1798 | 1W | 233-32771 | 100.00% | 68.75% |
| Otis Phillips | 2363 | 3 | 233-84959 | 100.00% | 65.63% |
| Otis Phillips | 2363 | 4 | 233-84960 | 100.00% | 65.63% |
| Otis Phillips | 2363 | 5 | 233-30945 | 100.00% | 65.63% |
| Southbend | 100834 | 1 | 233-31294 | 56.88% | 47.15% |
| Ware | 1242 | 1 | 233-07819 | 100.00% | 75.00% |
| Ware | 1242 | 2 | 233-30087 | 100.00% | 75.00% |
| Ware -A- | 79 | 2 | 233-07824 | 100.00% | 75.00% |
| Ware -A- | 79 | 5 | 233-01381 | 100.00% | 75.00% |
| Ware -A- | 79 | 6 | 233-01383 | 100.00% | 75.00% |
| Ware -A- | 79 | 11 | 233-01386 | 100.00% | 75.00% |
| Ware -A- | 79 | 19 | 233-80697 | 100.00% | 75.00% |
| Ware -A- | 79 | 20 | 233-80698 | 100.00% | 75.00% |

---

[3] Due to a scriveners error in the prior Deed of Trust and Conveyance, the recording information for this lease was incorrectly noted as Vol. 72, Pg. 215. The correct recording information is Vol. 73, Pg. 215, which is being corrected herein and conveyed.

[4] This lease is associated with the Jimmy II and Southbend wells that were included in the prior deed of trust and conveyance - although the lease was not specifically listed.

[5] This list is a nonexclusive list of wells from the leases listed above. All wells from the above listed leases are to be included, whether specifically contained in this list or not. If the lease covering a well on this list is not specifically listed in the Included Leases above, the Ponderosa Parties are nonetheless conveying their interest in such lease(s) with respect to the well(s) listed to the extent necessary to convey said well and the right to produce a full allowable therefrom to the PPF Parties or their designee(s).

EXHIBIT D - SETTLEMENT AGREEMENT                                    Page 9 of 11

| | | | | | |
|---|---|---|---|---|---|
| Ware -A- | 79 | 21 | 233-80699 | 100.00% | 75.00% |
| Ware -A- | 79 | 22 | 233-80700 | 100.00% | 75.00% |
| Ware -A- | 79 | 1030 | 233-30690 | 100.00% | 75.00% |
| Ware -A- | 79 | 1031 | 233-30689 | 100.00% | 75.00% |
| Ware -A- | 79 | 1032 | 233-30688 | 100.00% | 75.00% |
| Ware -A- | 79 | 1033 | 233-30687 | 100.00% | 75.00% |
| Ware -A- | 79 | 1034 | 233-30686 | 100.00% | 75.00% |
| Ware -A- | 79 | 1035 | 233-30683 | 100.00% | 75.00% |
| Ware -A- | 79 | 1036 | 233-30684 | 100.00% | 75.00% |
| Ware -A- | 79 | 1037 | 233-30685 | 100.00% | 75.00% |
| Ware -A- | 79 | 12W | 233-01387 | 100.00% | 75.00% |
| Ware -B- | 762 | 1 | 233-01357 | 100.00% | 75.00% |
| Ware -B- | 762 | 2 | 233-80972 | 100.00% | 75.00% |
| Ware -B- | 762 | 3 | 233-80973 | 100.00% | 75.00% |
| Ware -B- | 762 | 4 | 233-80974 | 100.00% | 75.00% |
| Ware -B- | 762 | 5 | 233-80975 | 100.00% | 75.00% |
| Ware -B- | 762 | 6 | 233-80976 | 100.00% | 75.00% |
| Ware -B- | 762 | 7 | 233-80977 | 100.00% | 75.00% |
| Ware -B- | 762 | 8 | 233-80978 | 100.00% | 75.00% |
| Ware -B- | 762 | 9 | 233-80979 | 100.00% | 75.00% |
| Ware -B- | 762 | 10 | 233-80980 | 100.00% | 75.00% |
| Ware -B- | 762 | 11 | 233-80981 | 100.00% | 75.00% |
| Ware -B- | 762 | 12 | 233-80982 | 100.00% | 75.00% |
| Ware -B- | 762 | 13 | 233-80983 | 100.00% | 75.00% |
| Ware -B- | 762 | 14 | 233-80984 | 100.00% | 75.00% |
| Ware -B- | 762 | 15 | 233-80985 | 100.00% | 75.00% |
| Ware -B- | 762 | 16 | 233-80986 | 100.00% | 75.00% |
| Ware -B- | 762 | 17 | 233-80987 | 100.00% | 75.00% |
| Ware -B- | 762 | 18 | 233-80988 | 100.00% | 75.00% |
| Ware -B- | 762 | 20 | 233-80990 | 100.00% | 75.00% |
| Ware -B- | 762 | 2026 | 233-30697 | 100.00% | 75.00% |
| Ware -B- | 762 | 2027 | 233-30696 | 100.00% | 75.00% |
| Ware -B- | 762 | 2028 | 233-30695 | 100.00% | 75.00% |
| Ware -B- | 762 | 2030 | 233-30693 | 100.00% | 75.00% |
| Ware -B- | 762 | 2031 | 233-30692 | 100.00% | 75.00% |
| Ware -B- | 762 | 2032 | 233-30691 | 100.00% | 75.00% |
| Watkins -A- | 1202 | 1 | 233-83279 | 100.00% | 75.00% |
| Watkins -A- | 1202 | 2 | 233-83280 | 100.00% | 75.00% |
| Watkins -A- | 1202 | 3 | 233-83281 | 100.00% | 75.00% |
| Watkins -A- | 1202 | 4 | 233-83282 | 100.00% | 75.00% |
| Watkins -A- | 1202 | 5 | 233-83283 | 100.00% | 75.00% |
| Watkins -A- | 1202 | 6 | 233-83284 | 100.00% | 75.00% |
| Watkins -A- | 1202 | 7 | 233-83285 | 100.00% | 75.00% |
| Watkins -A- | 1202 | 8 | 233-83286 | 100.00% | 75.00% |
| Watkins -A- | 1202 | 10 | 233-83288 | 100.00% | 75.00% |
| Watkins -A- | 1202 | 12 | 233-83290 | 100.00% | 75.00% |
| Watkins -A- | 1202 | 13G | 233-12965 | 100.00% | 75.00% |
| J W Moore | 1276 | 1 | 233-83828 | 100.00% | 75.00% |
| J W Moore | 1276 | 2 | 233-83829 | 100.00% | 75.00% |
| J W Moore | 1276 | 4 | 233-83830 | 100.00% | 75.00% |
| J W Moore | 1276 | 5 | 233-83831 | 100.00% | 75.00% |
| J W Moore | 1276 | 7 | 233-83832 | 100.00% | 75.00% |
| J W Moore | 1276 | 8G | 233-10484 | 100.00% | 75.00% |

- 10 -

| J W Moore | 1276 | 9 | 233-83834 | 100.00% | 75.00% |
|---|---|---|---|---|---|
| J W Moore | 1276 | 10 | 233-83835 | 100.00% | 75.00% |
| J W Moore | 1276 | 11 | 233-83836 | 100.00% | 75.00% |
| J W Moore | 1276 | 12 | 233-83837 | 100.00% | 75.00% |
| J W Moore | 1276 | 14 | 233-83839 | 100.00% | 75.00% |
| W L Watters | 43243 | 1 | 233-80656 | 91.67% | 68.06% |
| C R Garner "B" | 1271 | 4 | 233-83771 | 100.00% | 75.00% |
| C R Garner "B" | 1271 | 6 | 233-83773 | 100.00% | 75.00% |
| C R Garner "B" | 1271 | 7G | 233-83774 | 100.00% | 75.00% |
| C R Garner "B" | 1271 | 8 | 233-83775 | 100.00% | 75.00% |
| C R Garner "B" | 1271 | 11 | 233-83776 | 100.00% | 75.00% |
| C R Garner "B" | 1271 | 12 | 233-83777 | 100.00% | 75.00% |
| C R Garner "B" | 1271 | 13 | 233-83778 | 100.00% | 75.00% |
| E P Hackley | 42528 | 1 | 233-20100 | 68.43% | 52.13% |
| Sanford -M- | 886 | 1 | 233-81622 | 100.00% | 75.00% |
| Roy O Stevenson | 5899 | lA | 233-31948 | 93.50% | 67.25% |
| Roy O Stevenson | 5899 | 2A | 233-31949 | 93.50% | 67.25% |
| Roy O Stevenson | 5899 | 3A | 233-32126 | 93.50% | 67.25% |
| Killough | 3797 | 1 | 233-85495 | 100.00% | 75.00% |
| Killough | 3797 | 2 | 233-85496 | 100.00% | 75.00% |
| Killough | 3797 | 3 | 233-85497 | 100.00% | 75.00% |
| Killough | 3797 | 4 | 233-85498 | 100.00% | 75.00% |
| Killough | 3797 | 5W | 233-30230 | 100.00% | 75.00% |

**END OF EXHIBIT 1**

- 11 -

EXHIBIT E

## **WIRING INSTRUCTIONS**

Bank:                    Signature Bank, NY
                         261 Madison Ave.
                         New York, NY 10036
SWIFT CODE:              SIGNUS33
ABA #:                   026013576

Account:                 Ponderosa Energy LLC
                         745 Fifth Ave.
                         New York, NY 10151

Account #:               1502705896

EXHIBIT F

**AD VALOREM TAXES OWED**

PART 1 – PONDEROSA PROPERTIES

| Lease | County Assessing Tax | Amount Owed if Paid by March 31, 2018 | Amount Owed if Paid by April 30, 2018 |
|---|---|---|---|
| Archer B 7G | Gray | $69.19 | $70.46 |
| Archer B&C | Gray | $697.19 | $709.98 |
| Archer C 2G | Gray | $69.19 | $70.46 |
| Blade Sanford | | $0 | $0 |
| Chapman | Gray | $136.16 | $138.66 |
| Chapp 3 & Chapp 4 | Hutchinson | $579.59 | $590.22 |
| Continetal Sanford | Hutchinson | $272.26 | $277.26 |
| CS Barrett | Gray | $321.11 | $326.89 |
| Davis 1R | Hutchinson | $32.01 | $32.60 |
| Dee O Gee 1 | Hutchinson | $0 | $0 |
| Dee O Gee 2 | Hutchinson | $286.94 | $292.21 |
| E Herring | Hutchinson | $421.88 | $429.60 |
| Foxx | Gray | $1,982.05 | $2,018.41 |
| Hagy 1 | | $0 | $0 |
| Herring | Hutchinson | $676.51 | $688.92 |
| Herring 4 | Hutchinson | $459.90 | $468.34 |
| Johnson 1 | Hutchinson | $79.66 | $81.12 |
| Johnson 1R | Hutchinson | $3,988.91 | $4,062.10 |
| Johnson 2 | Hutchinson | $73.62 | $74.97 |
| Johnson A | Hutchinson | $331.47 | $337.55 |
| Johnson A | Hutchinson | $104.75 | $106.67 |
| Johnson AC | | $0 | $0 |
| Johnson D | Hutchinson | $555.78 | $565.98 |
| Johnson F1 | Hutchinson | $68.95 | $70.22 |
| Johnson G | Hutchinson | $825.70 | $840.85 |
| Johnson Y1 | Gray | $65.48 | $66.68 |
| Johnson Y1 | Gray | $68.26 | $69.51 |
| Kirby | Carson | $107.48 | $109.46 |
| Kyle | Hutchinson | $169.41 | $172.52 |
| Kyle 3 | Hutchinson | $75.64 | $77.02 |
| Lil Randi | Hutchinson | $63.79 | $64.96 |
| National | Gray | $544.85 | $554.84 |
| PA Worley | Gray | $166.20 | $169.25 |
| Payne Herring | Hutchinson | $555.64 | $565.83 |

| Lease | County Assessing Tax | Amount Owed if Paid by March 31, 2018 | Amount Owed if Paid by April 30, 2018 |
|---|---|---|---|
| Payne Herring (Mo Tex) | Hutchinson | $106.70 | $108.64 |
| Pruett B | Hutchinson | $393.02 | $400.23 |
| RC Ware | Hutchinson | $819.42 | $834.45 |
| Sallie Pritchard | Hutchinson | $404.50 | $411.92 |
| Sanford 3 | Hutchinson | $302.52 | $308.07 |
| Sanford 3 | Hutchinson | $68.95 | $70.22 |
| Sanford A15 | Hutchinson | $613.10 | $624.35 |
| Sanford C5 | Hutchinson | $241.25 | $245.68 |
| Sanford D2 | Hutchinson | $90.75 | $92.42 |
| Sanford E2 | Hutchinson | $0 | $0 |
| Sanford M2 | Hutchinson | $456.80 | $465.18 |
| Whittenburg 5 | Hutchinson | $614.26 | $625.53 |
| Worley | Gray | $835.11 | $850.44 |
| Worley Reynolds | Gray | $275.02 | $280.06 |
| **TOTAL Ponderosa** | | **$19,070.97** | **$19,420.73** |

## PART 2 – GS ENERGY PROPERTIES

| Lease | County Assessing Tax | Amount Owed if Paid by March 31, 2018 | Amount Owed if Paid by April 30, 2018 |
|---|---|---|---|
| Bobbitt | Carson | $107.48 | $109.46 |
| Bryan | Carson | $161.29 | $164.25 |
| Burnett -A- | Carson | $2,794.11 | $2,845.37 |
| Burnett -B- | Carson | $308.23 | $313.89 |
| Burnett Estate | Carson | $619.00 | $619.00 |
| C R Garner "B" | Hutchinson | $388.45 | $395.58 |
| Cooper | Moore | $144.72 | $144.72 |
| E P Hackley | | $0 | $0 |
| Ida Block | Carson | $268.90 | $273.84 |
| J W Moore | Hutchinson | $279.68 | $284.81 |
| J W Moore | Hutchinson | $341.85 | $348.12 |
| Jimmy II | Hutchinson | $147.23 | $149.93 |
| Killough | Hutchinson | $390.82 | $397.99 |
| Lasater | Hutchinson | $537.32 | $547.17 |
| Nellie Loeber | Hutchinson | $200.00 | $203.67 |
| Nellie Loeber | Moore | $675.00 | $675.00 |
| Otis Phillips | Hutchinson | $313.53 | $319.28 |

| Lease | County Assessing Tax | Amount Owed if Paid by March 31, 2018 | Amount Owed if Paid by April 30, 2018 |
|---|---|---|---|
| Otis Phillips | Hansford | $665.56 | $677.78 |
| Pickens | Carson | $101.95 | $103.82 |
| Roy O Stevenson | Hutchinson | $83.64 | $85.17 |
| Roy O Stevenson | Hansford | $177.54 | $180.80 |
| Sanford -M- | Hutchinson | $73.62 | $74.97 |
| Southbend | Hutchinson | $24.46 | $24.91 |
| W L Watters | Hutchinson | $20.93 | $21.31 |
| Ware | Hutchinson | $155.38 | $158.23 |
| Ware -A- | Carson | $840.79 | $856.22 |
| Ware -B- | Hutchinson | $0 | $0 |
| Watkins -A- | Hutchinson | $414.56 | $422.17 |
| Witherbee | Moore | $1,631.79 | $1,631.79 |
| Ware A (Stinn-Tex) | Hutchinson | $1,067.87 | $1,087.12 |
| Ware B (Stinn-Tex) | Carson | $653.92 | $665.70 |
| **TOTAL GS Energy** | | **$13,589.62** | **$13,782.07** |

## PART 3 – PRE-PETITION PROPERTY TAXES

| Name of Creditor | Point of Contact | Phone | Email | Amount |
|---|---|---|---|---|
| Hutchinson County Tax Office | Blake Newton | 806-359-3188 | bnewton@pbfcm.com | $33,508.62 |
| Gray County Tax Office | Blake Newton | 806-359-3188 | bnewton@pbfcm.com | $7,311.98 |
| Carson County (other) | | | | $2,445.20 |
| **TOTAL** | | | | **$43,265.80** |

## SUMMARY

| | |
|---|---|
| Ponderosa Energy | **$19,420.73** |
| GS Energy | **$13,782.07** |
| Other | **$43,265.80** |
| **TOTAL** | **$76,468.60** |

EXHIBIT G

**ORDER**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------  x
In re:

      PONDEROSA ENERGY, LLC and
      GS ENERGY, LLC

                          Debtors.
------------------------------------------------------------  x

Chapter 11
Case No. 17-13484-SHL
(Jointly Administered)

**ORDER AUTHORIZING AND APPROVING SETTLEMENT
AND SALE AGREEMENT BY AND AMONG THE DEBTORS AND CERTAIN
SECURED CREDITORS PURSUANT TO SECTION 105 OF THE BANKRUPTCY
CODE AND BANKRUPTCY RULES 2002 AND 9019; AND AUTHORIZING AND
APPROVING PRIVATE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS'
ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND INTERESTS UNDER
SUCH SETTLEMENT AND PURSUANT TO SECTIONS 105 AND 363 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULES 2002 AND 6004**

Upon the motion dated March __, 2018 [ECF No. __] (the "Motion") of Ponderosa

Energy, LLC and GS Energy, LLC, as debtors and debtors in possession (together, the

"Debtors") seeking entry of an order authorizing and approving (i) the Settlement and Sale

Agreement by and among the Debtors and certain secured creditors, attached as **Exhibit 1** hereto

(the "Agreement"), and (ii) the private sale of substantially all of the Debtors' assets free and

clear of all liens, claims, and interests under such Agreement, pursuant to Sections 105 and 363

of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 9019; and the Court having

conducted a hearing (the "Hearing") on _____ __, 2018, and having determined at the

Hearing that (a) entry into the Agreement constitutes the exercise by the Debtors of sound

business judgment, and is in the best interests of the Debtors, their estates and creditors, and all

parties in interest, and (b) the consideration provided by Petroleum Production Finance, Inc.,

PPF 2 LLC, and PPF 3 LLC (the "PPF Parties") and their assigns, including Borger Resources 2 LLC, a Missouri limited liability company, and Borger Resources 3 LLC, a Missouri limited liability company (the "PPF Transferees"), pursuant to the Agreement is fair and adequate and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative; and all parties in interest having been heard or having had the opportunity to be heard regarding the sale (the "Sale") of the properties listed in Exhibit A to the Agreement (the "Properties") to the PPF Transferees; and the Court having reviewed and considered the Motion, the materials submitted by the Debtors in support of the Motion, the Agreement, and the arguments of counsel made and the evidence adduced at the Hearing; and upon the record of the Hearing and this chapter 11 case (the "Case"), and after due deliberation thereon, and good cause appearing therefor:

IT IS HEREBY FOUND AND DETERMINED THAT:[27]

A.       The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. § 157 and 1334(b). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

B.       Venue of this Chapter 11 Case and the Motion in this district is proper under 28 U.S.C. § 1408.

C.       The statutory and legal predicates for the relief requested in the Motion are §§ 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), and Rules 2002, 6004, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[27]       Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  *See* Fed. R. Bankr. P. 7052.

D.       Notice of the Motion and the Hearing has been provided to: (i) the Office of the United States Trustee for the Southern District of New York; (ii) counsel to the PPF Parties; (iii) the Internal Revenue Service; (iv) all state and local taxing authorities and recording offices which have a reasonably known interest in the relief requested; (v) all creditors and other parties set forth on the Debtors' Schedules and Creditor Matrix maintained in this case; and (vi) all other parties required to receive notice of this Motion pursuant to Bankruptcy Rule 2002.

E.       The notice given by the Debtors of the Motion, the Agreement, the Hearing, and the Sale constitutes good and sufficient notice of the relief granted by this Order and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 6004(a).

F.       Entry into the Agreement constitutes the exercise by the Debtors of sound business judgment, and is in the best interests of the Debtors, their estate and creditors, and all parties in interest.  The Debtors have articulated good and sufficient business reasons justifying entry into the Agreement with the PPF Parties.  The consideration provided by the PPF Transferees pursuant to the Agreement (i) is fair and adequate, (ii) will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative, and (iii) constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and § 548 of the Bankruptcy Code) under the Bankruptcy Code and under applicable law. Additionally, the Agreement is a reasonable compromise and resolution of all of the disputes between the Debtors and the PPF Parties and of the PPF Parties' claims against the Debtors, the Properties, and the Debtors' estates.

G.       The settlement among the Debtors, the PPF Parties, Richard Sands, and Casimir

Capital L.P. embodied in the Agreement and described in the Motion is fair and equitable and is

in the best interests of the Debtors and their estates, because it will allow for the Debtors to

expeditiously maximize the value of their assets, fully and finally resolve all litigation and other

disputes among the parties related to the Case, provide for transfer of the Properties to the PPF

Parties, which is a reasonable compromise of the PPF Parties' potential claims against the

Debtors' estates, and potentially provide a means for payment of administrative and other claims

that would otherwise be unavailable to the estates. The Agreement is, therefore, well above the

lowest point in the range of reasonableness required under Bankruptcy Rule 9019.

H.       The Debtors and the PPF Transferees negotiated, proposed, and entered into the

Agreement without collusion, in good faith, and from arm's-length bargaining positions. In

accordance with Bankruptcy Rule 9019, and the Court having considered the relevant factors

thereunder and whether the settlement falls within a range of reasonableness, including (1) the

balance between the Litigation's possibility of success and the settlement's future benefits; (2)

the likelihood of complex and protracted litigation, with its attendant expense, inconvenience,

and delay, including the difficulty in collecting on the judgment; (3) the paramount interests of

the creditors, including each affected class's relative benefits and the degree to which creditors

either do not object to or affirmatively support the proposed settlement; (4) whether other parties

in interest support the settlement; (5) the competency and experience of counsel supporting, and

the experience and knowledge of the bankruptcy court judge reviewing, the settlement; (6) the

nature and breadth of releases to be obtained by officers and directors; and (7) the extent to

which the settlement is the product of arm's length bargaining, the Court finds the settlement

reasonable, fair, reached by each party in good faith and as a product of arm's length bargaining,

in the interests of the estates and all parties, and should be approved as set forth in the Agreement.

I.      The PPF Transferees are not "insiders" or "affiliates" of the Debtors as those terms are defined in §§ 101(31) and 101(2) of the Bankruptcy Code.

J.      Neither the Debtors nor the PPF Transferees have engaged in any conduct that would cause or permit the Agreement to be avoided under § 363(n) of the Bankruptcy Code. As alleged in more detail in the Agreement, the parties have filed lawsuits against other in state court in Texas and in an adversary proceeding in this Court, and have denied each other's claims and asserted counterclaims and defenses. The PPF Transferees have proceeded in good faith in all respects in that: (i) the Agreement was negotiated and entered into in good faith, based upon arm's length negotiations between them and the Debtors, and without collusion; (ii) the PPF Transferees have not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (iii) the negotiation and execution of the Agreement and any other agreements or instruments related thereto were in good faith. The PPF Transferees are buyers in good faith, as that term is used in the Bankruptcy Code, and are entitled to the protections of Bankruptcy Code sections 363(m) and 363(n) with respect to the Properties.

K.      The PPF Transferees have not violated Section 363(n) of the Bankruptcy Code by any action or inaction or engaged in any conduct that would cause or permit the Agreement or the Sale to be avoided pursuant thereto. Specifically, the PPF Transferees have not acted in a collusive manner with any person and the consideration was not controlled by any agreement among bidders.

L.      The Debtors have demonstrated compelling circumstances for the Sale outside: (i) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code; and (ii) a

plan of reorganization or liquidation, pursuant to section 1129 of the Bankruptcy Code, in that, among other things, the immediate consummation of the Sale to the PPF Transferees is necessary and appropriate to realize the value of the Debtors' estates and the Sale and the Agreement related thereto will provide the only means for the Debtors to maximize distributions to the Debtors' creditors. Time is of the essence in consummating the Sale and the Agreement.

M.      The PPF Transferees are not mere continuations of the Debtors or their estates, and there is no continuity of enterprise between the PPF Transferees and the Debtors.  The PPF Transferees are not successors to the Debtors or their estates and the Sale does not amount to a consolidation, merger, or de facto merger of the PPF Transferees and the Debtors.  The PPF Transferees will not have any successor or transferee liability for liabilities of the Debtors or any affiliate of the Debtors or any other settling party (whether under federal or state law or otherwise) as a result of the sale of the Properties.

N.      The consummation of the Sale of the Properties to the PPF Transferees is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale.  In particular, the Debtors may sell the Properties free and clear of all liens, claims, or encumbrances of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code have been satisfied.  Any party with an interest in the Properties who did not object, or who withdrew its objection, to the Sale is deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Any party with a lien, claim, or other interest in the Properties who did object falls within one or more of the other subsections of section 363(f) of the Bankruptcy Code and is adequately protected by having its lien, claim, or

other interest, if any, attach to the net cash proceeds of the Sale ultimately attributable to the respective Property against or in which such liens or other interests are asserted with the same validity, enforceability, priority, and force and effect as they had against the Property or its proceeds as of the Petition Date.

O.     Pursuant to sections 105(a) and 363 of the Bankruptcy Code and effective as of the closing of the sale and/or assignment of the Properties to the PPF Transferees (the "Closing"), all Persons (as defined in section 101(41) of the Bankruptcy Code) are hereby enjoined from taking any action against the PPF Transferees or their affiliates (as they exist immediately prior to Closing) to recover or enforce any interests that such Person(s) may have against the Properties.

P.     Pursuant to section 363(m) of the Bankruptcy Code, the reversal or modification of this Order on appeal shall not affect the validity or the transfer of the Properties to the PPF Transferees, unless the same is stayed pending appeal prior to the Closing and consummation of the Sale of the Properties as authorized by this Order.

Q.     The Sale does not constitute a *sub rosa* chapter 11 plan. The Sale neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates a liquidating plan of reorganization for the Debtors.

R.     The PPF Parties allege that the Sale does not involve any executory contracts because the oil and gas leases, assignments and volumetric production payments are all real property interests under Texas law. To the extent the mineral interests transferred pursuant to the Sale are deemed executory contracts, they are expressly assumed by and assigned to the PPF Parties.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.    Any objections to the Motion, as they pertain to the entry of this Order, are overruled to the extent they have not been withdrawn, waived or otherwise resolved.

2.    The Debtors are hereby authorized to take any and all actions necessary to consummate the transactions contemplated by the Agreement (including any ancillary documents), a copy of which is attached hereto as **Exhibit 1**, and this Order.

3.    Closing of the Sale shall take place, pursuant to the Agreement, immediately after the expiration of the fourteen day appeal period following entry of this Order.  Upon Closing, in full and final settlement, satisfaction and discharge of any and all claims of the Debtors against the PPF Parties related to the VPP Transactions or the Properties, the PPF Parties shall pay FOUR HUNDRED SEVENTY-FIVE THOUSAND and 00/100 DOLLARS ($ 475,000.00) (the "Settlement Payment") directly to the Debtors, in cash, by wire transfer of immediately available funds on the date of the Closing, as set forth in the Agreement.  If, for any reason, the PPF Parties fail to pay the Settlement Payment to the Debtors upon the Closing of the Settlement, then the releases provided by GS Energy, LLC; Ponderosa Energy, LLC; Richard F. Sands; and Casimir Capital L.P. (the "Ponderosa Parties") in the Agreement shall be null and void and shall be of no force and effect.

4.    Immediately upon expiration of the fourteen day appeal period following entry of this Order, the Debtors and the PPF Parties shall promptly take any and all action necessary to dismiss the lawsuit in the 160th Judicial District Court of Dallas County, Texas, Cause No. DC-17-04608 ("Dallas Lawsuit"), the lawsuit in the 84th Judicial District Court of Hutchinson County, Texas, Cause No. 42908 ("Hutchinson Lawsuit"), and the adversary proceeding in this Court, Adversary No. 17-01239-SHL (the "Adversary Proceeding") (collectively, the "Litigation"), with prejudice.

5.      The terms of this Order shall be binding on and inure to the benefit of the Debtors, the PPF Transferees, all creditors and all other parties-in-interest, and any assigns or successors of such parties.

6.      Notwithstanding any provision in the Bankruptcy Rules to the contrary, the terms of this Order shall be immediately effective and enforceable upon its entry and not subject to any stay, notwithstanding the possible applicability of Bankruptcy Rules 6004(h) or otherwise.

7.      To the extent that this Order is inconsistent with the Agreement, the terms of this Order shall govern.

8.      The failure to include specifically any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

9.      As and when requested by any party, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments, and shall take, or cause to be taken, all such further and other actions as such other party may reasonably deem necessary or desirable to consummate the Sale and the Agreement.

10.     The Ponderosa Parties and the PPF Parties are each hereby authorized and directed to perform in accordance with the terms of the Agreement.

11.     Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtors are authorized and directed to sell and transfer all of the Debtors' right, title and interest in and to the Properties to the PPF Transferees in accordance with the Agreement (including any ancillary documents), and such sale and transfer shall (a) constitute a legal, valid, binding, and effective transfers of the Properties, (b) upon the Debtors' receipt of the respective purchase prices, vest the PPF Transferees with all right, title, and interest of the Debtors to the Properties,

free and clear of all liens, claims, and other interests in and on the Properties pursuant to § 363(f)

of the Bankruptcy Code, and (c) constitute transfers for reasonably equivalent value and fair

consideration under the Bankruptcy Code and the laws of the state(s) in which PPF Transferees

are incorporated and any other applicable non-bankruptcy laws.

12.    Except as otherwise provided in the Agreement, all persons holding liens or

claims of any kind or nature whatsoever against the Debtors or the Properties shall be and hereby

forever are barred, estopped, and permanently enjoined from asserting, prosecuting,

commencing, continuing, or otherwise pursuing in any manner any action, claim, or other

proceeding of any kind, directly or indirectly, against the PPF Transferees, any affiliates of the

PPF Transferees (as they existed immediately prior to the Closing of the Sale) or the Properties,

including any action, claim, or other proceeding seeking to prevent or interfere with the

consummation of the Sale, with the retrieval by the PPF Transferees or the delivery to the PPF

Transferees of possession of the Properties by the PPF Transferees.  Following the applicable

Closing dates, no holder of a lien, claim or other interest in or against the Debtors or the

Properties shall interfere with the PPF Transferees' title to or use and enjoyment of the

Properties based on or related to such lien, claim, or other interest.

13.    Pursuant to sections 105(a) and 363 of the Bankruptcy Code and effective as of

the Closing of the Sale and/or assignment of the Properties to the PPF Transferees, all Persons

(as defined in section 101(41) of the Bankruptcy Code) are hereby enjoined from taking any

action against the PPF Transferees or their affiliates (as they exist immediately prior to Closing)

to recover or enforce any interests that such Person(s) may have against the Properties.

14.    Pursuant to section 363(m) of the Bankruptcy Code, the reversal or modification

of this Order on appeal shall not affect the validity or the transfer of the Properties to the PPF

Transferees, unless the same is stayed pending appeal prior to the Closing and consummation of the Sale of the Properties as authorized by this Order.

15.     Obligations of the Debtors relating to taxes, whether arising under law, by the Agreement, or otherwise, shall be fulfilled by the party responsible for such obligations under the Agreement.

16.     The PPF Transferees shall not have any successor or transferee liability for liabilities of the Debtors or any affiliate of the Debtors (whether under law or otherwise) as a result of the sale of the Properties.

17.     <u>Sale Free and Clear</u>.  The sale of the Properties shall be free and clear of all liens, claims, encumbrances and other interests, with all such liens, claims, encumbrances or other interests in or on the Properties to attach to the net cash proceeds of the Sale ultimately attributable to the Property against or in which such liens or other interests are asserted, subject to the terms of such liens or other interests, with the same validity, enforceability, priority, and force and effect as they had against the Property or its proceeds as of the Petition Date, subject to any rights, claims and defenses any parties-in-interest may possess with respect thereto.

18.     No broker or party has a claim to any commission, broker's fee, finder's fee, or similar fee as a result of having negotiated the Agreement for, or on behalf of, the Debtors or the PPF Transferees.

19.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder of any state, county, or local authority to act to cancel any of the liens or claims of record.

20.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding any provision in the Bankruptcy Code or the Bankruptcy Rules to the contrary,

the Court expressly finds there is no reason for delay in the implementation of this Order and, accordingly: (i) the terms of this Order shall be immediately effective and enforceable upon its entry; (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

21.      The provisions of this Order are non-severable and mutually dependent.

22.      Third parties, including recording and title agencies, shall recognize the transfers pursuant to this Order and shall not interfere with the transactions set forth herein.

23.      The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order, the Agreement, all amendments thereto, and any waivers and consents thereunder, and each ancillary document executed in connection therewith to which the Debtors are a party, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Properties to the PPF Transferees, (b) interpret, implement, and enforce the provisions of this Order, and (c) protect the PPF Transferees against any liens or claims in or against the Debtors or the Properties of any kind or nature whatsoever; *provided, however*, that in the event the Court abstains from exercising or declines to exercise jurisdiction or is without jurisdiction, such abstention, refusal or lack of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

24.      In accordance with Bankruptcy Rule 9019, and the Court having considered the relevant factors thereunder, the Agreement and the terms and conditions set forth therein and in

this Order are reasonable, fair, in the interests of the estates and all parties, and fall within the range of reasonableness, and hereby are approved.

Dated: _____, 2018

_____
UNITED STATES BANKRUPTCY JUDGE

EXHIBIT H

## AGREED MOTIONS TO DISMISS

**Exhibit H-1**
**Motion to Dismiss Dallas Lawsuit**

**CAUSE NO. DC-17-04608**

| | | |
|---|---|---|
| **PETROLEUM PRODUCTION FINANCE, INC., PPF 2 LLC AND PPF 3 LLC,** | § § § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | **160TH JUDICIAL DISTRICT** |
| | § | |
| **GS ENERGY, LLC, PONDEROSA ENERGY, LLC, RICHARD SANDS AND CASIMIR CAPITAL L.P.,** | § § § | |
| | § | |
| **Defendants.** | § | **OF DALLAS COUNTY, TEXAS** |

## AGREED MOTION TO DISMISS WITH PREJUDICE

Plaintiffs Petroleum Production Finance, Inc., PPF 2 LLC and PPF 3 LLC, and Defendants GS Energy, LLC, Ponderosa Energy, LLC, Richard Sands, and Casimir Capital, L.P. (collectively, the "Parties") jointly request that this lawsuit be dismissed with prejudice.  The Parties have finalized a settlement agreement that resolves all matters in controversy in this case.

The Parties accordingly request that this Court enter the proposed Order of Dismissal tendered herewith.

Dated: _____, 2018                    Respectfully submitted,

                                             **JACKSON WALKER L.L.P.**

                                       By: _____
                                             Brian A. Kilpatrick
                                           Texas State Bar No. 00784392
                                           2323 Ross Ave., Ste. 600
                                           Dallas, Texas 201
                                           Telephone:    (214) 953-6000
                                           Facsimile:    (214) 953-5822
                                           Email: bkilpatrick@jw.com

                                           *Attorneys for Plaintiffs*

                                           -and-

                                           **MITCHELL & JONES**

                                       By: _____
                                             Leon Mitchell
                                           Texas State Bar No. _____
                                           P.O. Drawer 707
                                           Borger, TX 79008-0707
                                           Telephone:    (806) 273-2857
                                           Facsimile:    (806) 273-2157
                                           Email: sterlingmitchell807@gmail.com

                                           *Attorneys for Defendants*

CAUSE NO. DC-17-04608

| | | |
|---|---|---|
| **PETROLEUM PRODUCTION FINANCE, INC., PPF 2 LLC AND PPF 3 LLC,** | § § § § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § § | |
| v. | § § | **160TH JUDICIAL DISTRICT** |
| **GS ENERGY, LLC, PONDEROSA ENERGY, LLC, RICHARD SANDS AND CASIMIR CAPITAL L.P.,** | § § § § § | |
| **Defendants.** | § | **OF DALLAS COUNTY, TEXAS** |

## ORDER OF DISMISSAL

On this day, the Court considered the Agreed Motion to Dismiss (the "Motion") filed jointly by Plaintiffs Petroleum Production Finance, Inc., PPF 2 LLC and PPF 3 LLC, and Defendants GS Energy, LLC, Ponderosa Energy, LLC, Richard Sands, and Casimir Capital, L.P. (collectively, the "Parties"), in which those Parties announced to the Court that all matters in controversy in this case have been settled and fully compromised.

Upon consideration of the Motion, the Court is of the opinion that the Motion should be **GRANTED**. Accordingly, it is therefore:

**ORDERED** that all claims, counterclaims, demands, or causes of action that have been asserted herein by the above-referenced Parties are hereby **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that all fees, costs, and expenses shall be paid by the

Party incurring them.

**SO ORDERED.**

**SIGNED** this ___day of _____, 2018.


_____

JUDGE PRESIDING

**Exhibit H-2**

**Motion to Dismiss Hutchinson Lawsuit**

**CAUSE NO. 42908**

| | | |
|---|---|---|
| **GS ENERGY, LLC AND PONDEROSA ENERGY, LLC,** | § § § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § § | |
| v. | § § | |
| | § | **84TH JUDICIAL DISTRICT** |
| **PETROLEUM PRODUCTION FINANCE, INC., PPF 2 LLC, PPF 3 LLC, AND JOHN HOLDEN, SUBSTITUTE TRUSTEE,** | § § § § § | |
| | § | |
| **Defendants.** | § | **OF HUTCHINSON COUNTY, TEXAS** |

<u>**AGREED MOTION TO DISMISS WITH PREJUDICE**</u>

Plaintiffs GS Energy, LLC and Ponderosa Energy, LLC, and Defendants Petroleum Production Finance, Inc., PPF 2 LLC, PPF 3 LLC, and John Holden, Substitute Trustee (collectively, the "Parties") jointly request that this lawsuit be dismissed with prejudice. The Parties have finalized a settlement agreement that resolves all matters in controversy in this case.

The Parties accordingly request that this Court enter the proposed Order of Dismissal tendered herewith.

Dated: _____, 2018

Respectfully submitted,

**MITCHELL & JONES**

By: _____
    Leon Mitchell
    Texas State Bar No. _____
    P.O. Drawer 707
    Borger, TX 79008-0707
    Telephone:    (806) 273-2857

EXHIBIT H - SETTLEMENT AGREEMENT

Page 5 of 13

Facsimile:     (806) 273-2157
Email: sterlingmitchell807@gmail.com

*Attorneys for Plaintiffs*

-and-

**JACKSON WALKER L.L.P.**

By: _____
    Brian A. Kilpatrick
    Texas State Bar No. 00784392
    2323 Ross Ave., Ste. 600
    Dallas, Texas 201
    Telephone:     (214) 953-6000
    Facsimile:     (214) 953-5822
    Email: bkilpatrick@jw.com

*Attorneys for Defendants*

CAUSE NO. 42908

| | | |
|---|---|---|
| GS ENERGY, LLC AND PONDEROSA ENERGY, LLC, | § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § | |
| v. | § § | |
| | § | 84TH JUDICIAL DISTRICT |
| PETROLEUM PRODUCTION FINANCE, INC., PPF 2 LLC, PPF 3 LLC, AND JOHN HOLDEN, SUBSTITUTE TRUSTEE, | § § § § § | |
| Defendants. | § § | OF HUTCHINSON COUNTY, TEXAS |

## ORDER OF DISMISSAL

On this day, the Court considered the Agreed Motion to Dismiss (the "Motion") filed jointly by Plaintiffs GS Energy, LLC and Ponderosa Energy, LLC, and Defendants Petroleum Production Finance, Inc., PPF 2 LLC, PPF 3 LLC, and John Holden, Substitute Trustee (collectively, the "Parties"), in which those Parties announced to the Court that all matters in controversy in this case have been settled and fully compromised.

Upon consideration of the Motion, the Court is of the opinion that the Motion should be **GRANTED**. Accordingly, it is therefore:

**ORDERED** that all claims, counterclaims, demands, or causes of action that have been asserted herein by the above-referenced Parties are hereby **DISMISSED WITH PREJUDICE**;

EXHIBIT H - SETTLEMENT AGREEMENT                                        Page 7 of 13

**IT IS FURTHER ORDERED** that all fees, costs, and expenses shall be paid by the

Party incurring them.

**SO ORDERED.**

**SIGNED** this ___day of _____, 2018.


_____
JUDGE PRESIDING

**Exhibit H-3**

**Motion to Dismiss Adversary Proceeding**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

       PONDEROSA ENERGY, LLC and            Chapter 11
       GS ENERGY, LLC[28]                     Case No. 17-13484-SHL
                                          (Jointly Administered)

                            Debtors.
-------------------------------------------------------------x
GS ENERGY LLC, and
PONDEROSA ENERGY LLC,                   Adv. Pro. No. 17-01239-SHL

                            Plaintiffs,

     -v-

PPF 2 LLC, PPF 3 LLC, PETROLEUM
PRODUCTION FINANCE, INC., DAVIS
BROTHERS FINANCIAL GROUP, INC.,
DAVIS MARTIN, ROBERT TRESSLER,
PETER TRESSLER, JOHN LANE, JAMES
LANSHE, OPPENHEIMER RESOURCES
SICAV-SIF, SELECTRA MANAGEMENT
COMPANY, S.A.,
                           Defendants.
-------------------------------------------------------------x

## <u>AGREED MOTION TO DISMISS WITH PREJUDICE</u>

Plaintiffs GS Energy, LLC and Ponderosa Energy, LLC, and Defendants Petroleum

Production Finance, Inc., PPF 2 LLC, PPF 3 LLC, Davis Brothers Financial Group, Inc., Davis

Martin, Robert Tresslar, Peter Tresslar, John Lane, James Lanshe, Oppenheimer Resources

SICAV-SIF, Selectra Management Company, S.A., (collectively, the "Parties") jointly request

---

[28]     The last four digits of each Debtor's federal tax identification number are:  Ponderosa Energy, LLC (6262)
and GS Energy, LLC (3426).

that this lawsuit be dismissed with prejudice.  The Parties have finalized a settlement agreement that resolves all matters in controversy in this case.

The Parties accordingly request that this Court enter the proposed Order of Dismissal tendered herewith.

Dated: _____, 2018                    Respectfully submitted,

**DIAMOND McCARTHY LLP**

By: _____
    Allan B. Diamond
    489 Fifth Avenue, 21st Floor
    New York, NY 10017
    Tel: (212) 430-5400
    Fax: (212430-5499

    Christopher R. Murray, Esq.
    Charles M. Rubio, Esq.
    909 Fannin Street, 37th Floor
    Houston, Texas 77010
    Tel: (713) 333-5100
    Fax: (713) 333-5199

    *Attorneys for Plaintiffs*

    -and-

**ARCHER & GREINER, P.C.**

By: _____
    Allen G. Kadish
    Harrison H.D. Breakstone
    630 Third Avenue
    New York, New York 10017
    Telephone:    (212) 682-4940
    Facsimile:    (212) 682-4942
    Email: akadish@archerlaw.com
             hbreakstone@archerlaw.com

**JACKSON WALKER LLP**

    Michael S. Held
    Brian A. Kilpatrick

EXHIBIT H - SETTLEMENT AGREEMENT                    Page 10 of 13

2323 Ross Ave., Suite 600
Dallas, Texas 75201
Telephone:      (214) 953-6000
Facsimile:      (214) 953-5822
Email: mheld@jw.com
            bkilpatrick@jw.com

*Attorneys for Defendants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

      PONDEROSA ENERGY, LLC and          Chapter 11
      GS ENERGY, LLC[29]               Case No. 17-13484-SHL
                           (Jointly Administered)
                   Debtors.
-------------------------------------------------------------x
GS ENERGY LLC, and
PONDEROSA ENERGY LLC,            Adv. Pro. No. 17-01239-SHL

               Plaintiffs,

     -v-

PPF 2 LLC, PPF 3 LLC, PETROLEUM
PRODUCTION FINANCE, INC., DAVIS
BROTHERS FINANCIAL GROUP, INC.,
DAVIS MARTIN, ROBERT TRESSLER,
PETER TRESSLER, JOHN LANE, JAMES
LANSHE, OPPENHEIMER RESOURCES
SICAV-SIF, SELECTRA MANAGEMENT
COMPANY, S.A.,
               Defendants.
-------------------------------------------------------------x

## <u>ORDER OF DISMISSAL</u>

       On this day, the Court considered the Agreed Motion to Dismiss (the "Motion")

filed jointly by Plaintiffs GS Energy, LLC and Ponderosa Energy, LLC, and Defendants

Petroleum Production Finance, Inc., PPF 2 LLC, PPF 3 LLC, Davis Brothers Financial Group,

Inc., Davis Martin, Robert Tresslar, Peter Tresslar, John Lane, James Lanshe, Oppenheimer

Resources SICAV-SIF, Selectra Management Company, S.A., (collectively, the "Parties"), in

which those Parties announced to the Court that all matters in controversy in this case have been

settled and fully compromised.

---

[29]    The last four digits of each Debtor's federal tax identification number are:  Ponderosa Energy, LLC (6262)
and GS Energy, LLC (3426).

Upon consideration of the Motion, the Court is of the opinion that the Motion should be GRANTED. Accordingly, it is therefore:

ORDERED that all claims, counterclaims, demands, or causes of action that have been asserted herein by the above-referenced Parties are hereby DISMISSED WITH PREJUDICE;

IT IS FURTHER ORDERED that all fees, costs, and expenses shall be paid by the Party incurring them.

SO ORDERED.

New York, New York
Dated: _____, 2018


_____
UNITED STATES BANKRUPTCY JUDGE