DIAMOND McCARTHY LLP
Allan B. Diamond, Esq.
489 Fifth Avenue, 21st Floor
New York, NY 10017
Tel: (212) 430-5400
Fax: (212) 430-5499

Christopher R. Murray, Esq.
Charles M. Rubio, Esq.
909 Fannin Street, 37th Floor
Houston, Texas 77010
Tel: (713) 333-5100
Fax: (713) 333-5199

*Counsel for Ponderosa
Energy LLC and GS Energy LLC,
Debtors and Debtors-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- x

In re:

           PONDEROSA ENERGY, LLC and
           GS ENERGY, LLC

                             Debtors.

Chapter 11
Case No. 17-13484-SHL
(Jointly Administered)

--------------------------------------------------------- x

## DEBTORS' COMBINED DISCLOSURE
## STATEMENT AND PLAN OF LIQUIDATION

**PLEASE READ THIS COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION CAREFULLY.  THIS DOCUMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN OF LIQUIDATION WHICH IS ENCLOSED WITHIN THIS COMBINED DOCUMENT.  THE DEBTORS BELIEVE THAT ACCEPTANCE OF THE PLAN OF LIQUIDATION IS IN THE BEST INTEREST OF THE DEBTORS AND THEIR CREDITORS AND PROVIDES THE HIGHEST AND MOST EXPEDITIOUS RECOVERIES TO HOLDERS OF ALLOWED CLAIMS AGAINST THE DEBTORS.**

      Ponderosa Energy, LLC ("Ponderosa") and GS Energy, LLC ("GSE" and with Ponderosa, the "Debtors"), respectfully submit this combined joint disclosure statement and plan of liquidation (the "Plan and Disclosure Statement") pursuant to §§ 1125 and 1129 of Title 11 of the United States Code, as amended (the "Bankruptcy Code").

**I.**
**DESCRIPTION OF THE PLAN AND DISCLOSURE STATEMENT**

The purpose of this Plan and Disclosure Statement is to provide creditors and equity holders of the Debtors with adequate information to enable them to make an informed judgment concerning the method by which the Debtors plans to liquidate their estates. The Plan and Disclosure Statement contain the exclusive and final statement of the rights of the Debtors, their creditors, interest holders, and other interested parties, and sets forth what (if anything) each of those groups will receive and how they will receive it. It is strongly recommended that the Plan and Disclosure Statement be read in its entirety. If the Bankruptcy Court confirms this chapter 11 plan (the "Plan"), it will become binding on the Debtors, all creditors, equity holders, and other interested parties.

You are also urged to read the contents of the Plan and Disclosure Statement in order to determine what rights you may have to vote on or object to the method by which the Debtors plan to liquidate. Particular attention should be directed to the provisions of the Plan and Disclosure Statement affecting or impairing your rights as they existed before the filing of this case. Please note, however, that this document cannot tell you everything about your rights. For instance, this Plan and Disclosure Statement cannot and does not provide a complete description of the financial status of the Debtors, all of the applicable provisions of the Bankruptcy Code, or other matters that may be deemed significant by creditors and other parties-in-interest. You are also encouraged to consult with your lawyers and/or advisors as you review and consider the Plan and Disclosure Statement to enable you to obtain more specific advice on how the Debtors' proposed actions will affect you.

Creditors whose claims are impaired have the right to vote to accept or reject the Plan. Generally speaking, a claim or interest is impaired if the legal, contractual or equitable rights of the holder of the claim or interest is altered by the Plan. A class of creditors accepts the Plan when creditors holding two-thirds in amount of such class and more than one-half in number of the claims in such class who actually cast their ballots votes to accept the Plan.

In this case, the Plan contains three (3) classes of claims and one (1) class of interests. The Plan impairs holders of Claims in Class 2 and Class 3 and Interests in Class 4. Class 4 Interests receive no distribution under the Plan and are, thus, deemed to reject the Plan. Accordingly, votes on the Plan will be solicited from Class 2 and Class 3 only.

The Plan proposes to release creditors' claims against certain non-Debtor parties, including Casimir Resource Advisors LLC and Richard F. Sands. In order for these releases to be approved, the Debtors must solicit creditors' affirmative consent to the releases.

**IN THE OPINION OF THE DEBTORS, THE TREATMENT OF CREDITORS AND INTEREST HOLDERS UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY THAN IS LIKELY TO BE ACHIEVED UNDER ANY OTHER ALTERNATIVE FOR THE LIQUIDATION OF THE DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OR UNDER CHAPTER 7 OF THE BANKRUPTCY**

**CODE. ACCORDINGLY, THE DEBTORS SUBMIT THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR'S CREDITORS AND INTEREST HOLDERS AND RECOMMEND THAT ALL HOLDERS OF CLAIMS VOTE TO ACCEPT THE PLAN.**

The following materials are included with this Plan and Disclosure Statement:

1. A copy of an order (the "Disclosure Statement Order") that establishes: (a) the date by which objections to confirmation of the Plan and Disclosure Statement must be served and filed, (b) the date by which all votes with respect to the Plan must be cast, (c) the date of the hearing in the Bankruptcy Court to consider confirmation of the Plan, and (d) other relevant information; and

2. A Ballot for holders of Claims to vote with respect to the Plan.

The adequacy of the disclosures in this Plan and Disclosure Statement was approved by the Bankruptcy Court by the Disclosure Statement Order on June [●], 2018 after notice and hearing pursuant to § 1125 of the Bankruptcy Code. The Bankruptcy Court found that the information contained herein is of the kind, and is sufficiently detailed, to enable a hypothetical, reasonable investor typical of the class being solicited to make an informed judgment concerning the Plan. **HOWEVER, THE BANKRUPTCY COURT HAS NOT APPROVED THE PLAN AND DISCLOSURE STATEMENT, NOR IS THIS DOCUMENT OR THE DISCLOSURE STATEMENT ORDER TO BE CONSTRUED AS AN ENDORSEMENT OF THE PLAN AND DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT.**

As stated in the Disclosure Statement Order, the Bankruptcy Court has scheduled a hearing to consider Confirmation of the Plan and Disclosure Statement for July [●], 2018 at [●]. Holders of claims and interests, as well as other parties in interest, may attend this hearing. Objections to confirmation of the Plan, if any, must be in writing and filed with the Bankruptcy Court and served, so as to be received no later than July [●], 2018 at 4:00 p.m. (ET), upon the following:

> Diamond McCarthy LLP
> Counsel to Ponderosa Energy, LLC and GS Energy, LLC
> 909 Fannin, Suite 3700
> Houston, Texas  77010
> Attn:    Charles M. Rubio
>               Christopher R. Murray
>               Rebecca A. Muff

All Ballots must be completed in full and signed to be counted in the tabulation of the votes and must be received no later than July [●], 2018 at 4:00 p.m. (ET) by:

> Diamond McCarthy LLP
> Counsel to Ponderosa Energy, LLC and GS Energy, LLC
> 909 Fannin, Suite 3700
> Houston, Texas  77010

Attn:    Charles M. Rubio
         Christopher R. Murray
         Rebecca A. Muff

This document contains a description of the assets, liabilities and affairs of the Debtors, a description and analysis of the plan by which the Debtors intend to liquidate, and an analysis of alternatives to the Plan.

### A. Representations/Limitations

**NO PERSON IS AUTHORIZED BY THE DEBTORS IN CONNECTION WITH THE PLAN AND DISCLOSURE STATEMENT OR THE SOLICITATION OF VOTES THEREON TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION OTHER THAN AS CONTAINED IN THIS DOCUMENT AND THE EXHIBITS ANNEXED HERETO OR INCORPORATED HEREIN BY REFERENCE OR REFERRED TO HEREIN, AND IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MAY NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE DEBTOR.**

**THE INFORMATION CONTAINED HEREIN HAS BEEN PREPARED BY THE DEBTORS IN GOOD FAITH, BASED UPON UNAUDITED INFORMATION AVAILABLE TO THE DEBTORS AS OF THE DATE HEREOF. ALTHOUGH THE DEBTORS HAVE USED BEST EFFORTS TO ENSURE THAT SUCH INFORMATION IS ACCURATE, THE INFORMATION CONTAINED HEREIN IS UNAUDITED. THE DEBTORS BELIEVE THAT THIS PLAN AND DISCLOSURE STATEMENT COMPLIES WITH THE REQUIREMENTS OF THE BANKRUPTCY CODE.**

**THE STATEMENTS CONTAINED IN THIS PLAN AND DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND DELIVERY OF THIS PLAN AND DISCLOSURE STATEMENT SHALL NOT CREATE ANY IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE OF THIS DOCUMENT AND THE DATE THE MATERIALS RELIED UPON IN PREPARATION OF THIS PLAN AND DISCLOSURE STATEMENT WERE COMPILED.**

**THIS DOCUMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN, AND NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE ADVICE ON THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS AGAINST OR AN INTEREST IN THE DEBTORS.**

**FAILURE BY A CREDITOR OR INTEREST HOLDER TO TIMELY CAST A BALLOT OR FILE AN OBJECTION TO CONFIRMATION OF THE PLAN IN ACCORDANCE WITH THE DISCLOSURE STATEMENT ORDER AND THE BANKRUPTCY CODE**

**SHALL CONSTITUTE AN AGREEMENT BY SILENCE TO ACCEPT THE TERMS CONTAINED IN THE PLAN AND DISCLOSURE STATEMENT.**

**THIS PLAN PROVIDES FOR INJUNCTIVE RELIEF AS TO THE DEBTORS. THE PERMANENT INJUNCTIONS SET FORTH IN THE PLAN WILL APPLY TO HOLDERS OF ANY CLAIM, INTEREST, LIEN, ENCUMBRANCE OR DEBT, WHETHER SECURED OR UNSECURED, GRANTED PRIORITY STATUS, INCLUDING PRIORITY TAX (FEDERAL OR STATE), NON-PRIORITY UNSECURED CLAIM OR ANY INTEREST IN THE DEBTORS. CREDITORS AND INTEREST HOLDERS WILL BE BOUND BY THIS INJUNCTIVE PROVISION UNLESS CREDITORS TIMELY FILE OBJECTIONS IN ACCORDANCE WITH THE PROVISIONS SET FORTH IN THE DISCLOSURE STATEMENT ORDER OR HEREIN AND APPEAR AT THE CONFIRMATION HEARING, TO PROSECUTE ANY OBJECTION.**

**THE DEBTORS URGE ALL HOLDERS OF CLAIMS TO ACCEPT THE PLAN.**

### B. Definitions

Though certain terms are defined throughout the Plan and Disclosure Statement itself, the following defined terms have the meanings ascribed to them below:

"*Administrative Claims*" means Claims for costs and expenses of administration under §§ 503(b) (including claims under sections 503(b)(3)(F) and 503(b)(9)), 507(b) or 1114(e)(2) of the Bankruptcy Code), including, without limitation: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtors' estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises) and (ii) all fees and charges assessed against the Debtors' estates under chapter 123 of title 28 of the U.S. Code, 28 U.S.C. §§ 1911–1930).

"*Allowed*" means, with respect to any Claim or Interest, except as otherwise provided herein: (i) a Claim or Interest that has been scheduled by the Debtors in their Schedules as other than disputed, contingent or unliquidated; (ii) a Claim or Interest that either is not Disputed or has been allowed by a Final Order; (iii) a Claim or Interest that is allowed: (a) in any stipulation of amount and nature of such Claim or Interest executed prior to the entry of the Confirmation Order and approved by the Bankruptcy Court; or (b) in or pursuant to any contract, instrument or other agreement entered into or assumed in connection herewith; (iv) a Claim or Interest that is allowed pursuant to the terms of this Plan; or (v) a Disputed Claim as to which a proof of claim has been timely filed and as to which no objection has been filed by the Claims Objection Bar Date. Any claim that has been or is hereafter listed in the Schedule as contingent, unliquidated, or disputed, and for which no proof of claim is or has been timely filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any entity subject to § 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such entity pays in full the amount that it owes the Debtors. For the avoidance of doubt, a proof of claim filed after the General Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim. "Allow" and "Allowing" shall have correlative meanings.

"**_Available Cash_**" means the amount of the Debtors' cash on hand.

"**_Bankruptcy Code_**" means sections 101, et seq. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code, as amended from time to time and as applicable to the Chapter 11 Cases.

"**_Bankruptcy Court_**" means the United States Bankruptcy Court for the Southern District of New York.

"**_Causes of Action_**" means any and all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, defenses, counterclaims and cross claims that are or may be pending or on or have accrued prior to the Effective Date against any person or entity, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Confirmation Date.

"**_Chapman Properties_**" means the following: (i) that certain lease in Grey County, Texas identified as follows: Lessor: Alexander J. Chapman, et ux; Lessee: Roxanna Petroleum Corp.; WI%: 100.00%; NRI: 87.50%; Recording Information: Vol. 26, Pg. 328; Wells: 26-27; and (ii) and the following related wells identified as follows:

| Ref. # | Lease | RRC# | Well # | API # | WI% | NRI% |
|--------|-------|------|--------|-------|-----|------|
| 26 | Chapman | 447 | 3 | 17982328 | 100.00% | 75.00% |
| 27 | Chapman | 447 | 7 | 17982332 | 100.00% | 75.00% |

"**_Claim_**" has the meaning set forth in § 101(5) of the Bankruptcy Code.

"**_Claims Objection Bar Date_**" shall mean thirty (30) business days after the Confirmation Date, subject to further extension by the Debtors by filing a notice of extension on the docket in these jointly administered bankruptcy cases.

"**_Class_**" means a category of Claims or Member Interests as set forth in Article II herein pursuant to section 1122(a) of the Bankruptcy Code.

"**_Confirmation Date_**" means the date that the Confirmation Order is entered by the Bankruptcy Court in the Chapter 11 Case.

"**_Confirmation Order_**" means the Order of the Bankruptcy Court confirming this Plan pursuant to § 1129 of the Bankruptcy Code.

"**_Debtors_**" means Ponderosa Energy, LLC and GS Energy, LLC.

"**_Disputed_**" means any Claim or interest or any portion thereof:  (i) that is listed on the Schedules as unliquidated, disputed or contingent, unless a proof of Claim has been timely filed; (ii) as to which the Debtors or any other party-in-interest with standing has interposed a timely objection or

request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; or (iii) otherwise disputed by the Debtors accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a final order.

"*Effective Date*" means the date on which all of the conditions to the consummation of this Plan contained in Section VI.O herein have been satisfied or waived as provided in Section VI.O herein and is the effective date of this Plan.

"*General Bar Date*" means April 16, 2018.

"*Impaired*" means, with respect to a Claim, interest, or Class of Claims or interests, "impaired" within the meaning of § 1124 of the Bankruptcy Code

"*Petition Date*" means December 5, 2017, the date on which the Debtors filed their voluntary petition under Chapter 11 of the Bankruptcy Code.

"*Plan Administrator*" means the person appointed to administer the distribution of Available Cash to holders of Allowed Claims consistent with the terms of this Plan.   The Plan Administrator shall be the Debtors.

"*Professionals*" means any professionals employed in the Chapter 11 Case pursuant to §§ 327 or 1103 of the Bankruptcy Code or otherwise and any professionals seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to § 503(b)(4) of the Bankruptcy Code.

"*Properties*" shall mean the leases and wells that are the subject of the settlement between the Debtors and PPF as approved by an order of this Court dated April 18, 2018 [ECF No. 92]. "Properties" does not mean and specifically excludes the Chapman Properties.

"*Releasees*" means the Debtors, Richard F. Sands, and Casimir Resource Advisors LLC.

"*Schedule*" mean the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs filed by the Debtors pursuant to § 521 of the Bankruptcy Code.

"*Taxing Authorities*" means Gray County Tax Office, Moore County and Entities Collected by Moore County, Carson County Appraisal District, Hansford County, Carson County, and Hutchinson County.

"*TXOP*" means Ponderosa TX Operating, LLC.

## II.
## BACKGROUND

### A.  The Debtor's Business and Pre-Petition Financing Facility

Ponderosa Energy, LLC and GS Energy, LLC (the "Debtors") are oil-and-gas exploration companies formed in April 2015 and September 2016, respectively. The Debtors are affiliates

since more than 20 percent of their outstanding voting securities are directly or indirectly owned by non-debtor RNP, LLC.

The Debtors held working interests in mineral leases in the Anadarko Basin in North Texas. The Debtors' interests included hundreds of wells that produce substantial quantities of oil and gas. Prior to the Petition Date, the Debtors managed their oil-and-gas assets from their offices in New York, New York.

The Debtors funded their business through pre-petition financing facilities with Petroleum Production Finance, Inc. ("PPF"[1]), an investment firm located in Dallas, Texas.  In 2016, Ponderosa began negotiating with PPF regarding funding for development projects, remediation projects, and acquisitions to expand oil-and-gas production. PPF and Ponderosa entered into an arrangement based on a "volumetric purchase payment," or VPP.  Pursuant to the VPP, PPF would buy a portion of Ponderosa's future oil production in exchange for an up-front payment.  If the oil revenues failed to materialize, PPF would have the option to foreclose on Ponderosa's oil. Pursuant to this facility, PPF effected a $2.51 million purchase payment to Ponderosa.

GS Energy, LLC entered into a separate financing with PPF that was substantially similar to Ponderosa's.  PPF made a $2.1 million purchase payment to GSE as part of the financing.

### B.  Events Leading to the Commencement of the Case

Several disagreements arose between the Debtors and PPF relating to the VPP-based credit facilities. The Debtors claimed that PPF failed to provide accurate accounting of the amounts owed on the facilities and wrongfully threatened foreclosure.  Also, production from Ponderosa's leases came in at less-than-anticipated levels. In an attempt to resolve production issues, the Debtors made a series of good-faith payments to PPF.  PPF accepted the payments, but the payments did not resolve the parties' disputes.

PPF and the Debtors instituted litigation against each other in Dallas County, Texas and Hutchinson County, Texas.  Also, on November 14, 2017, PPF sent a "Notice of Foreclosure" to the Debtors, which purporting to assert PPF's right to foreclose on and seize the Debtors' oil-and-gas assets.

### III.
### THE CHAPTER 11 CASE

### A.  Commencement of Bankruptcy Case

On December 5, 2017, the Debtors filed voluntary petitions for relief (the "Chapter 11 Cases") under Chapter 11 of the Bankruptcy Code, with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  The Debtors continue to administer their assets as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

---

[1] PPF used certain special-purpose entities to facilitate the financing, and this definition includes such entities.

On January 5, 2018, the Office of the United States Trustee for the Southern District of New York appointed the Official Committee of Unsecured Creditors (the "Committee"). The members of the Committee are: (i) Anderson Roustabout & Construction; (ii) CRL Pump & Supply; and (iii) Philip Gunn.

The Debtors also sought "first-day" relief by filing a Motion for Joint Administration of their estates [ECF No. 5], a Motion to Authorize the Debtors to (i) Continue Use of Existing Cash Management System, (ii) Maintain Existing Bank Account and Business Forms, and (iii) Granting Related Relief [ECF No. 12]; and a Motion to Authorize the GS Energy LLC to Make Royalty Payments in the Ordinary Course [ECF No. 13].

### B. Debtor's Use of Cash Collateral & Financing

On December 8, 2017, the Debtors filed a Motion to Approve Use of Cash Collateral [ECF No. 10] (the "Cash Collateral Motion). In the Cash Collateral Motion, the Debtors asked to use cash collateral to pay expenses necessary to preserve the Debtors' oil-and-gas wells. The Court signed interim orders approving the Cash Collateral Motion on December 18, 2017 [ECF No. 25] and January 19, 2018 [ECF No. 60].

Further, the Debtors filed a Motion for Authority to Obtain Credit [ECF No. 11] in order to obtain $250,000 in post-petition financing from Casimir Resource Advisors LLC. The purpose of this credit facility was to pay the Debtors' professional fees and U.S. Trustee fees during their Chapter 11 Cases. The Debtors did not draw on this post-petition credit facility.

### C. Adversary Proceeding against PPF

On December 8, 2017, the Debtors instituted an adversary proceeding against PPF and several related parties. ECF No. 1, Case No. 17-01239-shl (S.D.N.Y. 2017) (the "Adversary"). The Debtors asserted claims for usury, breach of contract, fraud in the inducement, and declaratory judgment.

### D. Settlement Between Debtors and PPF

On or about March 21, 2018, the Debtors, PPF, and certain PPF special-purpose entities entered into a Settlement and Sale Agreement and Release of Liability (the "Settlement") in order to resolve claims related to the Debtors' pre-petition financing. The Bankruptcy Court approved the Settlement in an order dated April 18, 2018 [ECF No. 92]. Pursuant to the Bankruptcy Court's order and the Settlement Agreement, on or around May 2, 2018, the Debtors transferred the Properties to PPF's designees. In exchange, PPF agreed to pay all ad valorem property taxes on the Properties and made a payment of $398,531.40 to the Debtors. Additionally, the parties agreed to dismiss their state-court litigations, the Debtors dismissed the Adversary, and the parties exchanged mutual releases.

### E. The Debtor's Schedules and the Establishment of the General Bar Date

On January 9, 2018, the Debtors filed their schedules of assets and liabilities and statements of financial affairs [ECF Nos. 40-43] (as amended, collectively, the "Schedules"). The Schedules set forth the various claims against the estates as well as other information pertaining to transactions to which the Debtors were parties prior to the Petition Date.

The Bankruptcy Court established April 16, 2018 (the "General Bar Date") as the deadline for non-governmental entities to file proofs of claim.

## IV.
## SUMMARY OF TREATMENT OF CLAIMS AND ESTIMATED RECOVERIES

### A. Introduction

The formulation of a chapter 11 plan is the principal purpose of a chapter 11 case. The plan sets forth the means for satisfying the holders of claims against and interests in a debtor's estate. A chapter 11 plan may provide anything from a complex restructuring of a debtor's business and its related obligations to a simple liquidation of the debtor's assets. In either event, upon confirmation of the plan, it becomes binding on the debtor and all of its creditors and equity holders, and the prior obligations owed by the debtor to such parties are compromised and exchanged for the treatments specified in the plan. If all classes of claims and equity interests accept a plan, the bankruptcy court may confirm the plan if the bankruptcy court independently determines that the requirements of section 1129(a) of the Bankruptcy Code have been satisfied.

Chapter 11 of the Bankruptcy Code does not require that each holder of a claim or interest in a particular class vote in favor of a chapter 11 plan in order for the bankruptcy court to determine that the class has accepted the plan. Rather, a class of claims will be deemed to have accepted the plan if the bankruptcy court determines that the plan has been accepted by more than a majority in number and at least two-thirds in amount of those claims actually voting in such class. Only the holders of claims who actually vote will be counted as either accepting or rejecting the plan.

In addition, classes of claims or equity interests that are not "impaired" under a chapter 11 plan are conclusively presumed to have accepted the plan under § 1126(f) of the Bankruptcy Code and, thus, are not entitled to vote. Furthermore, classes that are not to receive or retain any property under the plan are conclusively deemed to have rejected the plan under § 1126(g) of the Bankruptcy Code and are also, therefore, not entitled to vote. Accordingly, from those persons who hold claims or equity interests in an impaired class that receive or retain property are entitled to vote with respect to a plan.

Class 1 is not impaired under the Plan and holders of claims in Class 1 are deemed to accept the Plan. Class 2 and Class 3 are impaired under the Plan and holders of claims in Class 2 and Class 3 are entitled to vote on this Plan. Class 4 Interests will not receive or retain and property under the Plan and the holders of interests in Class 4 are deemed to reject the Plan.

### B.  Brief Overview of the Plan Structure

Subject entirely to the full disclosures made throughout this Plan and Disclosure Statement, the basis of the Debtors' Plan is to liquidate as follows.  Pursuant to the Settlement, the Debtors' estates have received an infusion of $ 398,531.40.  This cash, along with cash in the Debtors' bank accounts, will be used to satisfy claims necessary to obtain confirmation of the Plan (i.e. allowed administrative and priority claims), pay Professional Fees, and to fund the distribution to Allowed Claims pursuant to the terms of this Plan.  After satisfaction of Allowed administrative claims, priority claims and claims in Class 1 (Secured Claims), any remaining Available Cash will be used to make payments to Allowed Claims in Class 2 (General Unsecured Claims).  The estates of the Debtors will be substantively consolidated for purposes of distribution, as the cost and time involved in allocating the proceeds of the Settlement and other expenses between the two Debtors would be prohibitively expensive.

Pursuant to the Settlement, PPF agreed to be responsible for and pay all unpaid ad valorem taxes on the Properties.  Specifically, the Settlement provides: "In consideration for this settlement, the PPF Parties agree[d] that the PPF Parties [would] be responsible for payment of all unpaid ad valorem taxes assessed on the Properties, whether assessed and/or due and payable before or after the Effective Date of this Agreement."  With the exception of the allowed secured claim in the amount of $262.34 sought by Gray County for ad valorem taxes assessed on the Chapman Properties – which assets were specifically excluded from transfer to the PPF parties in the Settlement – the claims of the Taxing Authorities for ad valorem taxes assessed on the Properties shall be paid by PPF.

Chapter 89 of the Texas Natural Resources Code, among other Texas statutes and regulations, creates plugging and abandonment obligations to plug unproductive wells, remove facilities from the site, and otherwise decommission the site to protect the public health and safety.  Typically, an operator is required to plug the unproductive wells and can seek reimbursement for that cost from the lessee (here, the Debtors), and ultimately, it becomes the responsibility of the lessee to cover the cost of the proper plugging of the well.  *See* Tex. Nat. Resource Code §§ 89.011 – 89.012.  Failure to plug the well may result in civil penalties under Chapter 89.  The Chapman Properties no longer produce oil and gas, and the wells have fallen into disrepair and would require significant investment to begin production again; alternatively, they must be plugged in accordance with Texas law.

Due to its current financial condition, the Debtors are unable to fund the significant investment necessary for the wells to begin production.  The Debtors have obtained a price quote of $20,000 from a well-plugging specialist, who is not affiliated with the debtor, to plug the Chapman Properties.  The Debtors will pay $20,000 to plug the Chapman Properties and will transfer the Chapman Properties to their operator, TXOP, an affiliate of the Debtor, whereupon TXOP will become responsible to pay for any costs exceeding $20,000 for plugging the Chapman Properties, and for all other costs, expenses, and obligations associated with the Chapman Properties.

### C. *Summary of Debtor's Plan to Liquidate*

The following chart provides a summary of treatment of each class of claims (other than administrative and priority tax claims) and an estimate of the recoveries of each class. The treatment provided in this chart is for informational purposes only.

| Class | Estimated Allowed Claims | Treatment | Estimated Recovery to Holders of Allowed Claims |
|---|---|---|---|
| Class 1: Secured Claims | $ 262.34 | Not Impaired – deemed to accept | 100% |
| Class 2: Priority Unsecured Claims | $ 0.00 | Impaired – entitled to vote | 0% |
| Class 3: General Unsecured Claims | $ 1,434,169.68 | Impaired – entitled to vote | 1.5% |
| Class 4 – Membership Interests | $ 0.00 | Impaired – not entitled to vote – deemed to reject | 0% |

### D. *Treatment of Fees of the United States Trustee, Administrative Claims and Priority Tax Claims*

There are fees payable to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6), which is a non-classified category of Claims. All statutory fees, to the extent unpaid through the Confirmation Date, shall be paid by the Debtors within seven (7) business days after the Confirmation Date. From and after the Confirmation Date through the closing of the Chapter 11 Case, all statutory fees shall be paid by the Debtors (if prior to the Effective Date) or the Plan Administrator (if after the Effective Date).

Except for statutory fees and except to the extent any entity (other than Professionals) entitled to payment of an allowed administrative expense claim agrees to a different treatment, each holder of an allowed administrative expense claim (other than Professionals) shall receive, in full satisfaction of such claim, cash from Available Cash in an amount equal to any unpaid portion of such allowed administrative expense claim within seven (7) business days after the Effective Date or the date that such allowed administrative expense claim becomes an allowed claim, whichever is later.

Except to the extent any entity entitled to payment of an allowed priority tax claim agrees to a different treatment, each holder of an allowed priority tax claim, if any, shall receive in full satisfaction of such claim cash from Available Cash in an amount equal to any unpaid portion of such allowed priority tax claim (as determined in accordance with Section 1129(a)(9)(C)) within seven (7) business days after the Effective Date and the date that such allowed priority tax claim becomes an allowed claim, whichever is later.

### *Allowance of Administrative Expense Claim for Casimir Resource Advisors LLC and Ponderosa TX Operating LLC*

The Plan provides for the payment of administrative expenses to Casimir Resource Advisors LLC ("CRA") and Ponderosa TX Operating LLC ("TX") in the aggregate amount of $21,950 for services provided to the Debtors during the month of May 2018. The nature of these services are described in the certain Motion For Allowance And Payment of Administrative Claim Pursuant To 11 U.S.C. § 503(B)(1)(A) [Dkt. 88] (the "Administrative Expense Motion") filed by CRA and TX. Specifically, the Administrative Expense Motion describes that CRA provides administrative and management support to the Debtors in the amount of $7,250 per month and TX funds the Debtor's payroll obligation in the amount of $14,700 per month. The Administrative Expense Motion covered the months from December 2017 to April 2018. Pursuant to this Plan, the Debtors seek to compensate CRA and TX the amount of $21,950 in the aggregate for services provided and expenses funded during the month of May 2018. As a result of the consummation of the Settlement Agreement in May 2018, the Debtors will not incur these administrative expenses after May 2018.

### E.  *Treatment of Claims and Membership Interests*

### 1.  **Class 1 – Taxing Authorities' Secured Claims**

Class 1 consists of the Taxing Authorities' allowed secured claims, which are not impaired by the Plan. Because holders of Class 1 claims will receive a full distribution under the Plan, Class 1 shall be deemed to have voted to accept the Plan.

On the Effective Date, each holder of a Class 1 Claim will receive payment of its claims in full from Available Cash. At this time, the Debtors believe that Gray County Tax Office is the only holder of a Class 1 Claim.

### 2.  **Class 2 – Priority Unsecured Claims**

Class 2 consists of all priority unsecured claims, which are impaired by the Plan. The proof of claim filed by the City of New York Department of Finance [Claim 13] (the "NYC Tax Claim") is the only claim in Class 2. Class 2 is impaired and the holder of an allowed Class 2 Claim is entitled to vote to accept or reject the Plan.

The Debtors will file an objection to the NYC Claim. The Debtors believe the NYC Claim should be disallowed in its entirety.

On the Effective Date, the holder of an Allowed Class 2 Claim shall receive a pro rata share of any Available Cash remaining after satisfaction of administrative claims and allowed Class 1 claims.

**3. Class 3 – General Unsecured Claims**

Class 3 consists of all general unsecured claims, which are impaired by the Plan. Each holder of an allowed Class 3 Claim is entitled to vote to accept or reject the Plan.

On the Effective Date, each holder of a Class 3 Claim shall receive a pro rata share of any Available Cash remaining, if any, after satisfaction of Allowed priority and administrative claims and Class 1 claims.

**4. Class 4 – Membership Interests**

Class 4 consists of all membership interests, which are impaired by the Plan. Because holders of membership interests will receive no distribution under the Plan, Class 4 is deemed to reject the Plan.

On the Effective Date, all membership interests shall be cancelled, deemed terminated, and of no further force and effect, and the holders of membership interest shall not receive or retain and distribution or property on account of such membership interests.

**V.**
**PROVISIONS REGARDING DISTRIBUTIONS**

**A. The Plan Administrator**

The Debtors shall serve as Plan Administrator upon the Effective Date of the. The Plan Administrator shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

**B. Distributions of Funds**

The Plan Administrator shall make distributions in accordance with the Plan and Disclosure Statement. The Plan Administrator shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Plan Administrator shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of distribution, the holder of an allowed claim complete the appropriate IRS Form W-8 or W-9 as applicable to the holder of each allowed claim. Notwithstanding any other provision herein, each holder of an allowed claim that is to receive a distribution from the Plan Administrator shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by such holder by any governmental unit.

### C.  Unclaimed Distributions

Distributions to holders of allowed claims shall be made at the address set forth on the respective proof of claim filed by such holder or at the address reflected on the Schedules if no proof of claim was filed.  If a distribution is returned as undeliverable, no further distribution shall be made to such holder.  Any distributions that are returned to the Debtors or otherwise unclaimed (including, without limitation, failure of a holder of a claim to cash a distribution check) for period of three (3) months following the distributions, may be donated to a charitable organization at the election of the Plan Administrator.

## VI.
## CONFIRMATION REQUIREMENTS AND EFFECT OF CONFIRMATION

### A.  Alternate Plan

If the Plan is not confirmed, the Debtors, the Committee, or any other party-in-interest could attempt to formulate a different plan.  However, the additional costs, including, among other things, additional professional fees or asserted substantial contribution claims, all of which could constitute administrative claims against the estate, may be so significant that one or more parties could request that the Chapter 11 Case be converted to one under Chapter 7.  Accordingly, the Debtors believe that the Plan enables creditors to realize the very best return under the circumstances.

### B.  Best Interests Test and Liquidation Analysis

Section 1129(a)(7) of the Bankruptcy Code requires that each holder of an impaired claim or interest either (a) accept the Plan or (b) receive or retain under the Plan property of a value, as of the Effective Date, that is not less that the value such holder would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.  A hypothetical Chapter 7 liquidation analysis is attached hereto as **Exhibit A**.  Because the Debtors' assets have already been liquidated to cash, the value of any distributions if the Debtors Chapter 11 Cases were converted to cases under Chapter 7 would be less than the value of distributions under the Plan.  This is because conversion to Chapter 7 would require the appointment of a Chapter 7 trustee, and, in turn, such trustee's likely retention of new professionals.  The "learning curve" that the trustee and the new professionals would face comes with additional costs to the estate and with a delay in time compared to the distributions under the Plan (and prosecution of causes of action).  Additionally, a Chapter 7 trustee would be entitled to statutory fees relating to distributions of the already-monetized assets made to creditors.

As a result, the Debtors believe that the estate would have fewer funds to be distributed in a hypothetical Chapter 7 liquidation than they would if the Plan were confirmed, and therefore holders of claims in all of the impaired classes will recover less than in the hypothetical Chapter 7 case.  Accordingly, the Debtors believes that the "best interests" test of Bankruptcy Code Section 1129 is satisfied.

### C. Feasibility

The Bankruptcy Code requires that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization. Because distributions will be made only to the extent of existing assets of the Debtors' estate, the Debtors believe the Plan is feasible.

### D. No Unfair Discrimination

A chapter 11 plan "does not discriminate unfairly" if (a) the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are similar to the legal rights of the non-accepting class, and (b) no class receives payments in excess of that which it is legally entitled to receive for its claims or interests. The Debtors believe that under the Plan all impaired classes of claims and interests are treated in a manner that is consistent with the treatment of other classes of claims and interests that are similarly situated, if any, and no class of claims or interests will receive payments or property with an aggregate value greater than the aggregate value of the allowed claims and allowed interests in such class. Accordingly, the Plan does not discriminate unfairly as to any impaired class of claims or interests.

### E. Bar Date for Professional Fee Claims

Professionals asserting a fee claim for services rendered before the Effective Date must file and serve on the Plan Administrator and such other entities designated by the Bankruptcy Rules, the Confirmation Order or such other orders of the Bankruptcy Court a final fee application no later than thirty (30) days after the Confirmation Date.

Upon resolution of their final fee applications, Professionals shall pay any unpaid allowed fees and expense reimbursements from the retainers or trust funds held by such Professionals on account of such fees and reimbursements and shall remit any remaining retainer or trust funds to the Debtors immediately thereafter. Allowed fees and expenses reimbursements of Professionals incurred after the Confirmation Date may also be paid from Available Cash as an Allowed Claim Payment.

### F. Treatment of Executory Contracts and Unexpired Leases

The only executory contract or unexpired lease that the Debtors are a party to is the certain Office Service Agreement with PBC-745 Fifth Ave, LLC d/b/a/ Carr Workplaces (the "Office Lease"). The Office Lease is a month-to-month lease. As of the Confirmation Date, the Office Lease will be deemed rejected and Casimir Resources, LLC shall be responsible for all amounts owed under the Office Lease.

### G. Release of Avoidance Actions

As of the Confirmation Date, the Debtors on behalf of themselves and their estates release any and all claims, rights and/or causes of action under Chapter 5 of the Bankruptcy Code, any and all claims, rights and/or causes of action under fraudulent conveyance and fraudulent transfer laws, and any and all claims, rights and/or causes of action under non-bankruptcy laws vesting in

16

creditors rights to avoid, rescind, or recover on account of transfers including but not limited to all preference laws.

### H.  Release of Holders of Claims and Interests by Releasees

Notwithstanding anything contained in this Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Releasees shall be deemed to forever release, waive, and discharge each of the holders of Allowed Claims or Interests in the Debtors from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whatsoever in connection with or in any way relating to the Debtors, the conduct of the Debtors' businesses, the Chapter 11 Cases, the Plan and Disclosure Statement (other than the rights of the Debtors or a Creditor holding an Allowed Claim to enforce the obligations under the Confirmation Order and the Plan and the contracts, instruments, releases, and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date; provided, however, that, for good and valuable consideration and except as otherwise expressly set forth herein, each of the holders of Allowed Claims or Interests in the Debtors are deemed to have released all other such creditors hereunder.

### I.  Release by Holders of Claims and Interests

Notwithstanding anything contained in this Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the holders of Claims against and Interests in the Debtors who indicate their consent to grant the releases provided in this paragraph shall be deemed to forever release, waive, and discharge each of the Releasees from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whatsoever in connection with or in any way relating to the Debtors, the conduct of the Debtors' businesses, the Chapter 11 Cases, the Plan and Disclosure Statement (other than the rights of the Debtors or a Creditor holding an Allowed Claim to enforce the obligations under the Confirmation Order and the Plan and the contracts, instruments, releases, and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date; provided, however, that, for good and valuable consideration and except as otherwise expressly set forth herein, each of the Releasees are deemed to have released all other Releasees hereunder.

### J.  Effect of Confirmation of the Plan

The Confirmation Order will be the final determination of the rights of all claimants and interest holders to participate in the distributions under the Plan, whether or not (a) a proof of claim or interest is filed, (b) such claim or interest is allowed, or (c) the holder of such claim or interest

has accepted the Plan. Because the Plan contemplates the liquidation of the Debtors, the Debtors will not receive a discharge pursuant to section 1141(d) of the Bankruptcy Code.

### K. Injunction

On the Effective Date, except as otherwise provided in the Plan and Disclosure Statement or the Confirmation Order, all persons shall be deemed to be bound by the terms of the Plan and Disclosure Statement, including holders of claims or interests not listed on the Schedules, or listed on the Schedules as disputed, unliquidated or contingent, who did not file proofs of claim or interest by the applicable Bar Date, and, to the extent permitted under section 1141(d)(3) of the Bankruptcy Code, will be prohibited from:

(a)     commencing or continuing any suit, action or other proceeding of any kind or nature or employing any process against the Debtors, their estates, the Debtors' assets, the Plan Administrator or any direct or indirect successor to the Debtors, or to interfere with the consummation or implementation of this Plan, or the distributions to be made hereunder,

(b)     enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order against the Debtors, their estates or the Debtors' assets or any direct or indirect successor in interest to the Debtors, or any assets or property of such successor,

(c)     creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien against the Debtors, their estates or the Debtors' assets, or any direct or indirect successor in interest to the Debtors, or any assets or property of such successor other than as contemplated by the Plan,

(d)     except as provided herein, asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Debtors, their estates or the Debtors' assets, or any direct or indirect successor in interest to the Debtors, or any assets or property of such successor, and

(e)     proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan.

### L. Exculpation

From and after the Effective Date, to the extent permitted under § 1125(e) of the Bankruptcy Code, the Debtors and their estates, the officers and directors of the Debtors, the Committee and each member thereof, the Plan Administrator, and the Debtors' and Committee's Professionals shall neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with the Chapter 11 Case, including the formulation, preparation, dissemination, implementation, confirmation or approval of the Plan; *provided, however*, that the foregoing provisions (a) shall not affect the liability of any person that otherwise would result from any such act or omission to the extent that act or omission is determined in a final, nonappealable

order to have constituted gross negligence or willful misconduct and (b) shall not abrogate any applicable disciplinary rules.  Any of the foregoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

### M. Dissolution of the Committee

On the Effective Date, the Committee, to the extent not previously dissolved, will dissolve, and the members of the Committee and their respective Professionals will cease to have any role arising from or related to the Chapter 11 Case.

### N. Miscellaneous Provisions of the Plan

The Bankruptcy Court will retain jurisdiction over the Chapter 11 Cases after the Confirmation Date and until the case is closed for certain specific purposes.  For example, the Bankruptcy Court will, among other things, (a) hear and determine any objections to claims, (b) any and all controversies, suits and disputes (c) hear and determine all applications for compensation by Professionals, and (d) enforce the provisions of the Plan.

### O. Effective Date

The Effective Date shall not occur, and this Plan shall not be binding upon any party, unless and until each of the following conditions has been satisfied or waived by agreement of the Debtors and the Plan Administrator:

(a) the Confirmation Order has been entered and has become final and non-appealable; and

(b) all Allowed Administrative Claims (excluding administrative claims of Professionals), Class 1 Claims and Class 2 Claims have been paid from the Available Cash.

The Debtor shall file a notice on the docket in the Bankruptcy Case upon satisfaction of the conditions to the Effective Date.  The Plan Administrator shall make distributions to Class 3 (General Unsecured Creditors) from any Available Cash after satisfaction of Professional Fees claims.

*[Remainder of Page Intentionally Left Blank]*

# VII.
## <u>CONCLUSION</u>

The Debtors believe that the Plan is in the best interest of all holders of claims and interests and urges all holders of impaired claims against the Debtors to vote to accept the Plan and to evidence such acceptance by returning their ballots in accordance with the instructions accompanying this document.

Dated: New York, New York
      June 15, 2018

Respectfully submitted,

**Ponderosa Energy, LLC**
**GS Energy, LLC**

Debtors and Debtors-in-Possession

By:    */s/ Richard F. Sands*
       Richard F. Sands
       Managing Member

DIAMOND McCARTHY LLP

*/s/ Charles M. Rubio*
Charles M. Rubio
Christopher R. Murray
909 Fannin, Suite 3700
Houston, TX 77010
(713) 333-5100
crubio@diamondmccarthy.com
cmurray@diamondmccarthy.com

Allan B. Diamond
489 Fifth Avenue, 21st Floor
New York, NY 10017
(212) 430-5400
adiamond@diamondmccarthy.com
arosen@diamondmccarthy.com

*Counsel to Debtors and*
*Debtors-In-Possession*

Exhibit A

**Liquidation Analysis**

| | Chapter 7 Liquidation | Chapter 11 Plan |
|---|---|---|
| **Total Funds Available** | **$456,390.94** | **$456,390.94** |
| | | |
| Administrative Claims | | |
| Plugging & Abandonment Fees | $20,000.00 | $20,000.00 |
| Diamond McCarthy Fees | $282,645.00 | $282,645.00 |
| Casimir and Ponderosa TX Operating Fees - Filed | $109,750.00 | $109,750.00 |
| Casimir and Ponderosa TX Operating Fees - May | $21,950.00 | $21,950.00 |
| Chapter 7 Trustee Fees | $25,000.00 | $0.00 |
| **Total Administrative Claims** | **$459,345.00** | **$434,345.00** |
| **Total Funds Remaining for Other Claims** | **-$2,954.06** | **$22,045.94** |
| | | |
| Secured Creditor Claims | | |
| Gray County | $262.34 | $262.34 |
| **Total Secured Claims** | **$262.34** | **$262.34** |
| **Total Funds Remaining for Unsecured Claims** | **-$3,216.40** | **$21,783.60** |
| | | |
| General Unsecured Creditor Claims | | |
| BP Energy Company | $602,376.00 | $602,376.00 |
| Philip Gunn | $473,787.48 | $473,787.48 |
| Anderson Roustabout & Construction | $73,153.70 | $73,153.70 |
| Dykema | $66,479.15 | $66,479.15 |
| Xcel Energy (dba for Southwest Public Service A Texas Cop.) | $32,406.43 | $32,406.43 |
| Larry & Matt, Inc. dba B&G Electric | $28,386.55 | $28,386.55 |
| Midwest Compressor Systems | $20,418.11 | $20,418.11 |
| Chase Production Company | $20,270.00 | $20,270.00 |
| Lilling and Company | $20,000.00 | $20,000.00 |
| CRL Pump & Supply | $16,877.18 | $16,877.18 |
| B&G Elextric Co. | $8,698.07 | $8,698.07 |
| Underwood Law Firm, P.C. | $7,802.85 | $7,802.85 |
| Xcel Energy | $7,131.46 | $7,131.46 |
| Brown & Fortunato, P.C. | $6,769.86 | $6,769.86 |
| Davis Geomatics | $6,668.00 | $6,668.00 |
| Energy Transfer Partners | $5,374.51 | $5,374.51 |
| Mitchell & Jones | $5,266.00 | $5,266.00 |
| DJ's Well Service & Roustabout, Inc. | $4,719.09 | $4,719.09 |
| Miller Consulting | $4,516.65 | $4,516.65 |

| | | |
|---|---:|---:|
| Underwood Law Firm, P.C. | $4,506.25 | $4,506.25 |
| Kel-Tech | $3,706.09 | $3,706.09 |
| Kel-Tech | $2,968.65 | $2,968.65 |
| Kiki's Services LLC | $2,374.92 | $2,374.92 |
| Tascosa Land Resources | $2,175.49 | $2,175.49 |
| CRL Pump & Supply | $1,639.71 | $1,639.71 |
| TRC Consultants | $1,495.00 | $1,495.00 |
| Rita Blanca Electric Cooperative | $1,091.37 | $1,091.37 |
| M&M Auto Parts | $853.41 | $853.41 |
| Kiki's Services LLC | $682.90 | $682.90 |
| Beagle Steam Service | $588.29 | $588.29 |
| Charlies Machine & Welding | $550.91 | $550.91 |
| Anderson Roustabout & Construction | $435.60 | $435.60 |
| **Total General Unsecured Creditors** | **$1,434,169.68** | **$1,434,169.68** |