JOHNSTON PRATT PLLC
Robert W. Gifford, Esq.
New York State Bar No. 4046231
rgifford@johnstonpratt.com
Kenneth C. Johnston, Esq. (*pro hac* to be submitted)
kjohnston@johnstonpratt.com
George H. Barber, Esq. (*pro hac* to be submitted)
gbarber@johnstonpratt.com
1717 Main Street, Suite 3000
Dallas, TX 75201
214-974-8000 – Telephone
972-474-1750 – Facsimile

*Proposed Counsel for Molori Energy, Inc.,
a Party-In-Interest*

**UNITED STATES BANKRUPTCY COURT**  X
**SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re: | Chapter 11 |
| PONDEROSA ENERGY, LLC and<br>GS ENERGY, LLC, | Case No. 17-13484-SHL<br>(Jointly Administered) |
| Debtors. X | |

### MOLORI ENERGY, INC.'S AMENDED LIMITED OBJECTION TO DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

COMES NOW, Molori Energy, Inc. ("Molori"), a party in interest in this case, and respectfully submits this Amended[1] Limited Objection to the Debtor's Combined Disclosure Statement and Plan of Liquidation (the "Plan") [Docket #98], and in support thereof respectfully requests as follows.

### I.  INTRODUCTION

Just two days ago—on July 23, 2018—counsel for non-debtor Ponderosa-State Energy, LLC ("Ponderosa-State") filed papers in a Texas state court case arguing that Molori's trespass to title and specific performance claims against Ponderosa-State concerning certain Texas real estate are barred

---

[1] Molori timely filed this Objection earlier in the day on July 235, 2018. At filing, the undersigned discovered minor errors in the citations and text. These are corrected here. No new arguments are advanced.

**MOLORI ENERGY, INC.'S AMENDED LIMITED OBJECTION TO DEBTOR'S
COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION**                                    **PAGE 1**
65589v1

by the existence of this bankruptcy case and the proposed Plan. These arguments surprised Molori because:

(i) Ponderosa-State is not a debtor in this bankruptcy case;

(ii) the Texas real estate properties are not scheduled assets or property of the Debtor in this bankruptcy case;

(iii) Molori is not a scheduled creditor in this bankruptcy case;

(iv) Molori's claims concern the very same Texas real estate that has been the subject of separate litigation throughout the life of this bankruptcy case without objection by Ponderosa-State.

Although Ponderosa-State's legal argument is factually and legally erroneous, its last-minute state court filing compels Molori to object to the proposed Plan and confirmation order insofar as they can be read to bar Molori's claims against a non-debtor concerning property that does not belong to the Debtor. To Molori's knowledge, no party in the Texas state court case or this case has ever contended that this Court has jurisdiction over the Texas real estate at issue in Molori's claims.

Accordingly, Molori objects to the Plan and confirmation order as drafted.

## II. FACTS AND PROCEDURAL BACKGROUND

1. Molori is an oil and gas development company formerly known as Taipan Resources, Inc. Since mid-2016, Molori has been active in restoring to production over 165 producing wells and an inventory of approximately 202 non-producing wells throughout the Texas Panhandle.

### A. *Bankruptcy Background*

2. On December 5, 2017, the above-captioned Debtors commenced bankruptcy cases administratively consolidated und the above-captioned case and style, under Chapter 11 of the Bankruptcy Code.

3. On April 18, 2018, this Court entered an Order approving a settlement and sale of substantially all assets of the Debtors. [Docket #92].

4.  On June 15, 2018, the Debtors filed the Plan. The Disclosure Statement in the Plan was conditionally approved by this Court's order entered June 28, 2018. [Docket #103].

5.  This Plan contains vague and confusing release and injunction language. *See*, e.g., Releases at pp. 17-18). To the extent those releases and/or injunction provision are intended to give rise to releases of claims as to non-debtor parties, the Plan violates section 1129 of the Bankruptcy Code and cannot be confirmed.

**B.    *The Pending Texas State Court Title Dispute (the "Signal Action")***

6.  Since June 2015, a number of private parties and the State of Texas have been engaged in litigation over who owns the development rights for a set of certain oil and gas (i.e. mineral) leases located in the Texas Panhandle. A company called Signal Drilling, LLC ("Signal") filed its original petition in state court on June 23, 2015, and its current Fifth Amended Petition on August 18, 2017.[2]

7.  The allegations in the Signal Action[3] concern a convoluted history that begins with a sovereign grant in 1927 from the State of Texas to a private company for the development of oil and gas production along the Canadian River. Later construction of a dam on the river rendered formerly navigable waters unnavigable, and instigated a boundary dispute between the development company and riverbank landowners. The State of Texas, the company, and some but not all of the riverbank landowners entered into an agreement that resolved the boundary dispute and specified the parties' respective mineral interests in the disputed areas. These areas are specifically identified in the Signal Action and are collectively called the "State Leases."[4]

---

[2] *See* Declaration of Catherine (Kate) Gaither ("Gaither Dec."), Ex. A.

[3] *See* Gaither Dec., Ex. A, ¶¶ 23 to 44 (Signal's pleading reciting history of the State Leases); *see also* Gaither Dec., Ex. B, ¶¶ 14-35.

[4] In the Signal Action, Signal also refers to the State Leases as the "Riverbed Leases" plus the "Amended State Lease." (*See* Gaither Dec., Ex. A, ¶¶ 2, 31).

8. The mineral interests covered by the State Leases were assigned from party to party over the years, and the Debtor, Ponderosa Energy, LLC ("Debtor"), at one point received assignment of a one hundred percent (100%) working interest in the State Leases.

9. On May 6, 2016, the Debtor sold and assigned to Molori a twenty-five percent (25%) working interest (calculated as a 25% net revenue interest) in the State Leases. Molori and the Debtor also entered into a joint operating agreement related to the State Leases and, pursuant to that agreement, Molori contributed significant capital to the third-party operator hired to produce oil and gas on the State Leases.

10. It is undisputed in both the Signal Action and this case that the Debtor later transferred its remaining 75% working interest in the State Leases to non-debtor Ponderosa-State Energy, LLC ("Ponderosa-State"). There is also no dispute that this transfer occurred more than one year before the Debtor petitioned for bankruptcy.

11. In its case, Signal contends that the Debtor, Ponderosa-State, and Molori never actually had *any* working interest in the State Leases. In short, Signal contends that—years earlier in the chain of assignments, and long before any assignment of working interests in the State Leases to the Debtor—possession of the State Leases had reverted to Signal and certain other parties by operation of law and under the terms of the State of Texas's boundary agreement with the riverbank landowners.

12. The Signal Action is presently on interlocutory appeal by the State of Texas, which asserts Signal lacks jurisdiction to challenge its Amendment of the State Leases and the later chain of assignments leading to Molori and Ponderosa-State.

**C.    *Molori's Intervention in the Signal Action.***

13. Although the Signal Action concerns Molori's 25% working interest in the State Leases and subsequent investments to develop oil there, Ponderosa-State inexplicably refused to identify

Molori as a necessary party. On July 12, 2017, Ponderosa-State owner Richard Sands even testified to the state court during an evidentiary hearing that Molori had no "interest, directly or indirectly, in . . . the leases and wells that are involved in [the Signal Action]."[5]

14. Sands's testimony is particularly shocking in light of the substantial controverting documentary evidence, which includes the actual assignment of the 25% interest that *he signed himself*. It seems Sands and Ponderosa-State wanted to exclude Molori from the Signal Action for their own gain, and therefore hid Molori's interest from the state court and other litigants. These issues are for the court in the Signal Action to address, and Molori has moved in that court for sanctions and a finding of contempt against Richard Sands.[6]

15. After learning about the Signal Action and its implications for Molori's rights, on July 5, 2018, Molori filed its petition in intervention. Molori named Ponderosa-State and Ponderosa TX Operating, LLC ("Ponderosa TX Operating") in that petition; Molori did not name the Debtor.

16. In the Signal Action, Molori asserts only two claims. *First*, Molori asserts a trespass to title claim with respect to the State Leases. *Second*, Molori seeks specific performance of a contract with Ponderosa-State and Ponderosa TX Operating to transfer to Molori all of Ponderosa-State's remaining 75% working interest in the State Leases.

17. Molori does not assert any claim against or right to the property of the Debtor in the Signal Action or otherwise.

18. Molori does not assert any claim or right in the Signal Action against the Debtor.[7]

---

[5] *See* Gaither Dec., Ex. C [Motion for Order to Show Cause Why Richard Sands and Defendants Ponderosa TX Operating, LLC and Ponderosa-State Energy, LLC Should Not Be Held in Contempt for Perjury], pp. 5-7; *see also Id.,* Ex. G [Hearing Transcript], p. 73, ll. 3-4 ("I have to think. They [Molori] don't have a direct or indirect investment in any of [the State Leases].")

[6] *See* Gaither Dec., Ex. B [Petition in Intervention].

[7] *Id.*

**D.    *Ponderosa-State's Motion to Strike***

19.    On July 23, 2018, in the Signal Action, Ponderosa-State filed a motion to strike Molori's petition in intervention.[8]

20.    The basis for Ponderosa-State's motion is that, allegedly, this bankruptcy case "is the only venue for Molori to prosecute it's [sic] claims" and that "approval of the settlement agreement in the Bankruptcy proceeding is res judicata against the claims of Molori."[9] Ponderosa-State points to the proposed order authorizing sale and confirming the Plan as support for its res judicata argument.[10]

21.    Further, Ponderosa-State argues that Molori's claims "are barred through the ORDER APPROVING SETTLEMENT [sic]" in this action.[11]

22.    Although Molori understands that this Court has not confirmed the proposed Plan and settlement, it is plain how non-debtor Ponderosa-State intends to use the proposed confirmation order.

### III.    LIMITED OBJECTION

In order to confirm the Plan, the Debtor must satisfy the provision of Section 1129 of the Bankruptcy Code. Section 1129(a)(1) of the Bankruptcy Code requires that the Plan comply with applicable provisions of the Code. In this case, to the extent the Debtor seeks to affect a third party release on non-debtor parties under the release or injunction provisions of the Plan, the Plan violates Section 524(e) of the Bankruptcy Code and thus the Plan fails to satisfy Section 1129(a)(1). Section 524(e) of the Bankruptcy Code states that "discharge of a debt of the debtor does not affect the liability

---

[8] *See* Gaither Dec., Ex. D [Motion to Strike Intervention].

[9] *Id.*, p. 3.

[10] *Id.*, pp. 3-4.

[11] *Id.*, p. 4.

**MOLORI ENERGY, INC.'S AMENDED LIMITED OBJECTION TO DEBTOR'S
COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION            PAGE 6**
65589v1

of any other entity on, or the property of any other entity for, such debt."[12] In enacting §524, "Congress sought to free the debtor of his personal obligations while ensuring that no one else reaps a similar benefit."[13] Indeed, the Second Circuit has consistently held that "[t]he relief afforded the debtor by [§524] does not extend to other parties." To the extent a plan of reorganization contains a non-debtor release, such plan "should not be approved absent the finding that truly unusual circumstances render the release terms important to success of the plan."[14]

> In deciding whether a [non-debtor] release is appropriate, courts may consider whether the estate has received a substantial contribution, whether the enjoined claims are channeled to a settlement fund rather than extinguished, whether the enjoined claims would indirectly impact the debtor's reorganization through claims of indemnity or contribution, whether the plan otherwise provides for payment in full of the enjoined claims and whether the creditor has consented. Nevertheless, the test is not a matter of factors and prongs, and a [non-debtor] release will not be tolerated absent findings of circumstances that may be characterized as unique.[15]

Here, the Plan seemingly releases not just the Debtor, but also the Debtor's affiliates, Ponderosa-State Energy and Ponderosa TX Operating, in violation of §524(e). Those parties have neither sought bankruptcy protection nor appeared before this Court.

Molori has asserted claims against Ponderosa-State Energy and Ponderosa TX Operating in the Texas Litigation and has not consented to the release of those claims.

---

[12] 11 U.S.C. § 524.

[13] *Green v. Welsh,* 956 F.2d 30, 33 (2nd Cir.1992); *see also Terwilliger v. Terwilliger,* 206 F.3d 240, 247–48 (2nd Cir. 2000).

[14] *In re Metromedia Fiber Network, Inc.,* 416 F.3d 136, 143 (2nd Cir. 2005).

[15] *In re SunEdison, Inc.,* 576 B.R. 453, 461–62 (Bankr. S.D.N.Y. 2017) (internal quotes omitted).

Consequently, the Plan, insofar as it seeks to release, enjoin or otherwise impair third party claims and disputes between non-debtor party claims and disputes between non-debtor parties, violates Section 524(e) of the Bankruptcy Code and fails to satisfy Section 1129(a)(1) of the Bankruptcy Code.[16]

### IV.  PRAYER

WHEREFORE, PREMISES CONSIDERED, the Molori respectfully requests this Court deny the proposed Plan of Liquidation.

DATED:  July 25, 2018

---

[16] To the extent the claims sought to be impaired do not relate to the Debtors, this case, or the Debtor's estate, this Court may also lack jurisdiction over these claims under 28 U.S.C. 1334. Section 1334(b) provides that the district court shall have original jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Section 1334(e) further provides that the district court in which a bankruptcy case is commenced or is pending shall have exclusive jurisdiction over all of the property of the estate. In analyzing whether proceedings are "related to" a bankruptcy case, the courts in this Circuit employ the "conceivable effect" test. *See Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2nd Cir. 2011) (quoting *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 114 (2nd Cir.1992)). If litigation has a significant connection with a pending bankruptcy proceeding such that its outcome might have a "conceivable effect" on the bankrupt estate, the litigation falls within the "related to" jurisdiction of the bankruptcy court. *See Cuyahoga Equip. Corp.*, 980 F.2d at 114. Claims of one non-debtor against another must be analyzed in this context. *See In re Parade Place, LLC*, 508 B.R. 863, 872 (Bankr. S.D.N.Y. 2014).

In general, bankruptcy courts have no jurisdiction to decide controversies between third parties that do not involve the debtor or its property, unless the court cannot complete its administrative duties without resolving the controversy. *See In re Shirley Duke Assocs.*, 611 F.2d 15 (2nd Cir. 1979). "[B]ankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor." *In re Finnie*, No. 05-16373, 2007 WL 1574294, at *12–13 (Bankr. S.D.N.Y. May 29, 2007) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n. 6 (1995)). More importantly, "relatedness does not lie where the dispute, while 'conceivably' related to the bankruptcy estate, is so only remotely." *In re Holland Indus., Inc.,* 103 B.R. 461, 468 (Bankr. S.D.N.Y. 1989); *In re Texaco Inc.*, 85 B.R. 934, 938 (Bankr. S.D.N.Y. 1988) (a private controversy between a third-party plaintiff and nondebtor defendants, where the plaintiff's suit would not produce any benefits for the other creditors of the bankrupt estate, nor would such action affect the other creditors' distribution prospects, must be dismissed for lack of jurisdiction because it does not relate to a case under Title 11). The bankruptcy court "is not the appropriate forum" in which to resolve third party disputes; it is "a forum where creditors and debtors can settle their disputes *with each other.*" *In re Refco Inc.,* 505 F.3d 109, 118 (2nd Cir. 2007) (emphasis in original). Here, Molori has asserted claims against the Debtor's affiliates, Ponderosa-State Energy and Ponderosa TX Operating, over assets that are owned by those affiliates—not the Debtor.

Respectfully submitted,

JOHNSTON PRATT PLLC

By: /s/ *Robert W. Gifford*
    **Robert W. Gifford, Esq.**
    New York State Bar No. 4046231
    rgifford@johnstonpratt.com

    **Kenneth C. Johnston, Esq**. (*pro hac*)
    Texas State Bar No. 00792608
    kjohnston@johnstonpratt.com

    **George H. Barber, Esq**. (*pro hac*)
    Texas State Bar No. 01705650
    gbarber@johnstonpratt.com

1717 Main Street, Suite 3000
Dallas, TX 75201
214-974-8000 – Telephone
972-474-1750 – Facsimile

*Counsel for Molori Energy, Inc.,
a Party-In-Interest*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this Amended Limited Objection to Debtors' Combined Disclosure Statement and Plan of Liquidation was served on all counsel and parties receiving CM/ECF notice in this case and on all other parties and counsel via first class U.S. mail on this on this 25th day of July, 2018.

    /s/*Robert W. Gifford*
    Robert W. Gifford