UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

*In re:*

PONDEROSA ENERGY LLC and GS ENERGY LLC,

*Debtors.*

Case No. 17-13484-shl
New York, New York
August 1, 2018
11:07 a.m. - 11:44 a.m.

17-13484-SHL, PONDEROSA ENERGY LLC AND GS ENERGY LLC
MOTION FOR OBJECTION TO CLAIM NUMBER 13 OF THE CITY OF THE
NEW YORK DEPARTMENT OF FINANCE (DOC #101); NOTICE OF
PROPOSED ORDER CONFIRMING CHAPTER 11 PLAN OF LIQUIDATION;
AND COMBINED DISCLOSURE AND CONFIRMATION HEARING.
BEFORE THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

A P P E A R A N C E S :

*For Debtors:*                     CHARLES M. RUBIO, ESQ.
                                   Diamond McCarthy LLP
                                   2 Hudson Ctr., 909 Fannin St, 37th Fl.
                                   Houston, Texas 77010
                                   (713) 333-5100; (713) 333-5199 fax

                                   Debtor's Representatives
                                   Richard F. Sands
                                   Cory Meadows

*For Molori Energy:*               KENNETH C. JOHNSTON, ESQ.
                                   Johnston Pratt
                                   1717 Main Street, 30th Floor
                                   Dallas, Texas 75201
                                   (214) 974-8000; (972)) 474-1750 fax

                                   Molori Energy Representatives
                                   Joel Dumaresq
                                   David Jones

*For U.S. Trustee:*                RICHARD C. MORRISSEY, ESQ.
                                   201 Varick Street, Room 1006
                                   New York, New York 10014
                                   (212) 510-0500; (212) 668-2255 fax

*Transcriber:*                     AA EXPRESS TRANSCRIPTS
                                   195 Willoughby Avenue, Suite 1514
                                   Brooklyn, New York 11205
                                   (888) 456-9716; (888) 677-6131 fax
                                   aaexpress@court-transcripts.net

*(Proceedings recorded by electronic sound recording)*

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18          2

1          THE COURT:  We are here this morning for Ponderosa

2   Energy LLC and GS Energy LLC confirmation hearing.  Let me get

3   appearances from counsel.

4          MR. RUBIO:  Good morning, Judge Lane, Charles Rubio,

5   with the Law Firm of Diamond McCarthy, on behalf of the Debtors.

6   With me in the courtroom we have Mr. Richard Sands and Mr. Cory

7   Meadows, and they're both representatives of the Debtors.

8          THE COURT:  All right.  Good morning.  Staying on this

9   side of the room.

10         MR. MORRISSEY:  Good morning, Your Honor, Richard

11  Morrissey, for the U.S. Trustee.

12         THE COURT:  Good morning.

13         MR. JOHNSTON:  May it please the Court, Kenneth

14  Johnston from Dallas, Texas, representing Molori Energy.  With

15  me in the courtroom are Joel Dumaresq and behind him, David

16  Jones.  Thank you.

17         THE COURT:  All right.  Good morning.  Good to see

18  you.  I appreciate your travels here today to get there.

19         MR. JOHNSTON:  For the record, Your Honor, I

20  appreciate your staff.  They did a good job of getting me

21  admitted to the Court, so I appreciate that.

22         THE COURT:  All right.  Happy to hear that.  I have

23  the benefit of some wonderful people working for me, who handle

24  a lot of the business of keeping the line moving.  And in those

25  matters, you're in better hands than you would be with me.  All

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18          3

1  right.  So, I know there's an objection.  I've read the

2  objection; I've read the attachments to the objection.  I know

3  people were setting up for a presentation, and then I heard they

4  weren't setting up for a presentation.  So, you can tell me

5  whether I'm reading tea leaves correctly or not correctly as to

6  whether things stand.  I'll hear from everybody who wants to be

7  heard.

8       MR. RUBIO:  Thank you, Your Honor.  Again, for the

9  record, Charles Rubio.  We are pleased to announce that with the

10 one objection that was filed, we have reached resolution on

11 language that we'd like to insert into the proposed confirmation

12 order.  We have a copy of that order redlined from the version

13 filed that includes that language that's going to resolve the

14 dispute.

15       As Your Honor may have seen, the nature of the dispute

16 arises from the Molori affidavit that was given in connection

17 with the PPF settlement.  There were concerns by both parties;

18 one from the Debtors' side that the Molori affidavit and the

19 issues around it could be used to undermine the events that

20 occurred in the case.  And from the other side, there were

21 issues that the exculpation release provisions and the

22 injunction provisions in the plan may prevent third party

23 litigation.  So, the compromise litigation really addresses both

24 sides' concerns with these issues.

25       THE COURT:  All right.  Let me take a look at the

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18          4

1   language.  That would be great.  Anything you wanted to add?

2           MR. JOHNSTON:  May it please the Court.  No, Your

3   Honor.  We concur with what Mr. Rubio said.

4           THE COURT:  All right.  So, what page should I be

5   looking on?

6           MR. RUBIO:  You're want to go to -- I believe it

7   starts on Paragraph 'EE' on Page 7.

8           THE COURT:  'EE' on Page 7.

9           MR. RUBIO:  And I believe everyone in the courtroom

10  has it, but I have extra copies if anyone needs it.

11          THE COURT:  All right.  Anybody need a copy?

12          (No response.)

13          THE COURT:  All right.  So, 'EE'.  Give me one second.

14  And I guess it goes on for about a page and a half, so just give

15  me a second to read everyone.  Is there anything you want to put

16  on the record, particularly?  Or since this is going to go in

17  the order, I should just read it?

18          MR. RUBIO:  That's correct.

19          THE COURT:  All right.  So, give me a second.

20          (Pause.)

21          THE COURT:  All right.  I got through it.  So, it

22  basically is in a sense, and I don't know who was responsible

23  for filing this statement in the Texas State Court, but it seems

24  to essentially nullify that statement that somehow there's

25  something in the confirmation or settlement here that affects

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18        5

1   the rights of the parties in the Texas State Court action.  Am I

2   reading sort of the take-away correctly?

3          MR. RUBIO:  I can let Mr. Johnston verify that, but in

4   particular there was concern that the sale order and the

5   language in the sale order could have prevented third-party

6   litigation against Ponderosa state.  So, that in particular was

7   addressed by that "for avoidance of doubt" language located in

8   'FF'?

9          THE COURT:  'FF', right.

10         MR. RUBIO:  And I will turn it over to Mr. Johnston if

11  he wants to add anything to that.

12         THE COURT:  Because if I'm understanding, reading the

13  tea leaves right, it was that statement saying that the events

14  in the bankruptcy somehow prevented you from going ahead with

15  your lawsuit in Texas State Court?

16         MR. JOHNSTON:  Yes, Your Honor.  So, just a little

17  more background.  In the state court litigation, which has been

18  going on since 2015, Molori intervened in that case fairly

19  recently.  There was a motion to strike that intervention filed

20  in the state court.  And it essentially said that you have

21  jurisdiction.  And that was our exclusive right.  It even talked

22  about *res judicata* and things of that nature.

23         Before that, we were aware of the plan.  Has some

24  questions about the breadth of the injunctive release, but I

25  thought we would just fight that fight at a later date.  It just

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18          6

1  so happened the plan hadn't been confirmed yet; we get the

2  motion to strike; it just kind of made sense to come to court

3  now to get the clarification.  Our hope is that when we leave

4  here, we never have to come back to Your Honor on this case

5  about these issues.  And that state court litigation may go

6  forward against non-debtor entities.

7          THE COURT:  All right.  Thank you.  So, I had two

8  questions, one of which is in the language here.  Paragraph 3

9  says the Debtors do not owe Molori any consideration for the

10  Molori affidavit.  It's sort of an odd phrasing so I'm not quite

11  sure what I should take away from that, or even how to consider

12  that.  So, what's the intent there?

13          MR. RUBIO:  My understanding from the state court law

14  suit, there's some allegations that, potentially, a third party

15  may owe some consideration for the Molori affidavit, and this is

16  intended to clarify that.  In fact, that is the case that it's

17  not the Debtors that would owe any consideration for that.

18          THE COURT:  All right.  From my point of view, one, I

19  appreciate that you attached the pleadings from the Texas State

20  Court.  It was helpful to read those to get a sense of these

21  things, because obviously, I'm no expert and no one is asking me

22  to become an expert in what's going on in the Texas State Court,

23  but to the extent that it's obviously in play here.  The reason

24  why I asked is because Number 3, you don't want anyone to have

25  sort of an untoward kind of reading of that, that makes it sound

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18        7

1    like there's some sort of undisclosed deal somewhere.  So, maybe

2    you could tweak Paragraph 3 to basically give the context you

3    just gave me.  To say there may be some suggestion in the state

4    court action in Texas that there is a party that owes

5    consideration for the Molori affidavit.  The parties, the

6    Debtors and the objecting party agree that the Debtor's don't

7    owe any such consideration.  Does that do any harm to your

8    language?

9         MR. RUBIO:  I think the Debtors are fine with that

10   clarification.

11        MR. JOHNSTON:  Again, Kenneth Johnston for the record.

12   The get from Molori's perspective was that we are not going to

13   seek any consideration from this bankruptcy estate for what we

14   are litigating about in Texas.

15        THE COURT:  Right.  And I'm perfectly fine with that.

16   It's just a slightly unusual phrasing that they don't owe in the

17   present tense any consideration for the Molori.  All right.

18   That's fine.  I'll trust you to wordsmith it just to make it

19   clear that basically there's an issue about whether your client

20   is owed consideration in the states court proceeding, and that

21   you've agreed not to seek it against the Debtors in this case.

22        MR. JOHNSTON:  Your Honor, for what it's worth, my

23   client representative actually came and knocked me on the

24   shoulder and said hey, I have a question about this as well.

25   So, I appreciate the clarity.

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18         8

1         THE COURT:  (Laughing.)  All right.  Well, you know,

2    great minds think alike.  Or my grandmother used to day, fools,

3    seldom differ.  I'll go with the first.  And so, the other

4    question I have doesn't relate so much to the language here, but

5    just something that occurred to me before I came out, which is,

6    obviously, it has to do with the lease provisions.  And I assume

7    we're talking about the language in the settlement as opposed to

8    the confirmation order?  They track one another.

9         The reason why I ask is, I'm trying to figure out who

10   is covered.  It's a liquidating plan, so obviously, it's

11   appropriate to have sort of what I'd call usual releases,

12   meaning actions in connection with the prosecution of the case,

13   and all that sort of good stuff.  But I don't know if there's

14   any questions or concerns about releases beyond the scope of

15   that.  Third party releases essentially.  And that's when I was

16   reading the objection and trying to track the parties at issue

17   in the state court case.  Let me go back and look at the caption

18   here just to make sure that there were no other parties other

19   than the two Debtors.  So, I don't know if you can address that

20   question.

21        MR. RUBIO:  Yes, Your Honor.  And actually Mr.

22   Morrissey raised the same issue and asked me to address the

23   release injunction and exculpation provisions with the Court.

24   So, it seems like the appropriate time.  Mr. Morrissey might

25   have something to say.

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18          9

1          MR. MORRISSEY:  Your Honor, actually, if I could, I'd

2     like to go back to what you all were discussing before with the

3     redline.  And Your Honor mentioned the word "release".  There is

4     a new Paragraph 13, which appears on Page 14 of the redline.  It

5     seems to say a lot of the same things that that Paragraph 'XX'

6     said beginning on Page 8 into Page 9.  But I just wanted to make

7     sure Your Honor was aware of the fact that it's there as well.

8          THE COURT:  Oh, all right.  Yeah, I hadn't read that,

9     so give me a second.

10          (Pause.)

11          THE COURT:  All right.  Yep.  So, maybe you can just

12     give sort of a general overview of what's purported to be

13     released in this liquidating plan.

14          MR. RUBIO:  Yes.  So, I'll just do a quick rundown of

15     the release injunction and exculpation provisions in the plan.

16     The release provisions in the plan are releases by claim holders

17     and creditors of the case, who consent to the releases.  So, we

18     had sent out ballots to the creditors and we included an opt-out

19     provision in that ballot.  So, how the Debtors construe that is

20     that in order to consent to the releases, they would have had to

21     submit their ballot and not check the opt-out provision.  And we

22     had one party that did that.  So, with respect to the releases

23     of the creditors, the only releases are the one creditor that

24     has submitted a ballot, and Molori, who has agreed to certain

25     specified releases.

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18      10

1      THE COURT:  All right.

2      MR. RUBIO:  The injunction provisions in the plan are

3  injunctions against any parties taking actions against claims

4  that were asserted or could have been heard in the case just to

5  prevent future litigation against the Debtors.  And the

6  exculpation provisions are provisions that exculpate the

7  representatives of the Debtors from liabilities related to their

8  conduct in the case that is qualified by § 1125(b).  And it

9  carves out willful -- I'm sorry.  I want to get the phrasing

10  right because it's actually in here.

11      THE COURT:  It's the standard.

12      MR. RUBIO:  Yes.  Gross negligence and willful

13  misconduct.  Right.  And there's a carve out for that.  And

14  that's my understanding of how we kind of negotiated the release

15  here, to kind of tracked that exculpation language.

16      THE COURT:  Yes.  All right.  And actually, both your

17  plan and your confirmation order are actually sort of a model of

18  efficiency.  I've grown used to having much larger both plans

19  and confirmation orders.  And that's actually not good that I've

20  gotten used to that, because in fact it can be done in a much

21  more efficient and straightforward and readable way.  So, when I

22  saw the objection, I was pretty much able to find your release

23  exculpation and all those clauses very quickly, because they

24  were very transparent.  So, I actually may use your confirmation

25  order, and your combined disclosure statement and plan as a

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18      11

1    legend against other folks who give me much, much longer

2    documents by factors of say five.  So, you may feel your ears

3    burning at some point.  All right.  That's very helpful.  Mr.

4    Morrissey, anything else on the release and exculpation clause?

5    And I think that sort of completes the circle.

6              MR. MORRISSEY:  No, Your Honor.  As a matter of fact,

7    I just asked Mr. Rubio to make the presentation that he had made

8    because we do have that anomaly where we have no discharge, but

9    we still have a release and injunction and exculpation

10   provision.  But because the release applies to a grand total of

11   one creditor in this case, the U.S. Trustee is certainly not

12   going to object.

13             THE COURT:  All right.  So, anything else on

14   additional language that we should discuss?  Any party?

15             (Pause.)

16             THE COURT:  All right.

17             MR. MORRISSEY:  Your Honor, again, I know Your Honor

18   was able to just read quickly, but that Paragraph 14, just in

19   the interest of perhaps making the relatively short confirmation

20   order even shorter, I'm not sure what it has, that Paragraph FF,

21   which begins on Page 8 and continues into Page 9; or doesn't

22   have.

23             THE COURT:  Well, here's what I'll do.  I don't want

24   to discourage parties from resolving their dispute.  It may be

25   that's it's not necessary in light of the earlier language.  And

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18      12

1  so, what I'll ask is, at the close of the hearing, counsel sit

2  down.  If you decide well, we actually don't need it, then take

3  it out.  But I don't want anybody to have angst as a result of

4  the settlement.  Sometimes these things are done rather quickly,

5  and sometimes people have a little more need for a belt and

6  suspenders in light of the speed in which events move.  So, take

7  a look and let me know maybe just in the five minutes after

8  court here is done this morning.  And from what I can tell, I

9  think it probably not necessary in light of the language that's

10  now contained on Pages 7 through 9, particularly Paragraph 'FF'.

11  But just take a look.  I don't want to raise somebody's blood

12  pressure by taking it out, striking it right now.  I think

13  probably you can but give it a wordsmithing and see what you

14  think.  All right?

15       MR. RUBIO:  Thank you, Your Honor.

16       THE COURT:  And you were saying?

17       MR. JOHNSTON:  Yes, Your Honor.  On Page 8, just for

18  clarification, Item 5?

19       THE COURT:  All right.

20       MR. JOHNSTON:  Speaking with Mr. Rubio, the idea here

21  is that we're not going to pursue the Debtors in any fashion.  A

22  question came up in my mind about the discovery process.  And

23  what I understand from Mr. Rubio is essentially that the Debtors

24  really aren't in possession and control, or custody of discovery

25  items.  That it would be an affiliate of the Debtors.  Is that

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18      13

1    clear?

2         MR. RUBIO:  This is Charles Rubio for the record.

3    That's an accurate representation.  The Debtors are more or less

4    a special purpose entity and an affiliate provides management

5    and administrative services to the Debtors.  So, they would be

6    in control of administrative records.

7         THE COURT:  All right.  And can we name the affiliate

8    in question?

9         MR. RUBIO:  It's Casimir Resources Advisors LLC.  And

10   that's disclosed in the Plan.  And Ponderosa TX Operating also

11   provides.  I would say they pay for payroll services for some of

12   the employees of the Debtors.

13        THE COURT:  All right.  And so, as non-debtors,

14   nothing here impacts Molori's rights to seek discovery against

15   any of those non-debtors?

16        MR. RUBIO:  Again, Charles Rubio for the record.

17   That's correct.

18        THE COURT:  All right.

19        MR. JOHNSTON:  And, Your Honor, in terms of that

20   hurried approach to things, that was something that I looked at

21   last night and it looked good, and this morning over coffee.

22        THE COURT:  (Laughing.)

23        MR. JOHNSTON:  So, thank you.

24        THE COURT:  That's fine.  So, now you have that

25   cleared up on the record.  If you want to wordsmith and add

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18      14

1   something to Paragraph 5 of Page 8, that's fine, but I think you

2   have it on the record.  So, I think you're probably good to go.

3   All right.  Again, I appreciate these things are often late

4   afternoon, then evening, then morning, and even now.  That's

5   sort of the nature of things.  All right.  Anything else that

6   anybody else wants to raise in connection with the resolution of

7   the objection?

8          (No response.)

9          THE COURT:  All right.  I don't see anybody rising.

10  So, Mr. Rubio, maybe you can address any other confirmation

11  issues?

12         MR. RUBIO:  Yes, Your Honor.  So, we're here today for

13  the motion to confirm the Chapter 11 Plan, and also an objection

14  to the New York City Department of Finance proof of claim, which

15  they asserted as a priority claim.  So, what I'd like to do is

16  just given basically an opening argument and then give the Court

17  the evidence to support the confirmation of plan.

18         THE COURT:  Sure.

19         MR. RUBIO:  And the claim objection.  So, the Chapter

20  11 case resolved a major dispute between the Debtors and the

21  Petroleum Production Finance, Inc. and certain of its

22  affiliates.  Those parties we'll refer to collectively PPF.

23  Prior to the petition date, the Debtors and PPF entered into a

24  financing arrangement.  The dispute between the Debtors and PPF

25  was resolved through settlement that provided for the sale of

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18      15

1    the properties to PPF and release of claims between the parties.

2    The settlement and sale of PPF had been previously approved by

3    the Court, and that's at Docket Number 92.  As a result of the

4    settlement, the Debtors received cash proceeds in the amount of

5    $398,531.40.  That cash, together with the cash that was already

6    in hand with Debtors' estate will fund the confirmation of the

7    plan, including payment of required fees, administrative

8    expenses, and a distribution to the creditors.

9         Pursuant to the settlement with PPF, PPF is

10   responsible for the unpaid Ad Valorem Taxed associated with the

11   properties that they had acquired.  As a result of the

12   settlement, the Debtors are left with two wells known as the

13   Chapman wells.  These wells are not considered economically

14   viable.  And pursuant to the terms of the plan, the Debtors will

15   fund the plugging of the wells which will cost $20,000.  The

16   Debtors will then transfer these Chapman wells to Ponderosa TX

17   Operating.  And Ponderosa TX Operating has agreed to take on

18   these wells and be responsible, and (inaudible) for these in the

19   future.

20        Under the plan there's four classes of claims.  Class

21   one consists of allowed secured claims.  As a result of the PPF

22   settlement, the only taxing authority secured claim that the

23   Debtor is responsible for is the Grey County Tax Office claim in

24   the amount of $262.34.  Pursuant to the terms of the plan, the

25   claim will be satisfied in full.

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18       16

1         Class two consists of priority unsecured claims.  The

2    only claim that falls within this class is the claim of the City

3    of New York, Department of Finance.  The City of New York has

4    filed a proof of claim asserting taxes owed in the total amount

5    of $351,238.89.  The Debtors filed an objection to this proof of

6    claim.  There has been no response to this objection.  The proof

7    of claim should be disallowed in its entirety.  And I'll take

8    just a few moments to run through the different aspects of the

9    claim and why they should be disallowed.

10        First, there was a claim for a general corporation tax

11   for the period of January 1, 2012 through December 31, 2014.

12   The Debtor didn't come into existence until April of 2015, so

13   for the time-period asserted, the Debtor wasn't in existence and

14   that claim should not be allowed.

15        With respect to the general corporation tax, only

16   entities that are taxable as corporations under the federal tax

17   laws are obligated for this type of tax.  The Debtors, Ponderosa

18   Energy LLC, is a limited liability company taxed as a

19   partnership and is not responsible for general corporation tax.

20   The New York City Department of Finance also asserted a

21   commercial rent tax in the amount of $167,443.43.  The

22   commercial rent tax only applies to commercial rents that are in

23   excess of $250,000 on an annualized basis.  The Debtors' rent is

24   in the amount of approximately $72,000 annually and is therefore

25   below the threshold amount required to pay this tax.

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18      17

1    And then finally, the New York City Department of

2    Finance asserted an unincorporated business tax for the period

3    of January 1, 2012 through December 5, 2017.  Again, the Debtor

4    wasn't in existence until April of 2015.  Therefore, the amounts

5    asserted between January 1, 2015, and December 31, 2015, should

6    not be allowed.  And then with respect to the remaining portion,

7    actually the whole portion, pursuant to New York City Admin Code

8    § 11.502(c)(4), the Debtor is not deemed an incorporated

9    business for the purpose of this tax because the Debtor is

10   primarily engaged in the purchase, holding and sale of its own

11   account of a real property.  Accordingly, the Debtor does not

12   owe the amount asserted for the unincorporated business tax.

13   Accordingly, all the amount asserted by the New York

14   City Department of Finance should be disallowed in its entirety.

15   And that is Class two, and the only claim in Class two.

16   THE COURT:  All right.  And I see there's a

17   certificate of service of the objection, and it identifies being

18   served on New York City Department of Finance, Enforcement

19   Division at 345 Adams Street, 10th Floor, Brooklyn, New York.

20   And that's actually the address on the claim that was submitted

21   by the audit division.

22   The one thing I realize I don't have in the binder is

23   the actual objection itself.  Do you recall where that might be

24   on the docket?

25   MR. RUBIO:  I would need to look that up.

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18      18

1      MR. MORRISSEY:  Your Honor, according to the quotes at

2   ECF scheduled for today, it's Docket Number 101.  It's the

3   motion.

4      THE COURT:  101.  Thank you.  All right.  So, the

5   objection has the documentation and it obviously goes to the

6   basis for the objection.  What I don't have and the reason I was

7   just checking on this, is I don't have a declaration, if I'm

8   remembering correctly.  So, all I would ask is -- I assume you

9   can proffer that your witnesses, who are present in the

10  courtroom, could testify as to the facts you've presented here

11  this morning?

12     MR. RUBIO:  That's correct, Your Honor.  We will do

13  that.

14     THE COURT:  All right.  So, anybody have any objection

15  to me taking that as a proffer for what the witnesses would

16  testify if they took the stand?

17     (No response.)

18     THE COURT:  I don't see any objections.  So, I'll take

19  that as a proffer.  I mean you certainly gave competent evidence

20  to support your objection in the form of the documentation

21  that's to the objection itself, which includes the office

22  service agreement and some other documents.  So, given all those

23  circumstances, I'm happy to grant the objection by the Debtors

24  to the City of New York's, Department of Finance's proof of

25  claim in its entirety.

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18      19

1        MR. RUBIO:  Okay.  I do have a proposed order for that

2   if you'd like me to hand it up.  Or we can --

3        THE COURT:  Yeah, you can hand it up.  And you can

4   submit the revised confirmation order, together with that order

5   electronically in one shot after the hearing.

6        (Pause.)

7        MR. RUBIO:  May I approach?

8        THE COURT:  Yes, please.  All right.  Thank you very

9   much.  All right.  What's next?

10       MR. RUBIO:  Continuing on.  So, Class 3 consists of

11  the general unsecured claims.  The Class is impaired under the

12  plan and will receive the residual cash after the payment of

13  administrative claims and the required payments under the plan.

14  We did receive one vote, and that is an exhibit, and after

15  making this presentation I'll offer the exhibits into evidence.

16       And then Class 4 consists of all membership interest

17  of the Debtor under the plan.  The membership interests are not

18  receiving any distribution or being deemed terminated and

19  cancelled.  The piece payable to the U.S. Trustee pursuant to 28

20  U.S.C. 1930(a)(6) incurred through confirmation shall be paid by

21  the Debtor within seven business days after confirmation of the

22  plan.  And I have discussed this with Mr. Morrissey.  The Debtor

23  needs to catch up with its monthly operating reports, and we

24  intend to do that by the seven-business day deadline.

25       THE COURT:  All right.

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18      20

1      MR. RUBIO:  As part of the solicitation process is

2   concerned, on June 28, the Court entered an order conditionally

3   approving Debtors' disclosure statement and approving the

4   solicitation process.  On June 29, 2018, Christopher Murray, an

5   attorney from my office, filed the certificate of service of the

6   solicitation package.  That's also included in our exhibit book,

7   indicating that all parties to receive the solicitation package

8   and notice of the confirmation hearing.

9       There have been no objections filed to the plan other

10   than the Molori objection.  The Debtors contend that the

11   disclosure statement contains adequate information provided

12   under § 1125 of the Bankruptcy Code.  And as indicated Class

13   three has voted to accept the plan.  We have received one vote

14   in favor from CRL Pump and Supply.  We did not receive any other

15   votes in connection with the plan.  Accordingly, Class 3 has

16   voted 100 percent in favor of the plan.  At this time, I would

17   offer Debtors Exhibit 1 through 14 for the record, Your Honor.

18   And I have given that to the Court.

19      THE COURT:  Yes.  I believe I have all these Molori

20   exhibits.  So, let me just make sure I can find them in the

21   binder, so I have the plan.  So, I have the plan, I have the

22   certificate of service, the report on balloting, the liquidation

23   analysis, Exhibit A of the plan, the proposed order.  So, where

24   would I find the 14 exhibits in the binder?

25      MR. RUBIO:  I'm sorry, these are the 14 exhibits.  You

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18      21

1   were just running through them.

2          THE COURT:  All right.

3          MR. RUBIO:  So, it goes on with the notice of the sale

4   motion, the certificate of service of that sale motion, the

5   certificate of service of the objection to the New York City

6   Department of Finance proof of claim, a copy of the City of New

7   York's Department of Finance proof of claim, the Ponderosa

8   certificate of formation confirming that it in fact was formed

9   in April of 2015, a copy of the office service agreement the

10  ballot received from CRL Pump and Supply.

11         THE COURT:  All right.

12         MR. RUBIO:  So, the Debtors offer those 14 exhibits.

13         THE COURT:  All right.  Any objection?

14         (No response.)

15         THE COURT:  Hearing none, I'll accept all those.  And

16  I believe they are all on the record in terms of ECF in one

17  manner or another.

18         MR. RUBIO:  That's correct, Your Honor.

19         THE COURT:  All right.

20         MR. RUBIO:  Except for the ballot itself.  The CRL

21  ballot is the only one that's not.  Otherwise on the docket in

22  one way.

23         THE COURT:  All right.  Do you want to file that after

24  today's hearing?  Or are you just content with the

25  representations made for purposes of what you need for

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18      22

1   confirmation?

2           MR. RUBIO:  I'm content with the representations made.

3           THE COURT:  All right.  Then that's fine.  So, then

4   it's 1 through 13, really that you're asking me to admit.

5           MR. RUBIO:  Yes, that's fine, Your Honor.

6           THE COURT:  All right.  All right.  So, I will admit

7   all those exhibits as appropriate in support of confirmation.

8   And as we've just discussed, they're all on ECF in one form or

9   another.  Some are exhibits to the plan, some are exhibits to

10  proofs of claim, some are standalone ECF entries, including

11  certificates of service.  But also, the actual combined

12  disclosure statement and plan of liquidation itself.  All right.

13  Anything else in connection with confirmation?

14          MR. RUBIO:  Your Honor, we have Mr. Richard Sands,

15  who's the manager of the Debtors in the courtroom, and I'm happy

16  to proffer testimony to support the plan.  In large part, it's

17  going to parallel my arguments.  And if the Court would like the

18  additional evidence, I'm happy to proffer the testimony

19  directly.  Or if you want to take the statement and ask Mr.

20  Sands whether he has anything to supplement, however, the Court

21  would prefer to do this.

22          THE COURT:  All right.  And you're talking about the

23  statements that you've already made here this morning?

24          MR. RUBIO:  That's correct, Your Honor.  And, again,

25  Mr. Sands is here.  He's available to --

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18     23

1     THE COURT:  Well, I'll take your statement as a

2  proffer that everything you've said here this morning, that if

3  so called to testify, Mr. Sands would under oath make those

4  statements in support of confirmation.

5     MR. RUBIO:  Okay.  Thank you, Your Honor.

6     THE COURT:  All right.  Anything else in connection

7  with confirmation?

8     MR. RUBIO:  That's all we have, Your Honor.

9     THE COURT:  All right.  Anybody else wish to be heard

10  in connection with confirmation?

11     (No response.)

12     THE COURT:  I see no one rising.  And I think on the

13  record we resolved the objection that was filed.  I don't see

14  any objection from the U.S. Trustee's Office.  And given all the

15  facts and circumstances before the Court, and applying

16  applicable law, I'm happy to approve of and confirm the plan of

17  liquidation and essentially give final approval to this

18  disclosure statement, which is already conditionally approved.

19  I will not belabor each of the requirements of confirmation, as

20  those are set forth as is the usual practice in the proposed

21  order confirming the Chapter 11 liquidation plan, but sufficed

22  to say, I conclude that the proponents of the plan here, the

23  Debtors have complied with all applicable requirements for a

24  confirmation, including § 1129, and that the plan has been

25  proposed in good faith, and it's in the best interest of

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18      24

1   creditors.  Those are some of the most common things that we

2   spend time on.  Again, the final approval of the disclosure

3   statement, I make it clear that the plan contains, and the

4   disclosure statement contains adequate information required by

5   11 U.S.C § 1125.

6          So, as I said, I'm not going to belabor the rest of

7   the requirements, which are again set forth in the order.  And

8   sufficed to say, I find that it satisfies all applicable

9   requirements of law, and I'm happy to approve confirmation.

10         MR. RUBIO:  Thank you, Your Honor.

11         THE COURT:  All right.  Thank you very much.  So, I

12  will wait for the final version that you showed me of the

13  confirmation order, which memorializes the agreement that

14  resolved the objection.  And I will look to see whether

15  Paragraph 14 is in or not in, which you will let me know after

16  spending probably I'd say three minutes on that after today's

17  hearing.  And then I'll get that order entered, as well as

18  getting the order entered that grants your objection to the New

19  York City Department of Finance claim.

20         MR. RUBIO:  Thank you, Your Honor.

21         THE COURT:  All right.  Mr. Morrissey?

22         MR. MORRISSEY:  Your Honor, one miniscule matter, a

23  scheduling matter.  This case is pretty much a pot plan, and

24  therefore, the Chapter 11 case shouldn't be long of this world.

25  There's going to be a final fee application. And I don't know if

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18     25

1   the parties or the Court wanted to schedule a hearing for that

2   now, as long as we're gathered together.

3        THE COURT:  Well, I'll leave that to Mr. Rubio.  What

4   would you like to do?

5        MR. RUBIO:  Pursuant to the terms of the plan, we have

6   30 days to file our final fee application.  We intend to file it

7   then.  And at that time, we can schedule with the Court.

8        THE COURT:  All right.

9        MR. RUBIO:  We'll also file a motion to close the case

10  at that point in time.

11       THE COURT:  At the same time.  All right.  So, consult

12  your schedule and then call Ms. Ebanks to get that schedule, and

13  I think we should be good to go.  But I think you need to file

14  your final fee application within 30 days.

15       MR. RUBIO:  That's fine.

16       THE COURT:  It doesn't need to be approved within 30

17  days, it needs to be filed within 30 says.

18       MR. RUBIO:  It needs to be filed.  That's correct,

19  Your Honor.

20       THE COURT:  Right.  So that's probably good, given

21  that's not a matter which you want to have to explain to your

22  significant other that you can't go on vacation because you have

23  to run here for a fee application.  But we'll get it scheduled

24  promptly whenever you get it filed.

25       MR. RUBIO:  And just for the record, we want to give

In re Ponderosa Energy LLC and GS Energy LLC - 8/1/18          26

1  our thanks to the Court, and its staff for helping us through

2  this process.  It's been a very smooth process, and in large

3  part to the staff and the Court.

4          THE COURT:  All right.  Well, we're happy to do it.

5  Don't tell anybody, it's actually our day job.  So, that's fine.

6  I appreciate the obvious hard work, and cooperation that the

7  parties exhibited in trying to reach a resolution, ultimately

8  reaching a resolution of the objection before today's hearing.

9  I know that requires effort, as well as planning.  And you would

10 be surprised or maybe you wouldn't be surprised at the amount of

11 times that people only talk to each other once they come to

12 court.  And so, I always want to make sure to thank folks for

13 the obvious professionalism and civility that occurs when people

14 are able to come into having solved problems that they have.

15 So, thank you for that.  All right.  If that's all we have,

16 thank you again.  Especially folks who have travelled some

17 distance.  And have a wonderful rest of the summer.

18          MR. RUBIO:  Thank you.

19          MR. JOHNSTON:  Thank you, Judge.

20          THE COURT:  Thank you.

21                         - o0o -

22

23

24

25

27

1                            CERTIFICATION

2

3           I, Rochelle V. Grant, certify that the foregoing is a

4    correct transcript from the official electronic sound recording

5    of the proceedings in the above-entitled matter.

6    Dated:  August 3, 2018

7

8    _____

9                            Signature of Approved Transcriber

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25